JOSEPH M. BREALL (SBN 124329)
JILL L. DIAMOND (SBN 259824)
BREALL & BREALL, LLP
1550 Bryant Street, Suite 575
San Francisco, CA 94103
Telephone: (415) 345-0545
Facsimile: (415) 345-0538
jmbreall@breallaw.com

Attorneys for Plaintiffs
CHINATOWN NEIGHBORHOOD ASSOCIATION
and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT

E-filing

FILED
JUL 18 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHINATOWN NEIGHBORHOOD ASSOCIATION, a nonprofit corporation, and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT, a political action committee,

Plaintiffs,

vs.

EDMUND BROWN, Governor of the State of California, KAMALA HARRIS, Attorney General of the State of California, and CHARLTON H. BONHAM, Director, California Department of Fish and Game,

Defendants.

CASE NO: CV 12 3759

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Violation of Section I of the Fourteenth Amendment to the U.S. Constitution;

2. Violation of Article I, Section 8, Clause 3 of the U.S. Constitution;

3. Violation of Article VI, Clause 2 of the U.S. Constitution;

4. Violation of 42 U.S.C. §1983

## I. STATEMENT OF ISSUES

1. This is an action challenging legislation enacted by the State of California to ban the possession, sale, offer for sale, distribution, or trade of shark fins. Specifically, Plaintiffs Chinatown Neighborhood Association ("CNA") and Asian Americans for Political Advancement ("AAPA") contend that California State Assembly Bills 376 and 853 (collectively "Shark Fin Ban" or "Ban") deny the Plaintiffs' members the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. The Shark Fin Ban also constitutes an unlawful interference with the power of the United States Congress to regulate interstate commerce under Article I, Section 8, Clause 3 of the United States Constitution. The Shark Fin Ban unlawfully preempts federal law, including but not limited to the Magnuson Stevens Act (Shark Finning Prohibition Act of 2000 and Shark Conservation Act of 2010) and the Lacey Act, in violation of Article VI, Clause 2 of the United States Constitution. The Shark Fin Ban also violates 42 U.S.C § 1943 in that it deprives the Plaintiffs' members of rights, privileges and immunities under the United States Constitution. Based on the foregoing, Plaintiffs respectfully request that this Court issue a declaration that the Shark Fin Ban is unconstitutional and grant injunctive relief from the Shark Fin Ban's restrictions.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court by 28 U.S.C. 1343(a)(3) and by 28 U.S.C. 1331 for claims brought pursuant to Section 1 of the Fourteenth Amendment to the United States Constitution, claims brought pursuant to Article I, Section 8, Clause 3 of the United States Constitution, claims brought pursuant to Article VI, Clause 3 of the United States Constitution, and claims brought pursuant to 42 U.S.C. § 1983 because the Shark Fin Ban, if enforced against Plaintiffs' members, would deny members the equal protection of the laws, would cause members financial injury by imposing undue barriers to interstate commerce, would unlawfully preempt federal law, and would deprive members of rights, privileges and immunities.

3. This Court has the authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C.A. §2201-02 and Fed R. Civ. P. 65.

4. Plaintiffs are filing this representative action on behalf of their members to protect their rights and to establish certainty regarding their legal obligations. A substantial amount of the acts and omissions giving rise to this lawsuit occurred in the County of San Francisco, California as many of Plaintiffs' members reside in and conduct business within San Francisco. Venue therefore lies in the Northern District of California, San Francisco Division pursuant to 28 U.S.C. 84(a), 28 U.S.C. 1391(b)(2), and Civil Local Rule 3-2(d).

**III. INTRADISTRICT ASSIGNMENT**

5. This action should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions which give rise to this action occurred in San Francisco County as many of Plaintiffs' members engage in cultural practices using shark fins within San Francisco County and conduct business involving the purchase and sale of shark fins within San Francisco County.

