KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
ALEXANDRA ROBERT GORDON
Deputy Attorney General
State Bar No. 207650
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5509
  Fax:  (415) 703-5480
  E-mail:  Alexandra.RobertGordon@doj.ca.gov
*Attorneys for Defendants Governor Brown, Attorney
General Harris and Director Bonham*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHINATOWN NEIGHBORHOOD ASSOCIATION, a nonprofit corporation, and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT, a political action committee,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., Governor of the State of California, KAMALA HARRIS, Attorney General of the State of California, and CHARLTON H. BONHAM, Director, California Department of Fish and Game,**<br><br>Defendants. | CV 12 3759 PJH<br><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          October 10, 2012<br>Time:         9:00 a.m.<br>Courtroom:  3<br>Judge:        Hon. Phyllis J. Hamilton<br>Action Filed:  July 18, 2012 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

    I.     The Shark Fin Prohibition ................................................................. 2

ARGUMENT ...................................................................................................................... 3

    I.     Legal Standard ................................................................................... 3

    II.    Plaintiffs Have Failed To Meet Their Burden of Demonstrating a Likelihood of Success on the Merits ................................................ 4

        A.    Governor Brown and Attorney General Harris Are Immune From Suit Pursuant to the Eleventh Amendment ................................. 4

        B.    Plaintiffs' Facial Challenge Fails ....................................... 7

        C.    The Shark Fin Prohibition Does Not Violate the Equal Protection Clause ................................................................. 8

            1.    The Shark Fin Prohibition is facially neutral and plaintiffs have not demonstrated discriminatory purpose ........................... 8

            2.    The Shark Fin Prohibition is rationally related to a legitimate governmental purpose ........................ 11

        D.    The Shark Fin Prohibition Does Not Violate the Commerce Clause ........ 14

            1.    The Shark Fin Prohibition does not discriminate against interstate commerce nor does it regulate extraterritorially .......... 15

            2.    The Shark Fin Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce ............................ 16

        E.    The Shark Fin Prohibition is not Preempted by Federal law ................... 18

    III.   Plaintiffs Have Failed to Demonstrate Irreparable Injury ..................................... 21

    IV.   The Balance of Hardships and Public Interest Tip in Favor of Denying Relief ................................................................ 23

CONCLUSION ................................................................................................................ 24

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Agua Caliente Band of Cahuilla Indians v. Hardin*
 223 F.3d 1041 (9th Cir. 2000)..................................................................................... 5

*Alliance for the Wild Rockies v. Cottrell*
 632 F.3d 1127 (9th Cir. 2011)..................................................................................... 4

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
 476 U.S. 573 (1986).................................................................................................. 15

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
 511 U.S. 383 (1994)............................................................................................. 14, 16

*Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*
 958 F.2d 941 (9th Cir. 1992).................................................................................. 7, 19

*Christian Legal Soc'y v. Wu*
 626 F.3d 483 (9th Cir. 2010)..................................................................................... 18

*Coalition for Econ. Equity v. Wilson*
 122 F.3d 718 (9th Cir. 1997)....................................................................................... 4

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*
 527 U.S. 666 (1999).................................................................................................... 5

*Colorado River Indian Tribes v. Town of Parker*
 776 F.2d 846 (9th Cir. 1985)..................................................................................... 22

*Cramer v. Brown*
 No. CV-3130-JFW (C.D. Cal. September 12, 2012) .............................................. 16

*CTS Corp. v. Dynamics Corp. of America*
 481 U.S. 69 (1987).................................................................................................... 17

*Cupolo v. Bay Area Rapid Transit*
 5 F. Supp. 2d 1078 (N.D. Cal. 1997) .......................................................................... 4

*Dandridge v. Williams*
 397 U.S. 471 (1970)............................................................................................. 13, 14

*DISH Network Corp. v. FCC*
 653 F.3d 771 (9th Cir. 2011)....................................................................................... 4

Defendants' Opposition  (CV 12 3759 PJH)

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Doe v. Lawrence Livermore Nat'l Lab.*
   131 F.3d 836 (9th Cir. 1997).......................................................................... 4

4

*Ex parte Young*
   209 U.S. 123 (1908)................................................................................... 5, 6

5

6

*Exxon Corp. v. Governor of Maryland*
   437 U.S. 117 (1978)...................................................................................... 16

7

*FCC v. Beach Communications Inc.*
   508 U.S. 307 (1993)...................................................................................... 13

8

9

*Fed. Trade Comm'n v. Affordable Media, LLC*
   179 F.3d 1228 (9th Cir. 1999)....................................................................... 23

10

*Florida Lime & Avocado Growers, Inc. v. Paul*
   373 U.S. 132 (1963)................................................................................. 19, 20

11

12

*Gerling Global Reinsurance Corp. of Am. v. Low*
   240 F.3d 739 (9th Cir. 2001)......................................................................... 15

13

*Goldie's Bookstore, Inc. v. Superior Ct.*
   739 F.2d 466 (9th Cir. 1984)......................................................................... 22

14

15

*Healy v. Beer Inst.*
   491 U.S. 324 (1989)................................................................................. 14, 15

16

17

*Heller v. Doe*
   509 U.S. 312 (1993)................................................................................. 11, 12

18

19

*Henkell v. U.S.*
   No. S–96–2228, 1998 WL 41565 (E.D. Cal. Jan. 9, 1998)............................. 22

20

21

*Hispanic Taco Vendors of Washington v. City of Pasco*
   994 F.2d 676 (9th Cir. 1993).................................................. 10, 11, 14, 22

22

*Hotel Employees and Restaurant Employees Intern. Union v. Nevada*
   984 F.2d 1507 (9th Cir. 1993)......................................................................... 7

23

24

*Illinois Rest. Ass'n v. City of Chicago*
   492 F. Supp. 2d 891,904 (N.D. Ill. 2007) .................................................... 16

25

26

*Jones v. Rath Packing Co.*
   430 U.S. 519 (1977)...................................................................................... 19

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001)..................................................... 11

*Long v. Van de Kamp*
  961 F.2d 151 (9th Cir. 1992)................................................. 5, 6, 7

*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*
  714 F.2d 946 (9th Cir. 1983).................................................... 5

*Los Angeles Cnty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992).................................................... 5

*Los Angeles Mem'l Coliseum Comm'n v. National Football League*
  634 F.2d 1197 (9th Cir. 1980).................................................. 22

*Maine v. Taylor*
  477 U.S. 131 (1986).......................................................... 15

*Maryland v. King*
  No. 12A48, 2012 WL 3064878 (U.S. July 30, 2012) ........................... 23

*Merrifield v. Lockyer*
  547 F.3d 978 (9th Cir. 2008)............................................... 12, 18

*Mourning v. Family Publ'n Serv., Inc.*
  411 U.S. 356 (1973).......................................................... 13

*N.A.A.C.P. v. Jones*
  131 F.3d 1317 (9th Cir. 1997)................................................. 8

*Nat'l Audubon Soc'y, Inc. v. Davis*
  307 F.3d 835 (9th Cir. 2002).................................................. 6

*Nat'l Meat Ass'n v. Harris*
  132 S. Ct. 965 (2012)........................................................ 21

*National Optometrists & Opticians v. Harris*
  682 F. 3d 1144 (9th Cir. 2012)............................................ 16, 18

*National Paint Coatings Ass'n v. City of Chicago*
  43 F.3d 1124 (7th Cir. 1995)................................................. 16

*New Orleans v. Dukes*
  427 U.S. 297 (1976) ......................................................... 13

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*
  762 F.2d 1374 (9th Cir. 1985) ................................................................. 23

4

5

*Pacific Gas & Electric Co. v. State Energy Resources Cons. and Dev. Comm.*
  461 U.S. 190 (1983) ............................................................................... 19

6

*Pacific Nw. Venison Producers v. Smitch*
  20 F.3d 1008 (9th Cir. 1994) ............................................. 12, 16, 17, 18

7

8

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984) ................................................................................... 5

9

10

*People v. Weeren*
  26 Cal.3d 654 (1980) ............................................................................. 20

11

*Personnel Administrator of Massachusetts v. Feeney*
  442 U.S. 256 (1979) ................................................................................. 9

12

13

*Pharmaceutical Research and Mfrs. of America v. Walsh*
  538 U.S. 644 (2003) ............................................................................... 19

14

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ......................................................................... 15, 16

15

16

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*
  944 F.2d 597 (9th Cir. 1991) ................................................................. 22

17

18

*Retail Clerks Int'l Ass'n v. Schermerhorn*
  375 U.S. 96 (1963) ................................................................................. 19