**IV. PARTIES**

6. Plaintiff CNA is, and at all times relevant herein mentioned, was a nonprofit corporation/voluntary association having its headquarters in San Francisco, California. CNA's members are people of Chinese national origin who are engaged in cultural practices involving the use of shark fins and in business practices involving the buying and selling of shark fins in interstate commerce.

7. Plaintiff AAPA is, and at all times relevant herein mentioned, was a political action committee registered in the State of California and headquartered in Burlingame, California. AAPA's members are people of Chinese national origin who are engaged in cultural practices involving the use of shark fins and in business practices involving the buying and selling of shark fins in interstate commerce.

8. Defendant Edmund Brown, as Governor of California, Defendant Kamala Harris as Attorney General of California, and Defendant Charlton H. Bonham, as Director of the California Department of Fish and Game, enforce the California Fish and Game Code.

## V. GENERAL ALLEGATIONS

9. Shark fins are used within the Chinese American community to make the traditional dish, shark fin soup. Shark fin soup is a cultural delicacy with origins dating back to the Ming Dynasty (1368-1644 A.D.). It is a ceremonial centerpiece of traditional Chinese banquets as well as celebrations of weddings and birthdays of one's elders. Shark fin soup serves as a traditional symbol of respect, honor, and appreciation in Chinese culture. Shark fin soup is also served at Chinese festivals such as Chinese New Year, Mid Autumn Festival and Winter Festival.

10. The federal Magnuson Stevens Act ("MSA") 16 U.S.C. §§ 1801-1884; 50 C.F.R. § 600.1200-1204 (2002) implemented the Shark Finning Prohibition Act of 2000, and was amended by the Shark Conservation Act of 2010, to prohibit the act of "shark finning" - whereby the fin is removed from a shark and the live shark is the released back into the ocean to die - subject to certain exceptions[1], in United States waters and strictly limit the possession and sale of shark fins. Among other prohibitions, the MSA generally makes it unlawful to "engage in shark finning …" and to "land shark fins without the corresponding carcasses…" § 600.1203(a)(1),(3). The MSA also makes it unlawful to "possess, purchase, offer to sell, or sell shark fins taken, landed, or possessed in violation of this section …" § 600.1203(a)(5).

[1] The only exception being smooth dogfish.

11. The federal Lacey Act makes it "unlawful for any person to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States …" 16 U.S.C. § 3372(a)(1) (1982).

12. On October 7, 2011, California State Assembly Bills 376 ("AB 376") and 853 ("AB 853") were signed into law. These bills amended the California Fish and Game Code by adding Sections 2021 and 2021.5. *See* Assemb. B. No. 376 (Cal. 2011) ("AB 376"); Assemb. B. No. 853 (Cal. 2011).

13. Section 2021(b) of the California Fish and Game Code generally makes it "unlawful for any person to possess, sell, offer for sale, trade, or distribute a shark fin" in California."[2]

14. Section 2021 enumerates three exceptions to the general prohibitions which allow shark fin possession by "[a]ny person who holds a license or permit pursuant to Section 1002 [possession for scientific, education or propagation purposes] consistent with that license or permit", allow shark fin possession by "any person who holds a license or permit issued by the department to take or land sharks for recreational or commercial purposes consistent with that permit", and provide that "[b]efore January 1, 2013, any restaurant may possess, sell, offer for sale, trade, or distribute a shark fin possessed by that restaurant, as of January 1, 2012, that is prepared for consumption." Cal. Fish and Game Code § 2021(c)-(e).

15. Section 2021.5 is a temporary exemption that provides that until July 1, 2013, "any person may possess, sell, offer for trade, or distribute a shark fin possessed by that person, as of January 1, 2012." Cal. Fish & Game Code § 2021.5(a)(3).

---

[2] AB 376 and 853 allow the use of 95% of any legally fished sharks for shark oil, shark meat, shark skin etc. but the remaining 5% (the shark fin) must be discarded pursuant to the Shark Fin Ban.