19

20

*Reynolds v. Buchholzer*
  87 F.3d 827 (6th Cir. 1996) ................................................................... 17

21

*Rice v. Santa Fe Elevator Corp.*
  331 U.S. 218 (1947) ............................................................................... 19

22

23

*Sampson v. Murray*
  415 U.S. 61 (1974) ................................................................................. 22

24

25

*Save Our Sonoran, Inc. v. Flowers*
  408 F.3d 1113 (9th Cir. 2005) ............................................................... 23

26

*Schweiker v. Wilson*
  450 U.S. 221 (1981) ............................................................................... 14

27

28

v

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Shaw v. Reno*
   509 U.S. 630 (1993) ......................................................................................... 8

*Snoeck v. Brussa*
   153 F.3d 984 (9th Cir. 1998) ............................................................................ 7

*Ting v. AT&T*
   319 F.3d 1126 (9th Cir. 2003) .................................................................. 20, 21

*U.S. v. Cameron*
   888 F.2d 1279 (9th Cir. 1989) ........................................................................ 18

*UFO Chuting of Hawaii, Inc. v. Smith*
   508 F.3d 1189 (9th Cir. 2007) ................................................................. 17, 18

*United States v. Approximately 64,695 Pounds of Shark Fins*
   520 F.3d 976 (9th Cir. 2008) .......................................................................... 21

*United States v. Carolene Products Co.*
   304 U.S. 144 (1938) ................................................................................. 11, 14

*United States v. McDougall*
   25 F.Supp.2d 85 (N.D.N.Y 1998) ................................................................... 18

*United States v. Raines*
   362 U.S. 17 (1960) ........................................................................................... 8

*United States v. Salerno*
   481 U.S. 739 (1987) ..................................................................................... 7, 8

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
   429 U.S. 252 (1977) ................................................................................ 8, 9, 10

*Washington State Grange v. Washington State Republican Party*
   552 U.S. 442 (2008) ............................................................................... 7, 8, 20

*Washington v. Davis*
   426 U.S. 229 (1976) ................................................................................ 8, 9, 11

*Weinstein v. Edgar*
   826 F. Supp. 1165 (N.D. Ill. 1993) .................................................................. 6

*Williamson v. Mazda*
   131 S. Ct. 1131 (2011) .................................................................................... 21

vi

**TABLE OF AUTHORITIES**
(continued)

Page

*Winter v. Natural Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ........................................................................................... 3, 4, 14

*Yee v. City of Escondido*
   503 U.S. 519 (1992) .................................................................................................... 7

*Yick Wo v. Hopkins*
   118 U.S. 356 (1886) .................................................................................................... 9

STATUTES

16 U.S.C.
   §§ 1801-1882 .................................................................................................... 17, 20
   §§ 1801-1884 ............................................................................................................ 18
   § 1802 ....................................................................................................................... 20
   § 1811(a) ................................................................................................................... 20
   §§ 1856(a)(1) & (3) .................................................................................................. 20
   § 1857 (1)(G) ........................................................................................................... 20
   § 3372 ....................................................................................................................... 18

42 U.S.C.
   § 1983 ................................................................................................................. 3, 4, 7

California Fish and Game Code
   § 1002 ......................................................................................................................... 3
   § 2021 ......................................................................................................................... 2
   § 2021.5 ...................................................................................................................... 3
   §§ 2021 and 2021.5 ........................................................................................... passim
   § 2021, subdivision (b) .............................................................................................. 2

Code of Federal Regulations
   § 1204(e)(1) .............................................................................................................. 21
   § 600.1201(c) ..................................................................................................... 19, 21
   § 600.1203(a)(5) ...................................................................................................... 21

Magnuson Stevens Act ........................................................................................... 18, 19, 20

Shark Finning Prohibition Act of 2000 and the Shark Conservation Act of 2010 ...................... 18

Stats. 2011, ch. 524 (A.B. 376)
   § 1(c) .......................................................................................................................... 2
   § 1(d) .......................................................................................................................... 2
   § 1(g) .......................................................................................................................... 2

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3  **CONSTITUTIONAL PROVISIONS**

4  United States Constitution

5      Article I, § 8, cl. 3 ............................................................................................... 14
    Eleventh Amendment.......................................................................................... 1, 4, 5, 6

6  California Constitution

7      Article V, §§ 1, 13.................................................................................................. 6

8  **COURT RULES**

9  Federal Rules of Evidence

10      401-402, 602, and 701........................................................................................ 13
    401-402 and 702................................................................................................. 13

11      401-403 ............................................................................................................... 13
    402, 602, 701 ..................................................................................................... 10

12  N.D. Local Rule 7-4 (a)(5)........................................................................................ 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

California Fish and Game Code sections 2021 and 2021.5 outlaw the possession, sale and trade of shark fins in California.  Plaintiffs now ask this court to enjoin this important legislation, which seeks to end the devastating practice of shark finning and thereby promote shark conservation and the consequent health of the marine ecosystem.  Defendants Governor Edmund G. Brown Jr., Attorney General Kamala D. Harris, and Fish and Game Department Director Charlton H. Bonham ("Defendants") respectfully file this opposition to plaintiffs Chinatown Neighborhood Association and Asian Americans for Political Advancement's ("Plaintiffs") motion for a preliminary injunction.  Plaintiffs' motion is both procedurally defective and substantively meritless and thus must fail.  As an initial matter, defendants the Governor of California and the Attorney General cannot be enjoined, and indeed should be dismissed from this action, because they are immune from suit under the Eleventh Amendment to the United States Constitution.

Furthermore, Plaintiffs cannot meet their burden to show a likelihood of success on the merits.  Plaintiffs maintain that the State's prohibition on shark fins is facially invalid.  Specifically, Plaintiffs allege that because sections 2021 and 2021.5 "target" the cultural practices of a small fraction of Chinese Americans and make it more difficult for some merchants who wish to continue engaging in the lucrative shark fin trade to do so, these statutes violate the Equal Protection, Commerce, and Supremacy Clauses of the U.S. Constitution.  However, Plaintiffs have not demonstrated that the Equal Protection, Commerce, and Supremacy Clauses are even implicated by the challenged legislation, let alone violated by it.  Sections 2021 and 2021.5 are facially neutral, do not discriminate on the basis of race or against interstate commerce, and are rationally related to a legitimate governmental interest in protecting health, safety and the environment.  Accordingly, Plaintiffs cannot prevail on their Equal Protection and Commerce Clause claims.  With respect to the Supremacy Clause, Plaintiffs have not identified a single basis, and there is none, for finding that sections 2021 and 2021.5 are preempted by federal legislation.

Plaintiffs also fail to establish any cognizable injury that they will suffer in the absence of

1

injunctive relief.  By contrast, the harm to the public interest and to the health of our oceans if a preliminary injunction were issued would be severe.  Prior to the enactment of sections 2021 and 2021.5, California was the largest U.S. market for shark fins.  This demand helped drive the practice of finning, which causes the death of tens of millions of sharks every year, and the decline of shark populations.  The decline of sharks, in turn, poses a serious threat to the ocean ecosystem and biodiversity, and causes harmful cascade effects, such as "red tides" that threaten the health and the economies of coastal regions worldwide.  Plaintiffs have not demonstrated that any effect caused by the prohibition on shark fins in California outweighs the grave series of consequences to the environment and public health caused by finning.  Accordingly, the law, the balance of equities, and the public interest all dictate that Plaintiffs' motion for a preliminary injunction be denied.

# BACKGROUND

## I. THE SHARK FIN PROHIBITION

The California Legislature has determined that the practice of shark finning, where a shark is caught, its fins cut off, and the carcass is dumped back into the water, causes tens of millions of sharks to die each year.  Stats. 2011, ch. 524 (A.B. 376), §1(d).[1]  Sharks occupy the top of the marine food chain and their decline constitutes a serious threat to the ocean ecosystem and biodiversity.  *Id.*, §1(c).  The Legislature also found that shark fin often contains high amounts of mercury, which has been proven dangerous to people's health.  *Id.*, §1(g).  In order to address these problems and promote the conservation of sharks by, inter alia, eliminating the California market for fins, California enacted Assembly Bills 376 and 853, codified as Fish and Game Code sections 2021 and 2021.5 (collectively, the "Shark Fin Prohibition").