16. Under the newly-enacted law, any person violating the Shark Fin Ban will be guilty of a misdemeanor and may be punished by up to six months imprisonment and fine of up to $1000. *See* Cal. Fish and Game Code § 12000.

17. An actual controversy has arisen and now exists because Plaintiffs' members face the imminent threat of criminal sanctions if they do not comply with the Shark Fin Ban, which became effective on January 1, 2012. Under the Shark Fin Ban, it is now illegal for Plaintiffs' members to acquire any new shark fins and will be illegal for them to possess, sell, offer for sale, trade or distribute any shark fins as of July 1, 2013.

18. The sponsors of the Shark Fin Ban promoted the legislation under the false pretenses that shark finning, "where a shark is caught, its fins cut off, and the carcass dumped back into the water" (AB 376(d), is an ongoing and current practice in U.S. waters. The sponsors argued that the Ban would prevent this practice of shark finning and the decline of the shark population, and included these purported purposes in the language of AB 376 even though they knew that this practice was illegal under Federal law: "California is a market for shark fin and this demand helps drive the practice of shark finning. The market also drives shark declines. California can help ensure that sharks do not become extinct as a result of shark finning." AB 376(f). However, shark finning is completely illegal under federal law pursuant to the MSA and the Lacey Act.[3] The Shark Fin Ban does not impose any

[3] Note that prior to the enactment of the Shark Fin Ban, the California Fish and Game Code already explicitly forbid the practice of shark finning by California fishermen. Pursuant to Cal. Fish & Game Code § 7704(c): "Except as permitted by this code or by regulation of the commission, it is unlawful to sell, purchase, deliver for commercial purposes, or possess on any commercial fishing vessel registered pursuant to Section 7881 any shark fin or shark tail or portion thereof that has been removed from the carcass…"

further restrictions on the fishing of sharks, aside from the prohibition on the use of the fin, so it does not serve to prevent decline of the shark population.

19. The Shark Fin Ban is unconstitutional under the United States Constitution. It is a violation of Section 1 of the Fourteenth Amendment (the "Equal Protection Clause") because it discriminates against people of Chinese national origin by targeting and banning a cultural practice unique to people of Chinese national origin.

20. The Shark Fin Ban is also unconstitutional under Article I, Section 8, Clause 3 of the United States Constitution (the "Commerce Clause") because it interferes with the power of the United States Congress to regulate interstate commerce.

21. The Shark Fin Ban is also unconstitutional under Article VI, Clause 2 of the United States Constitution (the "Supremacy Clause") because it unlawfully preempts federal law.

22. Enforcement of the Shark Fin Ban by Defendants acting under the color of California state law violates 42 U.S.C. § 1983 because it deprives Plaintiffs' members of their rights, privileges and immunities secured by the United States Constitution.

23. Plaintiffs seek a declaration from the Court that the Shark Fin Ban violates the United States Constitution and 42 U.S.C. § 1983 and is therefore unenforceable and void.

24. Such a declaration is necessary and proper at this time so that Plaintiffs' members may establish certainty as to their legal obligations and conduct their cultural practices and business affairs without subjecting themselves to potential liability for violation of the Shark Fin Ban.

25. Absent a judicial declaration that the Shark Fin Ban violates the United States Constitution, Plaintiffs' members face potential criminal sanctions for the ancient traditional use of shark fin soup in cultural ceremonies and celebrations. Plaintiffs' members also face potential criminal sanctions for ongoing business activities which they have legitimately pursued for years and in which they have invested substantially.

26. The actual controversy presented in this Court is ripe for adjudication and suitable for judicial determination. It is an existing legal dispute between the parties regarding a discrete issue (i.e. the constitutionality of the Shark Fin Ban under the Equal Protection Clause, under the Commerce Clause, under the Supremacy Clause, and under 42 U.S.C. § 1983) and is based on ongoing and prospective conduct.

## VI. CAUSES OF ACTION

### COUNT I

**Declaratory Relief**
**(Violation of Equal Protection Clause)**

27. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 26 as if fully set forth herein.