Fish and Game Code section 2021 makes it "unlawful for any person to possess, sell, offer for trade, trade, or distribute a shark fin."  Fish & Game Code § 2021, subd. (b).  Section 2021 enumerates three exceptions to this prohibition: (1) any person who holds a license or permit

---

[1] For the Court's convenience, copies of Fish and Game Code sections 2021 and 2021.5, AB 376 (2011), and AB 853 (2011) are attached to the Declaration of Alexandra Robert Gordon at Exhibits L through O.

1  pursuant to Fish and Game Code section 1002 for scientific or educational purposes may possess

2  a shark fin or fins consistent with that license or permit; (2) any person who holds a license or

3  permit issued by the department to take or land sharks for recreational or commercial purposes

4  may possess a shark fin or fins consistent with that license or permit; and (3) before January 1,

5  2013, any restaurant may possess, sell, offer for sale, trade, or distribute a shark fin possessed by

6  that restaurant, as of January 1, 2012, that is prepared for consumption.  *Id.*, §§ 2021, subds. (c),

7  (d) & (e).

8       Section 2021.5 includes additional exemptions and delays the implementation of the Shark

9  Fin Prohibition until July 2013.  Specifically, section 2021.5 provides that "[b]efore July 1, 2013,

10  any person may possess, sell, offer for sale, trade, or distribute a shark fin possessed by that

11  person, as of January 1, 2012."  *Id.*, § 2021.5, subd. (a)(3).  The Shark Fin Prohibition was signed

12  into law on October 7, 2011, and became effective on January 1, 2012.

13  **II.   PROCEDURAL HISTORY**

14       On July 18, 2012, Plaintiffs filed this action for declaratory and injunctive relief.  Plaintiff

15  Chinatown Neighborhood Association, a nonprofit corporation/voluntary association, and

16  Plaintiff Asian Americans for Political Advancement, a political action committee, are comprised

17  of members who are "people of Chinese origin who are engaged in cultural practices involving

18  the use of shark fins and in business practices involving the buying and selling of shark fins in

19  interstate commerce."  Complaint, ¶¶ 6&7.  Plaintiffs allege that the Shark Fin Prohibition

20  violates the Equal Protection Clause, the Commerce Clause, and the Supremacy Clause of the

21  U.S. Constitution, as well as 42 U.S.C. § 1983.  *Id*, ¶ 1.  Plaintiffs filed the instant motion for a

22  preliminary injunction on August 9, 2012.

23                     **ARGUMENT**

24  **I.   LEGAL STANDARD**

25       In order to prevail on a motion for a preliminary injunction, "a plaintiff must show (1) a

26  strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if

27  preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) that an

28  injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

1   (2008).  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates

2   that serious questions going to the merits were raised and the balance of hardships tips sharply in

3   the plaintiff's favor."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir.

4   2011) (internal citation omitted).  Nonetheless, Plaintiffs must make a showing of all four *Winter*

5   factors even under the alternative sliding scale test.  *Id*. at 1132, 1135.

6          "A preliminary injunction is an extraordinary remedy never awarded as a matter of right.  In

7   each case, courts must balance the competing claims of injury and must consider the effect on

8   each party of the granting or withholding of the requested relief.  In exercising their sound

9   discretion, courts of equity should pay particular regard for the public consequences in employing

10  the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (internal quotations and citations

11  omitted); *see also DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).  Because a

12  preliminary injunction is an extraordinary remedy, the moving party must establish the elements

13  necessary to obtain injunctive relief by a "clear showing."  *Winter*, 555 U.S. at 22.  Plaintiffs'

14  burden is particularly heavy when they seek to enjoin operation of a statute because "it is clear

15  that a state suffers irreparable injury whenever an enactment of its people or their representatives

16  is enjoined."  *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  "A strong

17  factual record is therefore necessary before a federal district court may enjoin a State agency."

18  *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997).  In this case,

19  Plaintiffs cannot meet their burden and the motion for a preliminary injunction should be denied.

20  **II.     PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF DEMONSTRATING A**
    **        LIKELIHOOD OF SUCCESS ON THE MERITS**

21

22          **A.     Governor Brown and Attorney General Harris Are Immune From Suit**
                    **Pursuant to the Eleventh Amendment**

23          All of Plaintiffs' claims against the Governor and the Attorney General fail, as these

24  defendants are immune from suit.  Plaintiffs allege that their case arises under the Constitution of

25  the United States and 42 U.S.C. § 1983.  Complaint, ¶ 1.  "Claims under § 1983 are limited by the

26  scope of the Eleventh Amendment."  *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839

27  (9th Cir. 1997).  The Eleventh Amendment bars suits against a state for all types of legal or

28  equitable relief in the absence of consent by the state or abrogation of that immunity by Congress.

1   *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999);

2   *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).  The

3   Eleventh Amendment [also] bars a suit against state officials when 'the state is the real,

4   substantial party in interest.'"  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 (citation omitted).

5   The "'general rule is that relief sought nominally against an officer is in fact against the sovereign

6   if the decree would operate against the latter.'"  *Id.* (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58

7   (1963) (per curiam)).  "And, as when the State itself is named as the defendant, a suit against state

8   officials that is in fact a suit against a State is barred regardless of whether it seeks damages or

9   injunctive relief."  *Id.* at 101-02.

10       The Supreme Court recognized a limited exception to Eleventh Amendment immunity in

11   *Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* exception allows "suits for

12   prospective declaratory and injunctive relief against state officers, sued in their official capacities,

13   to enjoin an alleged ongoing violation of federal law."  *Agua Caliente Band of Cahuilla Indians v.*

14   *Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).  For the *Ex parte Young* exception to apply,

15   however, the state officer must have a connection with the enforcement of the allegedly

16   unconstitutional statute.  *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992).  "This

17   connection must be fairly direct; a generalized duty to enforce state law or general supervisory

18   power over the persons responsible for enforcing the challenged provision will not subject an

19   official to suit."  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing

20   *Long*, 961 F.2d at 152; *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d

21   946, 953 (9th Cir. 1983)).  Further, "there must be a threat of enforcement."  *Long*, 961 F.2d at

22   152.  "Absent a real likelihood that the state official will employ his supervisory powers against

23   plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction."  *Id.*

24       The Legislature did not give the Governor or the Attorney General any special role in

25   administering or enforcing the Shark Fin Prohibition.  Perhaps for this reason, the Complaint

26   contains no allegations and Plaintiffs have submitted no evidence establishing the Governor's or

27   the Attorney General's connection, direct or otherwise, to the enforcement of the Shark Fin

28   Prohibition.  Rather, the one paragraph of the Complaint that specifically mentions the Governor

5

and the Attorney General states only that they, along with Director Bonham, "enforce the Fish and Game Code."  Complaint, ¶ 8.  However, the Governor and the Attorney General do not have "direct authority or principal responsibility" for enforcing either the Fish and Game Code generally or the Shark Fin Prohibition in particular.  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847, *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).  Thus, while the Complaint acknowledges that the Shark Fin Prohibition provides for criminal enforcement of its provisions, *see* Complaint, ¶¶ 16-17, there is no suggestion that either the Governor or the Attorney General would be directly responsible for or even involved in such enforcement.[2]

To the extent that the Governor and the Attorney General are named as defendants based upon their general supervisory powers or duties to enforce state law, *see* Cal. Const., art. V, §§ 1, 13, this does not establish a sufficient connection with enforcement to satisfy *Ex Parte Young*. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d at 847 (holding suit was "barred against the Governor and the state Secretary of Resources, as there is no showing that they have the requisite enforcement connection to Proposition 4"); *Long*, 961 F.2d at 152 ("the general supervisory powers of the California Attorney General" did not establish the connection with enforcement required by *Ex parte Young*); *see also Weinstein v. Edgar*, 826 F. Supp. 1165, 1167 (N.D. Ill. 1993) (stating that if Governor's general obligation to faithfully execute the laws was a sufficient connection to the enforcement of challenged statute, "then the constitutionality of every statute enacted by the Illinois legislature necessarily could be challenged by merely naming the Governor as a party defendant").  Accordingly, because there is neither the requisite connection between either the Governor or the Attorney General and the enforcement of the Shark Fin Prohibition nor a "real likelihood" that these defendants will "employ [their] supervisory powers against plaintiffs' interests," Plaintiffs' claims against these defendants are barred by the Eleventh

---

[2] With respect to enforcement, the Complaint states only that the Defendants "enforce the Fish and Game Code" and that the Shark Fin Prohibition, "if enforced against Plaintiffs' members would" violate their constitutional rights.  Complaint, ¶¶ 2, 8.  There is no allegation that any defendant, let alone a particular defendant, has actually threatened to enforce the Shark Fin Prohibition.