28. An actual controversy has arisen and now exists because Plaintiffs' members have been deprived of their Constitutional rights by the Shark Fin Ban, which became effective on January 1, 2012, and Plaintiffs' members face criminal sanctions if they do not comply with the Ban.

29. The Shark Fin Ban is unconstitutional under the United States Constitution. It is a violation of the Equal Protection Clause because it discriminates against people of Chinese national origin by targeting and suppressing ancient cultural practices unique to people of Chinese national origin.

30. People of Chinese national origin, such as Plaintiffs' members, comprise a protected class under the U.S. Constitution and laws discriminating against them warrant the application of strict judicial scrutiny.

31. A comprehensive ban on the distribution and possession of shark fins is not narrowly tailored to achieve the purported government interest of preventing the practice of shark finning nor is it the least restrictive means to achieve this interest. Federal regulations under the Magnuson Stevens Act and the Lacey Act are already in place to prevent the practice of shark finning and the commercial trade of fins

obtained through illegal practices. The Shark Fin Ban is overbroad in that it bans the use of fins from sharks obtained through legal fishing practices.

32. The Shark Fin Ban has a disparate impact on Plaintiffs' members because it bears almost exclusively on people of Chinese national origin by suppressing the practice of a Chinese cultural tradition.

33. The intent to discriminate against people of Chinese national origin via the Shark Fin Ban is evident from the pattern of discrimination which is the inevitable effect of the legislation, as well as from the historical, social and legislative background of the Shark Fin Ban.

34. Plaintiffs request a declaration from this Court stating that the Shark Fin Ban is unconstitutional in that it violates the Fourteenth Amendment to the U.S. Constitution by discriminating against people of Chinese national origin by restricting their cultural practices and, as such, denying them the equal protection of the laws.

35. Such as declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

Wherefore Plaintiffs pray for judgment as set forth below.

## COUNT II

**(Declaratory Relief – Commerce Clause)**

36. Plaintiffs allege and incorporate the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. An actual controversy has arisen and now exists because Plaintiffs' members have been deprived of their Constitutional rights by the Shark Fin Ban, which became effective on January 1, 2012, and Plaintiffs' members face criminal sanctions if they do not comply with the Ban.

38. Under the Commerce Clause, Congress retains the ultimate power to regulate interstate commerce. A state law that interferes with Congressional authority by imposing a burden on interstate commerce that is excessive in relation to its putative local benefits violates the Commerce Clause.

39. A significant number of the shark fins that Plaintiffs' members possess, sell, trade or distribute cross state lines within the United States.

40. The Shark Fin Ban imposes a complete and absolute prohibition on the purchase and sale of shark fins, including the purchase and sale of otherwise legally obtained fins, which entirely eliminates this interstate trade.

41. This burden is clearly excessive in relation to its putative local benefits. While purporting to further global shark conservation by reducing the practice of shark finning, the Shark Fin Ban is a duplicative and overbroad means of achieving this benefit.

42. Federal law under the Magnuson Stevens Act bans shark finning, the practice of cutting the fins off living sharks and dumping them back in the ocean, on all U.S. vessels and on foreign vessels in U.S. waters. The federal Lacey Act makes it unlawful to trade fish and wildlife obtained in violation of a federal law.

43. The Shark Fin Ban is overbroad in that it outlaws the sale and possession of shark fins that are lawfully obtained and imported in accordance with federal law without employing the practice of shark finning. Thus, the Shark Fin Ban is an excessive burden on interstate commerce in relation to its purported benefits.

44. Because the Shark Fin Ban unlawfully interferes with Congressional authority to regulate interstate commerce, Plaintiffs are entitled to a judgment declaring that the Shark Fin Ban violates the Commerce Clause.

45. Such as declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

Wherefore Plaintiffs pray for judgment as set forth below.