1   Amendment.  *Long*, 961 F.2d at 152; *see also Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir.

2   1998).

3       **B.    Plaintiffs' Facial Challenge Fails**

4       Plaintiffs bring a facial challenge to the Shark Fin Prohibition on the grounds that it violates

5   the Equal Protection, Commerce, and Supremacy Clauses of the United States Constitution as

6   well as 42 U.S.C. § 1983.[3]  In order to succeed on a facial challenge, Plaintiffs "must establish

7   that no set of circumstances exists under which the [regulation or statute] would be valid."

8   *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Chemical Specialties Mfrs. Ass'n,*

9   *Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992).  To support a finding of facial

10  unconstitutionality, voiding a statute or regulation as a whole, Plaintiffs cannot prevail by

11  suggesting that in some future hypothetical situation constitutional problems may possibly arise

12  as to the particular *application* of the statute.  Rather, they must show that the statute is

13  unconstitutional in *all* of its applications.  *See Washington State Grange v. Washington State*

14  *Republican Party*, 552 U.S. 442, 450 (2008).  Where, as here, a statute has a "plainly legitimate

15  sweep," a facial challenge must fail.  *Id.* at 449 (citation and internal quotations omitted).

16      Facial challenges to validly enacted statutes are disfavored because they rest on speculation,

17  run contrary to the principle of judicial restraint that courts should not "anticipate" questions of

18  constitutional law in advance of the necessity of deciding one, and "threaten to short circuit the

19  democratic process by preventing laws embodying the will of the people from being implemented

20  in a manner consistent with the Constitution." *Id.* at 450-51.  "In determining whether a law is

21  facially invalid, we must be careful not to go beyond the statute's facial requirements and

22

23      [3]  The nature of Plaintiffs' challenge, be it facial or as applied, to the Shark Fin Prohibition
    is not entirely clear from the face of the Complaint, insofar as Plaintiffs make some allegations
24  regarding the prospective effects that the law purportedly will have on them.  *See, e.g.,*
    Complaint, ¶¶ 8, 17, 25.  However, given that there are no allegations that the Prohibition has
25  been applied to Plaintiffs, and in fact, it has not been, only a facial challenge is proper at this
    juncture.  Because the Shark Fin Prohibition has not yet been enforced, and does not take full
26  effect until July 1, 2013, an as applied challenge would not be ripe.  *See, e.g., Yee v. City of*
    *Escondido*, 503 U.S. 519, 533-34 (1992); *Hotel Employees and Restaurant Employees Intern.*
27  *Union v. Nevada*, 984 F.2d 1507, 1517 (9th Cir. 1993).
    .
28

7

1   speculate about 'hypothetical' or 'imaginary' cases." *Id.* at 449-50 (quoting *United States v.*

2   *Raines*, 362 U.S. 17, 22 (1960)).  Here, Plaintiffs have not met the "heavy burden" to show that

3   the Shark Fin Prohibition facially violates the Equal Protection Clause, the Commerce Clause, or

4   the Supremacy Clause.  *United States v. Salerno*, 481 U.S at 74 5.  Indeed, Plaintiffs' evidence

5   does not establish that the Shark Fin Prohibition violates these clauses under *any* circumstance, let

6   alone *every* circumstance.  *See id.*

7          **C.     The Shark Fin Prohibition Does Not Violate the Equal Protection Clause**

8          Plaintiffs allege that the Shark Fin Prohibition facially discriminates against people of

9   Chinese national origin in violation of the Equal Protection Clause.  Complaint, ¶¶ 29-34.  The

10  essence of Plaintiffs' equal protection claim is that the Legislature's stated goal of protecting the

11  marine ecosystem by promoting the conservation of the declining shark population is pretextual,

12  and that the true purpose and effect of the Shark Fin Prohibition is to "target" ancient Chinese

13  cultural practices.  *See* Plaintiffs' Brief, 15-18.  This argument, which finds no support in either

14  fact or law, fails and thus, Plaintiffs are not likely to prevail on their equal protection claim.

15              **1. The Shark Fin Prohibition is facially neutral and plaintiffs have not**
                   **demonstrated discriminatory purpose**
16

17          As an initial matter, Plaintiffs are incorrect that strict scrutiny automatically applies to their

18  challenge to the Shark Fin Prohibition merely because they have alleged a disproportionate effect

19  on (some) Chinese Americans.  *See* Complaint, ¶ 30, Plaintiffs' Brief, 15: 11-14.  Strict scrutiny

20  is reserved for laws that facially discriminate on the basis of race.  *See, e.g.*, *Shaw v. Reno*, 509

21  U.S. 630, 642 (1993); *N.A.A.C.P. v. Jones*, 131 F.3d 1317, 1321 (9th Cir. 1997).  Where, as here,

22  a statute is facially neutral, Plaintiffs must prove that the intent and purpose of the law was to

23  discriminate against an identifiable class of persons.  *See Washington v. Davis*, 426 U.S. 229, 239

24  (1976) ("Standing alone [disparate impact] does not trigger the rule that racial classifications are

25  to be subjected to the strictest scrutiny and are justifiable only by the weightiest of

26  considerations"); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429

27  U.S. 252, 265 (1977).  Plaintiffs cannot make this showing.

28          Plaintiffs' main evidence of the discriminatory purpose underlying the Shark Fin

8

1    Prohibition is that it "almost solely affects people of Chinese national origin as the Chinese are

2    the only group that utilizes shark fins." Plaintiffs' Brief, 16:1-3. Even assuming, despite the lack

3    of evidentiary support for it in the record, that this statement is true, it is not enough to show only

4    that a law has a disparate impact on an identifiable group. *Arlington Heights*, 429 U.S. at 264-65.

5    Rather, Plaintiffs must show that the law was enacted "'because of,' not merely 'in spite of'" its

6    disparate impact on that group. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S.

7    256, 272 (1979). The Supreme Court has made clear that "a law, neutral on its face and serving

8    ends otherwise within the power of government to pursue, is [not] invalid under the Equal

9    Protection Clause simply because it may affect a greater proportion of one race than of another.

10   Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial

11   discrimination forbidden by the Constitution." *Washington v. Davis*, 426 U.S. at 239.

12         This is not, as Plaintiffs suggest, the "rare case" where Plaintiffs are excused from

13   providing proof of discriminatory purpose because a "clear pattern unexplainable on grounds

14   other than race, emerges from the effect of the state action." *Arlington Heights*, 429 U.S at 266.[4]

15   To the contrary, despite Plaintiffs' repeated assertions of the centrality of shark fins to Chinese

16   culture, the Shark Fin Prohibition does not affect Chinese or Chinese-Americans as a group.

17   Indeed, Plaintiffs' own evidence suggests that a mere three percent of Chinese Americans eat

18   shark fins regularly and approximately half of Chinese Americans *support* the Shark Fin

19   Prohibition. *See* Declaration of Joseph M. Breall ("Breall Decl."), Exh. C; *see also* Declaration

20   of Alexandra Robert Gordon ("Gordon Decl."), Exh A (2011 survey finding that 70 percent of

21   Chinese-American voters in California support legislation making it illegal to sell or distribute

22   shark fins). Notably, one of the Shark Fin Prohibition's co-authors, Assemblyman Paul Fong, is

23   ─────────────────────

24         [4] In support of their equal protection argument, Plaintiffs cite to *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), a case that is entirely distinguishable. In *Yick Wo*, San Francisco passed an

25   ordinance that made it unlawful for any person to maintain a laundry in wooden structures and then issued variances to almost every white applicant while denying variances to every Chinese

26   applicant. *Id.* at 368, 373. The Supreme Court held that such a stark pattern of disparate enforcement established a denial of equal protection. *Id.* at 374. The Supreme Court

27   subsequently stated that "such cases are rare" and that "[a]bsent a pattern as stark as that in … *Yick Wo*, impact alone is not determinative, and the Court must look to other evidence."

28   *Arlington Heights*, 429 U.S at 266.

1   Chinese American and the Shark Fin Prohibition was sponsored by at least one group of Asian

2   Americans who believe that shark finning is counter to Asian values.  *See* Breall Decl., Exhs. A,

3   C & D;.Gordon Decl., Exhs. B, C & D.  In recognition of the need to stop the practice of finning

4   and promote shark conservation, the Chinese government recently has banned serving shark fins

5   at official functions.  *See* Gordon Decl., Exh E.  While shark fin may be an "ancient,"

6   "important," and "key traditional dish" in Chinese culture, its use is not uniformly, let alone

7   immutably, tied to being Chinese.  Accordingly, the impact of the Shark Fin Prohibition does not

8   support a finding of intentional discrimination.  *See Hispanic Taco Vendors of Washington v. City*

9   *of Pasco*, 994 F.2d 676, 679 (9th Cir. 1993).

10      Plaintiffs also fail to provide any other meaningful evidence to support their claim that the

11   Shark Fin Prohibition was motivated by racial discrimination.  *See Arlington Heights*, 429 U.S at

12   266-67 (setting forth permissible evidence of discriminatory intent, such as a law's historical

13   background or irregularities in its passage).  As noted above, the Shark Fin Prohibition is based

14   on legislative findings that: (1) sharks occupy the top of the marine food chain and their decline

15   constitutes a serious threat to the ocean ecosystem and biodiversity; (2) the practice of shark

16   finning causes tens of millions of sharks to die each year; and (3) by eliminating an important end

17   market, and thereby impacting the demand for shark fins, California can help ensure that sharks

18   do not become extinct.  *See* Stats. 2011, ch. 524 (A.B. 376), §1.  Against this clear expression of

19   the Legislature's intent to promote shark conservation and consequently to protect the health of

20   our oceans, Plaintiffs offer only a few out-of-context statements by Assemblyman Fong,

21   Assemblyman Huffman, the Executive Director of WildAid, and an unidentified "prominent San

22   Francisco chef."  Plaintiffs' Brief, 5-6, 16.[5]

23      None of Plaintiffs' proffered statements suggests that the Legislature's stated purpose is

24   "false" or indicates any invidious racial intent.  Assemblyman Fong's statement, which includes a

25   comparison to the practice of foot binding, appears to reflect a belief that where cultural practices

---

26   [5] Plaintiffs also submit declarations from their members opining that the Shark Fin
27   Prohibition is "racist" and discriminatory.  *See, e.g.,* Declaration of Pius Lee.  These statements
    lack foundation and are improper legal conclusions and should be disregarded.  Fed. R. Evid. 402,
    602, 701.
28

1   are injurious they should and often do evolve.  *See* Breall Decl., Exhs. A, B & E.  Assemblyman

2   Huffman's remark that the Shark Fin Prohibition, in order to "[t]o save [sharks] from extinction,

3   targets the demand for these shark fins by banning their sale and possession here in California" is

4   not an expression of racial animus.  Rather, the statement simply describes the purpose of the

5   Shark Fin Prohibition, namely, to lessen the demand that drives finning by eliminating an

6   important end market for shark fins.  *See* Breall Decl., Exh. F; Stats. 2011, ch. 524 (A.B. 376), §1.

7   Moreover, regardless of how one interprets these remarks, the "legitimate purposes" of the Shark

8   Fin Prohibition are "not open to impeachment by evidence that [a legislator was] actually

9   motivated by racial considerations."  *Washington v. Davis*, *Washington v. Davis*, 426 U.S. at 243

10  (citation omitted); *see also Hispanic Taco Vendors*, 994 F.2d at 680 (Where the government's

11  "explanation of the ordinance is neutral and legitimate, the court "will not impute discriminatory

12  motives to the [Legislature] without any supporting evidence").  Plaintiffs have thus failed to

13  prove that the Shark Fin Prohibition was motivated by a discriminatory purpose.

### 2.  The Shark Fin Prohibition is rationally related to a legitimate governmental purpose

16      Because it is not facially discriminatory and Plaintiffs have failed to prove discriminatory

17  intent, the Shark Fin Prohibition is subject only to rational basis review.  *See Lee v. City of Los*

18  *Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001).  Challenged legislation survives rational basis

19  review as long as, in enacting legislation, the legislature is acting in pursuit of a permissible

20  government interest that bears a rational relationship to the means chosen to achieve that interest.

21  *Heller v. Doe*, 509 U.S. 312, 319 (1993).  Pursuant to rational basis review, when legislative

22  judgment is called into question on equal protection grounds and the issue is debatable, the

23  decision of the legislature must be upheld if "any state of facts either known or which could

24  reasonably be assumed affords support for it."  *United States v. Carolene Products Co.*, 304 U.S.

25  144, 154 (1938).  The measure at issue "is not subject to courtroom factfinding and may be based

26  on rational speculation unsupported by evidence or empirical data."  *Heller*, 509 U.S. at 319

27  (internal quotation marks omitted).  "[T]he burden is on the one attacking the legislative

28  arrangement to negative every conceivable basis which might support it...."  *Id.* (internal

11

1    quotation marks omitted).  Further, a legislature's rationale may pass rational basis review "even

2    when there is an imperfect fit between means and ends."  *Id*. at 321.  In sum, the measure need

3    only have "arguable" assumptions underlying its "plausible rationales" to survive constitutional

4    challenge.  *Id*. at 333.

5         The Shark Fin Prohibition easily passes rational basis review.  The purpose of the Shark Fin

6    Prohibition is to protect the marine ecosystem and biodiversity by promoting the conservation of

7    sharks, which, according to legislative findings is a "top predator" essential to the health of our

8    oceans.  *See* Stats. 2011, ch. 524 (A.B. 376).  The Legislature also found that shark fin often

9    contains high amounts of mercury, which has been proven dangerous to people's health.  *Id*.  By

10   eliminating the California market for shark fins, the Legislature seeks to stop a practice that poses

11   a serious risk of harm, ranging from the over consumption of mercury-laden food to the

12   destruction of the ocean ecosystem.  *Id*.  The protection of public health, wildlife, and of the

13   ecosystem, is a legitimate state interest and/or exercise of police power.  *Merrifield v. Lockyer*,

14   547 F.3d 978, 986 (9th Cir. 2008) ("the first aspect of the rational basis test is easily satisfied by

15   the government's interests in public health and safety and consumer protection"); *Pacific Nw.*

16   *Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir. 1994) (the protection of wildlife and

17   other natural resources is "one of the state's most important interests").  Prohibiting the

18   possession, sale, trade, and distribution of shark fins in California is rationally related to this

19   interest.  There is considerable evidence that the practice of finning, which is widespread and

20   driven by demand for fins, plays a dominant role in causing shark population declines.  *See*

21   Gordon Decl., Exhs. F, G, H, & I.  Prior to the enactment of the Shark Fin Prohibition, California

22   accounted for approximately 87 percent of all U.S. shark fin imports and 96 percent of all exports.

23   *See id*., Exh. J.  The rationale that eliminating such an important market for shark fins would

24   decrease finning and promote shark conservation is more than "plausible."  *Heller*, 509 U.S. at

25   319.

26        Plaintiffs contend that the Shark Fin Prohibition does not actually further any objective

27   related to the protection of sharks because it has no practical effect on finning and shark

28   conservation.  *See* Plaintiffs' Brief, 7-8, 16-18.  Plaintiffs argue both that Shark Fin Prohibition

                                            12

does not do anything beyond what federal legislation already accomplishes and that it goes too far in that it is not narrowly tailored to achieve its purpose.  *See id.*  In support of these arguments, Plaintiffs proffer a variety of evidentiary support for, among other things, the propositions that: (1) existing legislation is sufficient to protect the shark population; (2) the Shark Fin Prohibition is unnecessary, as many species of sharks, such as spiny dogfish, are not in danger of becoming extinct; and (3) the practice of shark finning is "grossly overstated."  *See, e.g.* Declarations of Dr. John Whiteside, Jr., Dr. James Sulikowski, and John Bateman.  Plaintiffs' evidence is largely improper and highly subject to dispute.[6]  *See, e.g.*, Gordon Decl., Exhs. H, I & J.  Moreover, and of greater significance, it is entirely legally irrelevant.

"[E]qual protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *FCC v. Beach Communications*, Inc., 508 U.S. 307, 313 (1993).  "The judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines....").  *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam).  Further, rational-basis review does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question.  *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 378, (1973).  A statute cannot be invalidated on rational basis review simply because it may not succeed in bringing about the result it seeks to accomplish, or because its classifications lack razor-sharp precision.  *See Dandridge v. Williams*, 397 U.S. 471, 485 (1970).  Here, the Legislature, based on considerable scientific evidence, has determined both that there is a dangerous decline in the shark population due to finning, and that a prohibition on the

---

[6] Pursuant to Federal Rules of Evidence 401-402, 602, and 701, Defendants object to the Declarations of John Bateman, Mike Flynn, John Hett, Donald Krebs, Pius Lee, and Mark Twinam as irrelevant, overbroad, lacking foundation, based on speculation, improper expert opinion from a lay witness, and containing legal conclusions.  Pursuant to Federal Rules of Evidence 401-402 and 702, Defendants object the Declarations of Dr. Robert Hueter, Dr. Thomas In-Sing Leung, Dr. James Sulikowski, Dr. Vidar Wepestad, and Dr. John Whiteside, Jr. as irrelevant and inadmissible expert opinion, overbroad, lacking foundation and competence, and containing legal conclusions.  Defendants object generally to all of the declarations filed by Plaintiffs in support of their motion in that they are irrelevant for the reasons articulated above.  Fed. R. Evid. 401-403.

13

1   possession, trade, sale, and distribution of shark fins is an effective way to combat this problem.

2   *See* Stats. 2011, ch. 524 (A.B. 376); Gordon Decl., Exh. K.  Because the Shark Fin Prohibition

3   "advances legitimate goals in a rational fashion," Plaintiffs various attempts to second guess the

4   Legislature regarding the vulnerability of sharks and our marine ecosystem, the necessity and

5   efficacy of the Shark Fin Prohibition, and/or the purported superiority of less restrictive

6   legislation must be disregarded.  *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981); *Carolene*

7   *Products Co.*, 304 U.S. at 154. [7]

8        Ultimately, because the Shark Fin Prohibition neither discriminates on the basis of race nor

9   is based on a discriminatory purpose and because it is rationally related to a legitimate

10  governmental interest, Plaintiffs cannot meet their burden of showing a likelihood of success on

11  the merits of the equal protection claim.  *See Winter*, 555 U.S. at 20; *Hispanic Taco Vendors*, 994

12  F.2d at 679-81.

13       **D.   The Shark Fin Prohibition Does Not Violate the Commerce Clause**

14       The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations,

15  and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  The Commerce Clause includes

16  an implied limitation on the states' authority to adopt legislation that affects commerce.  This

17  implied limitation is often referred to as the negative or dormant Commerce Clause.  *Healy v.*

18  *Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to

19  "prohibit state or municipal laws whose object is local economic protectionism, laws that would

20  excite those jealousies and retaliatory measures the Constitution was designed to prevent."  *C & A*

21  *Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  However, its restrictions

22  are "by no means absolute" and "[s]tates retain authority under their general police powers to

23  regulate matters of legitimate local concern, even though interstate commerce may be affected."

24  _____

25       [7] Plaintiffs assert that Shark Fin Prohibition places "arbitrary restrictions" on which parts
of the shark may be used.  Plaintiffs' Brief, 17.  As discussed above, Plaintiffs have not
demonstrated that the Legislature's decision to prohibit shark fins, as opposed to the entire shark,

26  is arbitrary or irrational so as to offend the Equal Protection Clause.  *See, e.g.*, *Dandridge v.*
*Williams*, 397 U.S. at 485.  Moreover, there is considerable evidence that shark products, other

27  than the fin, are in low demand and do not drive the practices of finning or overfishing.  *See, e.g.*,
Gordon Decl., Exhs. H at pp. 3-4 & J.

28

1   *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotations omitted).  "As long as a State

2   does not needlessly obstruct interstate trade or attempt to place itself in a position of economic

3   isolation, it retains broad regulatory authority to protect the health and safety of its citizens and

4   the integrity of its natural resources."  *Id*. at 151 (citations and quotations omitted).

5        Whether state legislation violates the dormant Commerce Clause is generally analyzed

6   under a two-tiered approach.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476

7   U.S. 573, 578-79 (1986).  A statute is essentially per se invalid if it directly regulates or

8   discriminates against interstate commerce or if its effect is to favor in-state economic interests

9   over out-of-state interests.  *Id*. at 579.  On the other hand, when a statute is nondiscriminatory and

10  "has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has]

11  examined whether the State's interest is legitimate and whether the burden on interstate

12  commerce clearly exceeds the local benefits."  *Id*. (citing *Pike v. Bruce Church, Inc*., 397 U.S.

13  137, 142 (1970)).

14              **1.  The Shark Fin Prohibition does not discriminate against interstate
                    commerce nor does it regulate extraterritorially**

15

16        Plaintiffs do not, and cannot, allege that the Shark Fin Prohibition either regulates

17  extraterritorially or discriminates in favor of in-state interests.  The Shark Fin Prohibition bans,

18  subject to limited exceptions, the possession, sale, trade, and distribution of shark fins in

19  California.  It is facially neutral and treats all shark fins, regardless of their point of origin, exactly

20  the same.  *See generally*, Fish & Game Code §§ 2021 & 2021.5.  The Shark Fin Prohibition also

21  does not directly, or indirectly, control commerce occurring wholly outside of California.  *Healy*

22  *v. Beer Inst.*, 491 U.S. at 336 (invalidating a statute under the Commerce Clause because it had

23  the practical effect of controlling prices in other states); *Gerling Global Reinsurance Corp. of Am.*

24  *v. Low*, 240 F.3d 739, 746 (9th Cir. 2001) (holding state law did not violate Commerce Clause

25  where statute "on its face, does not regulate foreign insurance policies, or control the substantive

26  conduct of a foreign insurer, or otherwise affect 'the business of insurance' in any other

27  country").  Accordingly, it is Plaintiffs' burden to establish that any incidental burdens on

28  interstate commerce caused by the Shark Fin Prohibition are clearly excessive in relation to the

putative local benefits.  *Pike v. Bruce Church, Inc.*, 397 U.S. at 142; *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d at 1013.

### 2. The Shark Fin Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce

The Ninth Circuit recently has clarified that where, as here, a regulation "does not impose a significant burden on interstate commerce, it follows that there can not be a burden on interstate commerce that is 'clearly excessive in relation to the putative local benefits' under *Pike*" and a full application of the *Pike* balancing test is not required.  *National Optometrists & Opticians v. Harris*, 682 F. 3d 1144, (9th Cir. 2012) (citing *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125-129 (1978)); *see also National Paint Coatings Ass'n v. City of Chicago*, 43 F.3d 1124, 1132 (7th Cir. 1995) ("the ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect.  No disparate treatment, no disparate impact, no problem under the dormant commerce clause"); *Illinois Rest. Ass'n v. City of Chicago*, 492 F. Supp. 2d 891,904 (N.D. Ill. 2007) (same).

Plaintiffs have not identified any significant burden on interstate commerce.  At most, Plaintiffs argue that the Shark Fin Prohibition will be damaging to them and their industries.  *See* Plaintiffs' Brief, 11-12.  However, the point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests, not to protect the economic interests of businesses engaged in interstate commerce.  *See Carbone,* 511 U.S. at 390.  Indeed, the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."  *Exxon Corp. v. Governor of Maryland*, 437 U.S. at 127-128; *see also National Optometrists*, 682 F. 3d at 1152 & n. 11 ("the dormant Commerce Clause does not protect a particular company's profits"); Gordon Decl., Exh. P (*Cramer v. Brown*, No. CV-3130-JFW (C.D. Cal. September 12, 2012) (dismissing Commerce Clause challenge to Proposition 2, stating that "the mere fact that the price of eggs may increase or that egg production may shift from in-state egg farmers to out-of-state farmers" is not a significant burden on interstate commerce)).  Plaintiffs' unelaborated suggestion that the Shark Fin Prohibition "unnecessarily restricts the shark fin trade *entirely*," and is "therefore a blatant excessive

16

1   restriction on interstate commerce" also fails.  Plaintiffs' Brief, 18 (emphasis in original);

2   Complaint ¶ 40.  The complete "restriction" of trade is entirely permissible under the Commerce

3   Clause.  "An import ban that simply effectuates a complete ban on commerce in certain items is

4   not discriminatory, as long as the ban on commerce does not make distinctions based on the

5   origin of the items." *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d at 1012; *see also*

6   *Reynolds v. Buchholzer*, 87 F.3d 827, 831 (6th Cir. 1996) (upholding a state regulation precluding

7   commercial fishing of walleye where "statute and regulations in issue here cannot be interpreted

8   as favoring local enterprise and intentionally discriminating against interstate commerce").

9        Despite failing to demonstrate any cognizable burden on interstate commerce, Plaintiffs

10   assert that the Shark Fin Prohibition "clearly places an excessive burden" in relation to any

11   putative benefits because it is "overbroad and "duplicative" of existing legislation.  Plaintiffs'

12   Brief, 18; Complaint, ¶¶ 41-43.  In fact, the Shark Fin Prohibition fills a gap left by existing

13   legislation and is neither duplicative nor overbroad.  *Compare* Fish & Game Code §§ 2021 *and*

14   2021.5, *with* 16 U.S.C. §§ 1801-1882.[8]  However, even if it the Shark Fin Prohibition were

15   duplicative or overbroad, this would be irrelevant to the dormant Commerce Clause analysis.  *See*

16   *CTS Corp. v. Dynamics Corp. of America* (1987) 481 U.S. 69, 92 (in context of dormant

17   Commerce Clause analysis, courts should not "second guess the empirical judgments of

18   lawmakers concerning the utility of legislation").  Regardless of whether Plaintiffs believe the

19   Shark Fin Prohibition to be "necessary," "[a] facially neutral statute may violate the Commerce

20   Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute

21   unreasonable or irrational.'" *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196 (9th

22   Cir. 2007) (citation omitted).  A statute is unreasonable or irrational when "the asserted benefits

23

24        [8] Specifically, current federal and California laws regarding shark finning do not address
the issue of the shark fin trade.  California is a major market and trafficking center for shark fins.

25   Given that the majority of shark fins and shark fin products are processed in Asia and then
exported around the world, fins imported and sold in California could have come from any of

26   dozens of countries that continue to allow finning.  *See* Gordon, Decl., Exhs. G & K.  Moreover,
because once a fin is separated from the shark and/or dried and processed, it is extremely difficult

27   to determine from which species of shark the fin derives, bans limited to endangered sharks are
infeasible.  *Id.*, Exh. K.

28

of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Id.* That is not the case here. As discussed above, the protection of public health, wildlife, and of the ecosystem, is a legitimate state interest. *Merrifield v. Lockyer*, 547 F.3d at 986; *Pacific Nw. Venison Producers*, 20 F.3d at 1013. The Shark Fin Prohibition thus carries "a strong presumption" of constitutional validity that that Plaintiffs have failed to rebut. *Pacific Northwest Venison Producers,* 20 F.3d at 1014; *see also National Optometrists*, 682 F. 3d at 1156 (where no constitutionally significant burden on interstate commerce has been shown, courts give even greater deference to the asserted benefits of a state law or regulation). Therefore, Plaintiffs have failed to establish likelihood of success on the merits of their Commerce Clause claim.

**E.    The Shark Fin Prohibition is Not Preempted by Federal Law**

Plaintiffs assert, baldly, that the Shark Fin Prohibition is preempted by the Magnuson Stevens Act, 16 U.S.C. §§ 1801-1884 ("MSA"), as amended by the Shark Finning Prohibition Act of 2000 and the Shark Conservation Act of 2010 (collectively, Federal Shark Fin Law).[9] *See* Complaint, ¶ 48; Plaintiffs' Brief, 18:20-26. As a threshold matter, the Court need not consider this claim as Plaintiffs have failed to provide any meaningful analysis, argument, or authority in support of it. *See* N.D. Local Rule 7-4 (a)(5) (requiring argument and citation of pertinent authorities); *cf. Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487-88 (9th Cir. 2010). The six lines that Plaintiffs devote in their brief to this claim fall far short of meeting their burden to establish a likelihood of success on the merits. Moreover, Plaintiffs cannot meet their burden as their preemption claim is entirely without merit.

---

[9]    Plaintiffs seem to suggest that the Shark Fin Prohibition also is preempted by the Lacey Act. The Lacey Act is a "federal tool to aid states in enforcing their own fish and wildlife laws by imposing federal sanctions for interstate or foreign commerce in fish and wildlife that have been taken, possessed, transported, or sold in violation of any state, federal, or foreign law. *United States v. McDougall*, 25 F.Supp.2d 85, 89 (N.D.N.Y 1998) (citation omitted); 16 U.S.C. § 3372. The Lacey Act does not preempt state fish and wildlife laws; rather, it was designed to "strengthen and support" them. *U.S. v. Cameron*, 888 F.2d 1279, 1284 (9th Cir. 1989) (citing S.Rep. No. 123, 97th Cong., 1st Sess. 2, 4, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1748, 1751).

1   Federal law may preempt state law in one of three ways.  First, Congress may expressly

2   state its intent to preempt state law in the direct language of a statute.  *Jones v. Rath Packing Co.*,

3   430 U.S. 519, 525 (1977).  Second, Congressional intent to preempt state law can be inferred

4   when Congress "occupies the field" by passing a comprehensive legislative scheme that leaves

5   "no room" for supplemental regulation.  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230

6   (1947).  Third, federal law may preempt state law to the extent that state law directly conflicts

7   with federal law.  *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141-43

8   (1963).  Conflict preemption requires that "compliance with both federal and state regulations is a

9   physical impossibility," *id.,* or where state law "stands as an obstacle to the accomplishment and

10  execution of the full purposes and objectives of Congress."  *Pacific Gas & Electric Co. v. State*

11  *Energy Resources Cons. and Dev. Comm.*, 461 U.S. 190, 204 (1983).

12      The purpose of Congress is the "ultimate touchstone" in every preemption case.  *Retail*

13  *Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).  Preemption analysis "starts with

14  the assumption that the historic police powers of the States [are] not to be superseded by [a]

15  Federal Act unless that is the clear and manifest purpose if Congress."  *Rice*, 331 U.S. at 230; *see*

16  *also Florida Lime & Avocado Growers*, 373 U.S. at 142 ("[F]ederal regulation of a field of

17  commerce should not be deemed preemptive of state regulatory power in the absence of

18  persuasive reasons -- either that the nature of the regulated subject matter permits no other

19  conclusion, or that the Congress has unmistakably so ordained").  A court must presume that a

20  state statute is not preempted, and the moving party has the burden of overcoming that

21  presumption.  *Pharmaceutical Research and Mfrs. of America v. Walsh*, 538 U.S. 644, 661-662

22  (2003); *Chemical Specialties Mfrs. Ass'n*, 958 F.2d at 943.

23      Here, there is no Congressional intent to preempt state regulation of or relating to shark

24  finning.  To the contrary, the implementing regulations of the Federal Shark Fin Law expressly

25  invite state regulation.  Specifically, Code of Federal Regulations section 600.1201(c) contains a

26  savings clause, which provides that "[n]othing in this regulation supersedes more restrictive state

27  laws or regulations regarding shark finning in state waters."  50 C.F.R. § 600.1201(c).  With

28  respect to the MSA generally, while Congress claimed "sovereign rights and exclusive fishery

1   management authority over all fish" located within the United States Exclusive Economic Zone

2   ("EEZ"),[10] *see* 16 U.S.C. § 1811(a), states retain jurisdiction over their own waters and limited

3   concurrent authority over fishing activities in federal waters. *See, e.g.*, 16 U.S.C § § 1856(a)(1) &

4   (3); 1856(b); *see also People v. Weeren*, 26 Cal.3d 654, 669 (1980).  Thus, because the MSA and

5   Federal Shark Fin Law explicitly demonstrate Congressional intent to allow concurrent state

6   regulation, there is no express and/or field preemption here.  *See, e.g.*, *Ting v. AT&T*, 319 F.3d

7   1126, 1136 (9th Cir. 2003).

8        To the extent that Plaintiffs suggest that conflict preemption applies, this also fails.

9   Plaintiffs have not demonstrated that in any, let alone every, case it will be physically impossible

10  to comply with both Federal Shark Fin Law and the Shark Fin Prohibition.  *Florida Lime &*

11  *Avocado Growers*, 373 U.S. at *Washington State Grange*, 552 U.S. at 450.  Far from, as Plaintiffs

12  argue, "essentially rendering federal regulations . . . moot," compliance with the Shark Fin

13  Prohibition has no affect on compliance with Federal Shark Fin Law as these laws predominantly

14  regulate different activities.  *See* Plaintiffs' Brief, 18:20.  Federal Shark Fin Law primarily

15  addresses the act of finning and the taking and landing of sharks within the U.S. EEZ.  *See*  16

16  U.S.C. §§ 1801-1882.  The Shark Fin Prohibition, by contrast, prohibits the possession, sale, trade,

17  and distribution of shark fins in California.  *See* Fish & Game Code §§ 2021 & 2021.5.  The

18  Shark Fin Prohibition does not interfere with federal management of the U.S. EEZ, nor does it

19  affect landing activities or any conduct taking place on the water.  Rather, the Shark Fin

20  Prohibition fills a gap left by federal legislation and promotes the conservation of sharks by, inter

21  alia, eliminating the California market for fins.  *See* Stats. 2011, ch. 524 (A.B. 376), §1.  Where

22  there is overlap between the federal and state statutes, with respect to the prohibition on the

23  possession, sale, and trade of illegally obtained fins, the statutes are entirely consistent, and

24  consequently, compliance with one entails compliance with the other.  *Compare* 16 U.S.C. § 1857

25

26

27        _____
          [10] The EEZ is the 200 nautical mile zone extending from the outer boundary of each
28  state's territorial waters.  *See* 16 U.S.C. § 1802.

20

1    (1)(G) *and* 50 C.F.R. §§ 600.1203(a)(5) & 1204(e)(1) *with* Fish & Game Code §§ 2021 & 2021.5.

2    It is thus entirely possible to comply with both federal and state regulations.[11]

3            Similarly, Plaintiffs also cannot establish that the Shark Fin Prohibition would frustrate the

4    purpose of Congress.  Plaintiffs have not identified any "significant federal regulatory objective"

5    that is impaired by the Shark Fin Prohibition.  *Williamson v. Mazda*, 131 S. Ct. 1131, 1134, 1136-

6    37 (2011).  Although Plaintiffs state that federal law allows for the trade of legally obtained shark

7    fins, this is not the "objective" of Federal Shark Fin Law.  Rather, Congress enacted the Federal

8    Shark Fin Law for the purpose of "eliminat[ing] shark finning."  *United States v. Approximately*

9    *64,695 Pounds of Shark Fins*, 520 F.3d 976, 982 (9th Cir. 2008) (citing Pub.L. 106-557, 114 Stat.

10   2772 (2000)).  The Shark Fin Prohibition, which seeks to curtail shark finning by eliminating a

11   significant source of demand for shark fins, is consistent with this purpose.  In light of the Shark

12   Fin Prohibition's complete lack of any conflict with federal law and/or interference with the

13   "methods by which the federal statute was designed to reach [its] goal," Plaintiffs cannot

14   overcome the strong presumption against preemption, and their preemption claim provides no

15   basis for the requested preliminary injunction.  *Ting v. AT&T*, 319 F.3d at 1137, 1152.

16   **III.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE IRREPARABLE INJURY**

17           In addition to failing to show a likelihood of success on the merits of their claims, Plaintiffs

18   also have not met their burden to demonstrate irreparable injury.  As shown above, Plaintiffs have

19   not established that they have suffered a cognizable injury, and certainly not one that is

20   irreparable.  Plaintiffs argue that they will be irreparably harmed by the denial of their equal

21   protection rights to engage in cultural practices involving shark fins.  *See* Plaintiffs' Brief, 19-20.

22   

23           [11] *Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965 (2012), on which Plaintiffs ostensibly rely, is
     not to the contrary.  *See* Plaintiffs' Brief, n. 8.  In *Nat'l Meat Ass'n*, the Supreme Court held that
24   the Federal Meat Inspection Act ("FMIA") preempted a California law dictating what
     slaughterhouses must do with pigs that become nonambulatory.  132 S. Ct. at 968.  This holding
25   relied on an express preemption clause in the FMIA that prevented a state from imposing not just
     conflicting, but any additional or different requirements concerning a slaughterhouse's facilities
26   or operations.  *Id*. at 970.  The Federal Shark Fin Law contains no such preemption clause.  To
     the contrary, and discussed above, it contains a savings clause that specifically allows more
27   stringent state regulation of shark finning.  *See* 50 C.F.R. § 600.1201(c).  Accordingly, *Nat'l Meat*
     *Ass'n* is inapposite.

28

1   However, as discussed above, Plaintiffs do not have an equal protection right to use shark fins.

2   The Shark Fin Prohibition does not discriminate on the basis of race or involve a fundamental

3   right and is rationally related to a legitimate governmental purpose.  Accordingly, it does not

4   violate the Equal Protection Clause.  *See Hispanic Taco Vendors*, 994 F.2d at 679-81.  While

5   Plaintiffs are correct that an alleged constitutional infringement will often alone constitute

6   irreparable harm, where, as here, a constitutional claim is unsupported and fails as a matter of

7   law, it is "too tenuous" to support the requested relief.  *Goldie's Bookstore, Inc. v. Superior Ct.*,

8   739 F.2d 466, 472 (9th Cir. 1984).

9       Most of the interim harm that Plaintiffs allege is lost profits.  *See* Plaintiffs' Brief, 12, 20;

10  Declaration of Francis Chow; Declaration of Tony Mak; Declaration of Xing Xia Guo Kan.

11  However, such economic harm is not "irreparable."  *See Colorado River Indian Tribes v. Town of*

12  *Parker*, 776 F.2d 846, 851 (9th Cir. 1985); *Goldie's Bookstore, Inc.*,739 F.2d at 472 ("Mere

13  financial injury ... will not constitute irreparable harm if adequate compensatory relief will be

14  available in the course of litigation.");  *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The

15  key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of

16  money, time and energy necessarily expended ... are not enough").  When economic harm can be

17  remedied "in the ordinary course of litigation" through a damages award, the extraordinary

18  remedy of a preliminary injunction is not warranted.  *Los Angeles Mem'l Coliseum Comm'n v.*

19  *National Football League*, 634 F.2d 1197, 1202-03 (9th Cir. 1980).[12]  Moreover, to the extent

20  that Plaintiffs' allegations of future economic are harm are speculative, they also do not constitute

21  irreparable injury.  *Goldie's Bookstore, Inc.*,739 F.2d at 472.  Finally, the fact that Plaintiffs

22  waited more than seven months after the enactment of the Shark Fin Prohibition before seeking a

23  _____

[12] Plaintiffs cite *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944

24  F.2d 597 (9th Cir. 1991), for the proposition that business injuries can constitute irreparable harm.
    In *Rent-A-Center*, the court held that economic injury alone does not support a finding of

25  irreparable harm, but stated "intangible injuries, such as damage to ongoing recruitment efforts
    and goodwill, qualify as irreparable harm."  *Id.* at 603.  Plaintiffs have not proven that they will

26  suffer any such intangible injuries in the absence of a preliminary injunction.  Nor have Plaintiffs
    shown that the threat of bankruptcy to their members is more than speculative.  *Goldie's*

27  *Bookstore, Inc.*,739 F.2d at 472; *see also Henkell v. U.S.*, No. S–96–2228, 1998 WL 41565, at *5
    (E.D. Cal. Jan. 9, 1998) (holding that economic harm alone, even the "financial ruination" of the

28  plaintiffs' business, does not satisfy plaintiffs' burden of showing irreparable harm)..

1   preliminary injunction "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc.*

2   *v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

3   **IV.   THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST TIP IN FAVOR OF DENYING RELIEF**

4           Plaintiffs cannot establish sufficient harm to outweigh the fact that"[a]ny time a State is

5   enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a

6   form of irreparable injury." *Maryland v. King*, No. 12A48, 2012 WL 3064878, at *2 (U.S. July

7   30, 2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351

8   (1977)).  Plaintiffs have not demonstrated that the future inability to obtain shark fins by the small

9   percentage of the population that actually wants to do so, or the loss of profits by certain

10  merchants outweighs the interest of the Legislature in protecting the marine ecosystem by

11  eliminating the demand for a product that drives the pernicious practice of finning.  Whatever

12  harm Plaintiffs may suffer, it pales in comparison to the harms to the oceans caused by the

13  decline of sharks, an apex predator.  *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1124

14  (9th Cir. 2005) (irreparable injury found because "once the desert is disturbed, it cannot be

15  restored").  Thus, the compelling public interest in conserving sharks and protecting the health of

16  our oceans outweigh the purported harms to Plaintiffs.  *See Fed. Trade Comm'n v. Affordable*

17  *Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) ("[W]hen a district court balances the hardships

18  of the public interest against a private interest, the public interest should receive greater weight")

19  (citation omitted).  Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

20  //

21  //

22  //

23

24

25

26

27

28

1

**CONCLUSION**

2          For the foregoing reasons, Defendants respectfully request that the Court deny

3    Plaintiffs' request for injunctive relief.

4

5    Dated:  September 19, 2012                    Respectfully Submitted,

6                                                 KAMALA D. HARRIS
                                                  Attorney General of California
7                                                 TAMAR PACHTER
                                                  Supervising Deputy Attorney General
8
                                                  */s/ Alexandra Robert Gordon*
9                                                 ALEXANDRA ROBERT GORDON
                                                  Deputy Attorney General
10                                                *Attorneys for Defendants Governor Brown,*
                                                  *Attorney General Harris and Director*
11                                                *Bonham*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Opposition  (CV 12 3759 PJH)