**COUNT III**

**(Declaratory Relief – Supremacy Clause)**

46. Plaintiffs allege and incorporate the allegations of paragraphs 1 through 45 as if fully set forth herein.

47. An actual controversy has arisen and now exists because Plaintiffs' members have been deprived of their Constitutional rights by the Shark Fin Ban, which became effective on January 1, 2012, and Plaintiffs' members face criminal sanctions if they do not comply with the Ban.

48. Federal law under the Magnuson Stevens Act and the Lacey Act regulate the obtainment and sale of shark fins and permit legal trade of fins obtained in compliance with federal standards. The Shark Fin Ban places a complete prohibition on possession and distribution of shark fins in California and as such preempts federal law.

49. Because the Shark Fin Ban unlawfully preempts federal law, Plaintiffs are entitled to a judgment declaring that the Shark Fin Ban violates the Supremacy Clause.

50. Such as declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

Wherefore Plaintiffs pray for judgment as set forth below.

**COUNT IV**

**Declaratory Relief**

**(Violation of 42 U.S.C. § 1983)**

51. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 50 as if fully set forth herein.

52. An actual controversy has arisen and now exists because Plaintiffs' members have been deprived of their Constitutional rights by the Shark Fin Ban, which became effective on January 1, 2012, and Plaintiffs' members face criminal sanctions if they do not comply with the Ban.

53. In enforcing the Shark Fin Ban against Plaintiffs' members, Defendants are acting under the color of California state law.

54. Enforcement of the Shark Fin Ban violates 42 U.S.C. § 1983 because it deprives Plaintiffs' members of their rights, privileges and immunities secured by the United States Constitution under the Equal Protection Clause, the Commerce Clause and the Supremacy Clause.

55. Plaintiffs request a declaration from this Court stating that the Shark Fin Ban violates 42 U.S.C. §1983 because it deprives Plaintiffs' members of their rights, privileges and immunities secured by the United States Constitution.

56. Such as declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

Wherefore Plaintiffs pray for judgment as set forth below.

**COUNT V**

**(Injunctive Relief)**

57. Plaintiffs allege and incorporate the allegations of paragraphs 1 through 56 as if fully set forth herein.

58. The enforcement or threat of enforcement of the Shark Fin Ban unless and until enjoined and restrained by order of this Court, will cause immediate, great and irreparable injury to Plaintiffs' members who purchase, sell and possess shark fins and related products, including but not limited to, restriction of an important cultural practice, loss of opportunity, disruption of business, lost profits, diminution in value, and criminal fines and penalties.

59. Because Defendants' conduct causes harm that cannot be adequately compensated in damages, Plaintiffs request that the Court issue preliminary and permanent injunctive relief enjoining Defendants from enforcing the Shark Fin Ban.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For a judgment in its favor on each and every cause of action alleged in the Complaint:
   a. A judgment declaring that California Fish and Game Code Sections 2021 and 2021.5 violate the Equal Protection Clause of the United States Constitution.
   b. A judgment declaring that California Fish and Game Code Sections 2021 and 2021.5 violate the Commerce Clause of the United States Constitution.
   c. A judgment declaration that California Fish and Game Code Sections 2021 and 2021.5 violate the Supremacy Clause of the United States Constitution.
   d. A judgment declaration that California Fish and Game Code Sections 2021 and 2021.5 violate 42 U.S.C. § 1983.
2. For the preliminary and permanent injunctive relief set forth above.
3. For reasonable attorneys' fees according to proof;
4. For costs of suit incurred in this complaint; and

///

///

///

///

///

///

///

Case3:12-cv-03759-WHO Document1 Filed07/18/12 Page14 of 14

5. For such other and further relief as the court deems just and proper.

Respectfully submitted, this 18th day of July, 2012.

Dated: July 18, 2012

BREALL & BREALL, LLP

By: ______________________

Joseph M. Breall
Attorneys for Plaintiffs
CHINATOWN NEIGHBORHOOD ASSOCIATION and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT

– 14 –

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF