United States District Court

For the Northern District of California

1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12 CHINATOWN NEIGHBORHOOD
13 ASSOCIATION, et al.,

14         Plaintiffs,                          No. C 12-3759 PJH

15     v.                                       **ORDER DENYING MOTION FOR
                                                PRELIMINARY INJUNCTION**
16 EDMUND BROWN, et al.,

17         Defendants.
   _____/

18

19         Plaintiffs' motion for a preliminary injunction came on for hearing before this court on

20 October 10, 2012.  Plaintiffs appeared by their counsel Joseph Breall and Jill Diamond;

21 defendants appeared by their counsel Alexandra Gordon; and defendant-intervenors

22 appeared by their counsel Bruce Wagman.  Having read the parties' papers and carefully

23 considered their arguments and the relevant legal authority, the court hereby DENIES the

24 motion.

25                              **BACKGROUND**

26         The California Legislature has determined that the practice of shark finning, where a

27 shark is caught, its fins cut off, and the carcass is dumped back into the water, causes tens

28 of millions of sharks to die each year.  Stats. 2011, ch. 524 (A.B. 376), §1(d).  Sharks

United States District Court

For the Northern District of California

1   occupy the top of the marine food chain and their decline constitutes a serious threat to the

2   ocean ecosystem and biodiversity.  Id., §1(c). The Legislature also found that shark fin

3   often contains high amounts of mercury, which has been proven dangerous to people's

4   health.  Id., §1(g).  In order to address these problems and promote the conservation of

5   sharks by, among other things, eliminating the California market for fins, the California

6   Legislature enacted Assembly Bills 376 and 853, codified as Fish and Game Code

7   §§ 2021 and 2021.5 ("the Shark Fin Law"), which became effective on January 1, 2012.

8         Plaintiffs Chinatown Neighborhood Association and Asian Americans for Political

9   Advancement filed this action on July 18, 2012, challenging the implementation of the

10   Shark Fin Law.  Named as defendants are Edmund G. Brown, Governor of California;

11   Kamala D. Harris, Attorney General of California; and Charlton H. Bonhan, Director of the

12   California Department of Fish and Game.

13         According to the complaint, plaintiff Chinatown Neighborhood Association is a

14   "nonprofit corporation/voluntary association having its headquarters in San Francisco."  Cplt

15   ¶ 6.  Its members are "people of Chinese origin who are engaged in cultural practices

16   involving the use of shark fins and in business practices involving the buying and selling of

17   shark fins in interstate commerce."  Id.

18         Plaintiff Asian Americans for Political Advancement ("AAPA") is "a political action

19   committee registered in the State of California and headquartered in Burlingame,

20   California."  Cplt ¶ 7.  Its members are "people of Chinese national origin who are engaged

21   in cultural practices involving the use of shark fins and in business practices involving the

22   buying and selling of shark fins in interstate commerce."  Id.  AAPA's website describes the

23   organization as a PAC and Lobbying Coalition "formed to create a political voice for Asian

24   Americans regarding political issues and candidates."

25         Plaintiffs contend that the history of the Shark Fin Law indicates that it was directed

26   at suppressing the practices and traditions of Californians of Chinese national origin.  They

27   assert that shark fin soup is a key traditional dish at many Chinese banquets and special

28   events, such as weddings, birthdays of elders, and festivals, and that the use of shark fin

United States District Court

For the Northern District of California

1  soup dates back to the 14th century Ming Dynasty.

2        Plaintiffs argue that Assemblyman Paul Fong, one of the bill's sponsors, made it

3  clear that the Law was directed at changing a Chinese practice.  They contend that when

4  asked about the implications of the Shark Fin Law on Chinese culture, Assemblyman Fong

5  replied that "Chinese culture used to promote foot binding on women."  Plaintiffs assert that

6  this comparison between binding feet and eating shark fin soup shows that the intent of the

7  Legislature was to compel the Chinese to change their cultural practices.  They also note

8  that Assemblyman Jared Huffman, another sponsor of the bill, stated that the intent of the

9  Shark Fin Law was to "target the demand for these shark fins," which plaintiffs contend is

10  simply another way of saying that the Chinese people are being targeted, since they are

11  "the only people seeking fins."

12        Plaintiffs also note that at a press conference organized by proponents of the Shark

13  Fin Law, the Executive Director of WildAid (an organization that worked to promote the

14  passage of the Law) stated that while it is difficult to regulate shark finning on a boat in

15  Indonesia, it's "very easy to regulate if something is happening in Chinatown here" and

16  "very easy to go around to restaurants and find out who's having what."  Plaintiffs claim that

17  this comment is clear evidence of the pervasive discrimination against Chinese Californians

18  that underlies the Shark Fin Law.  Plaintiffs also point to a comment by an unnamed "San

19  Francisco chef" to the effect that while shark fin soup may be "deeply rooted in Chinese

20  culture, . . . some people are going to take a while to crack - that nut," which plaintiffs

21  assert reflects an opinion that the Chinese preference for shark fin soup is a hardheaded

22  tradition that needs to be broken.

23        Plaintiffs argue that while the Shark Fin Law was ostensibly passed to prevent the

24  practice of shark finning and to further the practice of shark conservation, in actuality it

25  does not and cannot accomplish those goals, because it includes no restrictions on the

26  practice of shark finning – only on the possession and selling of fins.  Moreover, plaintiffs

27  assert, because the practice of shark finning in U.S. waters is already illegal under state

28  and federal law, it is clear that the Shark Fin Law was "promoted under fear-mongering-

United States District Court

For the Northern District of California

1  type false pretenses" and has no practical effect on the already outlawed practice of shark

2  finning.

3  　　　With regard to any argument defendants might make that the Shark Fin Law

4  protects sharks by halting the import of shark fins from foreign countries that do not have

5  laws against shark-finning, plaintiffs respond that if that were the goal, the law could have

6  banned the importation of shark fins from countries without protective laws, instead of

7  enacting a blanket prohibition on all shark fin trade and possession.

8  　　　Plaintiffs contend that the real effect of the law is to ban the possession and sale of

9  fins taken from legally caught sharks, and that since the trade and possession of those

10  legally-caught sharks is still legal in California, the result of the Shark Fin Law will be that

11  the fins of those legally caught sharks will have to be discarded, which will harm the

12  environment by unnecessary creation of significant amounts of "shark fishing waste."

13  Plaintiffs assert that despite defendants' claims that the Shark Fin Law will save sharks

14  from extinction, the fact is that the populations of many of the  approximately 400-500

15  species of sharks are healthy and not in danger of extinction – and that no country

16  considers sharks to be "globally endangered."

17  　　　Finally, plaintiffs argue that due to the ban, the supply of lawfully possessed shark

18  fins (those obtained prior to January 1, 2012) is dwindling rapidly and will imminently be

19  exhausted, which in turn will greatly impact Chinese cultural practices involving shark fin

20  soup.  They assert that Californians of Chinese national origin will experience difficulty in

21  obtaining shark fins to use to make this traditional dish, which will take away their rights to

22  practice their cultural traditions.  Restaurants will also be impacted, as they will not be able

23  to satisfy their customers' requests for shark fin soup at banquets and other events.

24  Moreover, they assert, merchants will be affected, as the ban has already cost merchants

25  "millions of dollars and numerous jobs," and importers – particularly those who deal almost

26  exclusively in shark fins – will lose their livelihoods.

27  　　　Plaintiffs have attached numerous declarations from restaurant owners, merchants,

28  and importers detailing sums of money lost in the past year due to lost sales of shark fin

4

**United States District Court**
For the Northern District of California

1   soup and shark fins, and what they expect to lose in the years to come.  Plaintiffs claim that

2   Enterprise 1180, a Milbrae restaurant, has lost $40,000 this year, and stands to lose

3   $100,000 a year; that Far East Café has lost $50,000, and stands to lose $200,000 a year;

4   that Tai Wu Inc. in Daly City has lost $30,000, and stands to lose $100,000 a year; that Koi

5   Palace, a Daly City restaurant, expects to lose $850,000 per year.  As for merchants,

6   plaintiffs claim that Chung Chou City sells $341,390.24 worth of fins per year; and that Ho

7   Kee Market sells $30,000 per year.  As for importers, plaintiffs assert that A&B Seafood

8   has already lost $373,373.30, and will totally lose its business; that Tony Siu Nam Mak has

9   lost $500,000 since January 2012; and that Pacific Seafood Company sells $900,000 a

10   year.

11       In the complaint, plaintiffs allege violations of their rights under the Equal Protection

12   Clause of the Fourteenth Amendment; the Commerce Clause; the Supremacy Clause; and

13   42 U.S.C. § 1983.  Plaintiffs assert that the Shark Fin Law targets only the Chinese – some

14   of whom use the shark fins as an ingredient in shark fin soup, and others of whom make a

15   living from buying and selling shark fins – and constitutes cultural discrimination, thereby

16   violating the Equal Protection Clause and its guarantee of equal treatment.  Plaintiffs argue

17   that the Shark Fin Law also violates the Commerce Clause because it interferes with the

18   power of the United State to regulate commerce, and violates the Supremacy Clause

19   because it unlawfully preempts federal law, including the Magnusen Stevens Act, 16 U.S.C.

20   §§ 1801-1884, which implemented the Shark Finning Prohibition Act of 2000, and was

21   amended by the Shark Conservation Act of 2010 – all of which already prohibit shark

22   finning.

23       Plaintiffs seek judicial declarations that the Shark Fin Law violates the Equal

24   Protection Clause by discriminating against people of Chinese national origin; that it

25   unlawfully interferes with Congressional authority to regulate interstate commerce; that it

26   unlawfully preempts federal law that already regulates the sale of shark fins and the

27   permitted legal trade of fins obtained in compliance with federal standards; and that

28   enforcement of the Law will violate § 1983 because it will deprive plaintiffs and their

United States District Court

For the Northern District of California

1    members of their rights, privileges, and immunities secured under the Equal Protection

2    Clause, the Commerce Clause, and the Supremacy Clause.

3        The court previously granted the motion of The Humane Society of the United

4    States, the Asian Pacific American Ocean Harmony Alliance, and the Monterey Bay

5    Aquarium Foundation to intervene in the case as defendant-intervenors, and also granted

6    the request of the National Resources Defense Counsel for leave to file an amicus brief in

7    connection with the motion.  Plaintiffs now seek an order preliminarily enjoining the

8    enforcement of the Shark Fin Law.

9                       **DISCUSSION**

10   A.     Legal Standard

11       An injunction is a matter of equitable discretion and is "an extraordinary remedy that

12   may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

13   Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf

14   v. Geren, 553 U.S. 674, 689-90 (2008).  A preliminary injunction "should not be granted

15   unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v.

16   Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

17       A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

18   on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

19   that the balance of equities tips in his favor, and that an injunction is in the public interest.

20   Winter, 555 U.S. at 20.

21       Alternatively, the plaintiff may demonstrate that the likelihood of success is such that

22   "serious questions going to the merits were raised and that the balance of hardships tips

23   sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met.

24   Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

25       Showing "serious questions going to the merits" requires more than establishing that

26   "success is more likely than not" – and it requires a plaintiff to demonstrate a "substantial

27   case for relief on the merits."  Leiva-Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011).

28   And even where success on the merits is likely or "serious questions" are raised an

1   injunction "is not a remedy which issues as of course."  Weinberger v. Romero-Barcelo,

2   456 U.S. 305, 311 (1982).

3   B.      Plaintiff's Motion

4          Plaintiffs argue that they can establish a likelihood of success on the merits of each

5   of the constitutional claims (or a combination of likelihood of success on the merits and that

6   serious questions are raised), and can also establish that they will suffer irreparable injury if

7   the enforcement of the Law is not enjoined.  Thus, they assert, a preliminary injunction is

8   warranted.

9          Plaintiffs contend that the Shark Fin Law discriminates against people of Chinese

10  national origin in California, because it "almost solely" affects people of Chinese national

11  origin – assertedly the only group that utilizes shark fins in "cultural practices."  Plaintiffs

12  contend that the comments of the supporters of the Shark Fin Law (Assemblymen Fong

13  and Huffman, the Executive Director of WildAid, and the unnamed "San Francisco chef")

14  demonstrate that the law was passed with the discriminatory purpose of targeting the

15  Chinese.  Plaintiffs also note that it is still legal to use sharks for food, or to make sharkskin

16  products, and argue that the fact that the possession of fins is no longer legal means that

17  the Law targets a uniquely Chinese practice.  Thus, plaintiffs argue, the statute must be

18  subjected to a strict scrutiny level of review by the court.

19         Further, plaintiffs contend that the ban on possession of shark fins is not necessary

20  to the accomplishment of a legitimate state interest or a compelling societal interest, and

21  that to the extent that defendants argue that the Shark Fin Law will protect sharks, plaintiffs

22  argue that the Law does nothing to secure the ethical treatment of sharks, as it is still legal

23  to kill them.  And, they assert, since shark finning in U.S. waters is already illegal, the Shark

24  Fin Law is not necessary to achieve the stated objectives of protecting sharks.

25         Second, plaintiffs argue that the Shark Fin Law  places an excessive burden on

26  interstate commerce in relation to any local benefits, which they claim is sufficient to show a

27  Commerce Clause violation.  They note that the Law places no further restrictions on shark

28  fishing, and that existing law already prohibits shark finning in U.S. waters, and argue that

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   while federal law permits the trade of humanely obtained fins, the Shark Fin Law

2   unnecessarily restricts the shark fin trade entirely – while still permitting the trade of other

3   products from the very same sharks – and therefore constitutes an excessive restriction on

4   interstate commerce.

5        Third, plaintiffs assert that because the Shark Fin Law render federal regulations

6   pertaining to shark fins moot, it "usurps and preempts" federal law.  Plaintiffs contend that

7   this is a violation of the Supremacy Clause, which provides that federal law takes

8   precedence over state law when there is a conflict between the two laws.  Here, plaintiffs

9   argue, there is a conflict between federal law permitting trade of legally obtained shark fins

10   and the Shark Fin Law which unwarrantedly prohibits such trade.

11        Finally, plaintiffs contend that they are likely to prevail on their § 1983 cause of

12   action because they have established the existence of serious questions on the merits as

13   to their three constitutional claims.

14        As for irreparable injury, plaintiffs contend that the mere fact of a constitutional injury

15   – particularly the denial of plaintiffs' equal protection rights and the "suppression of their

16   cultural practices" –  is a harm that cannot be remedied by an award of monetary damages,

17   and is therefore sufficient to establish irreparable injury.  They assert that Chinese people

18   have already been compelled to forego participating in the ancient tradition of serving shark

19   fin soup at banquets, and that they will be totally prevented from engaging in this cultural

20   practice in the future, and that the court should enjoin enforcement of the Law to prevent

21   current and future discrimination against the Chinese people.

22        Moreover, plaintiffs argue that while pure economic harm may not be sufficient to

23   constitute "irreparable harm," the fact that many merchants and importers will be driven out

24   of business if they can no longer buy and sell shark fins is sufficient to show irreparable

25   harm.

26        Finally, plaintiffs contend that a balancing of the equities tips in their favor, and that

27   an injunction is in the public interest, because it would serve to eliminate discrimination.

28        In opposition, defendants argue that plaintiffs' facial challenge fails because the

United States District Court

For the Northern District of California

1  Shark Fin Law is race-neutral on its face; and that the Shark Fin Law does not violate the

2  Equal Protection Clause, does not violate the Commerce Clause, and is not preempted by

3  federal law.  The defendants also contend that plaintiffs have failed to demonstrate

4  irreparable injury, and that the balance of hardships and the public interest tip in favor of

5  denying the motion.

6       The court finds that plaintiffs' motion must be DENIED.  With regard to likelihood of

7  success, the court agrees with defendants that plaintiffs have not met their burden, whether

8  under the Winter formulation, or under the "serious questions" modification stated in

9  Cottrell.

10      First, the court finds that plaintiffs have not established a likelihood of success as to

11 the equal protection claim.  The Equal Protection Clause of the Fourteenth Amendment

12 provides that no state shall "deny to any person within its jurisdiction the equal protection of

13 the laws."  U.S. Const. amend XIV, § 1.  This is "essentially a direction that all persons

14 similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473

15 U.S. 432, 439 (1985); Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).

16      Laws that facially discriminate on the basis of race are subject to strict scrutiny.

17 Shaw v. Reno, 509 U.S. 630, 642 (1993).  In order to succeed on a facial challenge, a

18 plaintiff "must establish that no set of circumstances exists under which the [statute] would

19 be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).  Where, as here, a law is

20 facially neutral, the plaintiff must prove that the intent and purpose of the law was to

21 discriminate against an identifiable class of persons on the basis of a protected

22 classification (e.g., race).  See Washington v. Davis, 426 U.S. 229, 239 (1976).

23      Here, plaintiffs have provided no evidence that the Law was enacted for the purpose

24 of discriminating against Chinese-Americans.  They cite to some anecdotal evidence that is

25 unconnected to the reasons the Legislature passed the law, but have made no showing

26 that any member of the Legislature intended to "target" Chinese-Americans.  Plaintiffs' own

27 evidence shows that only a small percentage of Chinese-Americans eat shark fin soup

28 regularly, and that approximately half of Chinese-Americans actually support the Shark Fin

United States District Court

For the Northern District of California

1  Law; and further, one of the Law's sponsors in the Legislature (Assemblyman Paul Fong) is

2  Chinese-American, and enactment of the Law was supported by at least one Asian-

3  American organization.

4  The fact that the Law may end up having a disparate impact on a group of Chinese-

5  Americans – those who want to consume shark fin soup, or those who make a living from

6  selling shark fins to others who want to make or consume shark fin soup – is not sufficient

7  to show that the Law was enacted because of its disparate impact on Chinese-Americans.

8  Where a law is neutral on its face, and is also within the power of government to pursue, it

9  is not invalid under the Equal Protection Clause simply because it affects people of one

10  race more than people of another.  See id. at 239-41; Village of Arlington Heights v.

11  Metropolitan Housing Dev. Corp., 429 U.S. 252, 264-66 (1977).

12  In light of the fact that the Shark Fin Law is not facially discriminatory and the fact

13  that plaintiffs have failed to show discriminatory intent, a challenge to the Law is subject

14  only to rational basis review, which requires a showing that the Law is "rationally related to

15  legitimate legislative goals."  See Lee v. City of Los Angeles, 250 F.3d 668, 686-87 (9th Cir.

16  2001) (quotation and citations omitted).  The Shark Fin Law easily passes rational basis

17  review.

18  At the time the Law was enacted, the Legislature was acting in pursuit of a legitimate

19  government interest that bears a rational relationship to the means chosen to achieve that

20  interest.  See Heller v. Doe, 509 U.S. 312, 319-21 (1993).  The Law is based on legislative

21  findings that sharks occupy the top of the marine food chain and their decline constitutes a

22  serious threat to the ocean ecosystem and biodiversity; that the practice of shark finning

23  causes the death of tens of millions of sharks every year; and that by eliminating an

24  important end market (sales in California), and thereby impacting the demand for shark

25  fins, California can help ensure that sharks do not become extinct.  See Stats. 2011, ch.

26  524 (A.B. 376) § 1.

27  The stated conservation and public health purposes are legitimate state interests,

28  and prohibiting the possession, sale, and trade of shark fins is rationally related to that

United States District Court

For the Northern District of California

1   purpose.  Because the California Legislature has articulated a plainly legitimate purpose for

2   enacting the law, and because it is undisputed that the Shark Fin Law is facially neutral,

3   any facial challenge fails, because it essentially rests on the speculation that at some future

4   time the application of the statute will result in constitutional violations.  See Washington

5   State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008).

6        Nevertheless, regardless of the level of scrutiny, a plaintiff alleging denial of equal

7   protection under 42 U.S.C. § 1983 based on race or other suspect classification must

8   plead intentional unlawful discrimination or allege facts that are at least susceptible of an

9   inference of discriminatory intent.  Monteiro v. Tempe Union High School Dist., 158 F.3d

10  1022, 1026 (9th Cir. 1998); see also City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope

11  Found., 538 U.S. 188, 193-94 (2003); Bingham v. Schreiber, 341 F.3d 939, 948-49 (9th

12  Cir. 2003).  Here, plaintiffs have provided no evidence showing that the California

13  Legislature enacted the Shark Fin Law for the purpose of discriminating against Chinese-

14  Americans.

15       As for plaintiffs' claim that the Law does nothing to protect sharks, the evidence

16  provided by the defendant-intervenors and by amici provides strong support for

17  defendants' contention that the Law is intended to protect and conserve sharks and the

18  marine ecosystems dependent on them by means of regulating local market conditions,

19  which laws targeting the actual practice of shark finning in domestic waters alone do not

20  address.

21       In sum, because the Shark Fin Law neither discriminates on the basis of race, nor is

22  based on a discriminatory purpose, and because it is rationally related to a legitimate

23  government purpose, plaintiffs cannot meet their burden of showing a likelihood of success

24  on the merits of the equal protection claim.

25       The court finds further that plaintiffs have failed to establish a likelihood of success

26  as to the claim under the Commerce Clause.  The Commerce Clause authorizes Congress

27  to "regulate Commerce with foreign Nations, and among the several States."  U.S. Const.,

28  art. I § 8.  It includes an implied limitation on the states' authority to adopt legislation that

United States District Court
For the Northern District of California

1    affects commerce, which is referred to as the "negative" or "dormant" Commerce Clause.

2    The purpose of the dormant Commerce Clause is to "prohibit state or municipal laws

3    whose object is local economic protectionism, laws that would excite those jealousies and

4    retaliatory measures the Constitution was designed to prevent." C & A Carbone, Inc. v.

5    Town of Clarkstown, N.Y., 511 U.S. 383, 390 (1994).  That is, its purpose is to prevent local

6    economic protectionism at the expense of out-of-state interests, not to protect the

7    economic interests of local businesses engaged in interstate commerce.  See id.

8    A statute is considered per se invalid under the dormant Commerce Clause if it

9    directly regulates or discriminates against interstate commerce, or if its effect is to favor in-

10   state economic interests over out-of-state interests.  Brown-Forman Distillers Corp. v. New

11   York State Liquor Auth., 476 U.S. 573, 578-79 (1986).  If a statute does not regulate or

12   discriminate against interstate commerce, and has only indirect effects on interstate

13   commerce and regulates evenhandedly, the court need only consider whether the state's

14   interest is legitimate and whether the burden on interstate commerce, if any, clearly

15   exceeds the local benefits.  Id. at 579 (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 142

16   (1970)).

17   Here, given that the Shark Fin Law is facially neutral, and treats all shark fins the

18   same, regardless of their origin, plaintiffs have not shown (and cannot show) that the Shark

19   Fin Law either regulates extraterritorially, or discriminates in favor of in-state interests.

20   Thus, in order to prevail on this claim, plaintiffs will have to establish that any incidental

21   burdens on interstate commerce caused by the Shark Fin Law are clearly excessive in

22   relation to the putative local benefits.

23   For the reasons stated above, the court finds that the Shark Fin Law serves a

24   legitimate local purpose, which includes protection of public health, wildlife, and the

25   ecosystem.  Plaintiffs have identified no cognizable burden on interstate commerce,

26   notwithstanding that they have asserted that the Law places an excess burden in relation to

27   any putative benefits because it is overbroad and duplicative of existing legislation.

28   Finally, the Shark Fin Law is not preempted by federal law, and therefore does not

1  violate the Supremacy Clause.  Federal law may preempt state law where Congress

2  expressly states its intent to preempt state law; or where Congressional intent to preempt

3  state law can be inferred from the fact that Congress indicated an intent to occupy the field

4  by passing a comprehensive scheme that leaves no room for supplemental legislation; or

5  where state law directly conflicts with federal law.  Gonzales v. Arrow Fin. Servs., LLC, 660

6  F.3d 1055, 1066 (9th Cir. 2011) (citing English v. Gen. Elec. Co., 496 U.S. 72, 79-80

7  (1990)).

8       Here, there is no showing of any Congressional intent to preempt state regulation of

9  or relating to shark finning.  Moreover, the implementing federal regulations to the Federal

10  Shark Fin Law expressly provide that "[n]othing in this regulation supercedes more

11  restrictive state laws or regulations regarding shark finning in state waters."  50 C.F.R.

12  § 600.1201(c).  And as for federal management authority over fishing, the Magnuson

13  Stevens Act provides that states retain concurrent jurisdiction over their own waters and

14  limited concurrent authority over fishing in federal waters.  See, e.g., 16 U.S.C. § 1856(a).

15  Nor have plaintiffs established that it will be impossible to comply with both existing federal

16  law and California's Shark Fin Law.  Federal law primarily regulates shark finning and the

17  taking and landing of sharks within U.S. waters, while the Shark Fin Law prohibits the sale,

18  trade, or possession of shark fins in California.

19       Finally, plaintiffs have not established a likelihood of success on the § 1983 claim,

20  because they have not shown any discriminatory conduct by any government official – e.g.,

21  enforcing the Law against Chinese-Americans and not against other individuals whose

22  activities are regulated by the Law.  Indeed, plaintiffs have provided declarations from

23  fishermen who claim that the Shark Fin Law has caused them harm based on the fact that

24  they have engaged in shark fishing and the subsequent sale of fins – not because they are

25  Chinese.

26       As for irreparable harm, in general, loss of business revenue or monetary harm in

27  the form of damages is not sufficient to establish irreparable injury.  See Oakland Tribune,

28  Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).  Plaintiffs have cited

**United States District Court**

For the Northern District of California

1    no other type of economic harm, apart from unsupported claims by two declarants that if

2    the Shark Fin Law is not overturned, they will "lose [their] livelihood entirely."

3           While it is well-established that the deprivation of constitutional rights

4    "unquestionably constitutes irreparable injury," see Elrod v. Burns, 427 U.S. 347, 373

5    (1976); Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012), in this case, because

6    plaintiffs have not established a likelihood of success on their constitutional claims, the

7    presumption of irreparable harm does not arise.  Thus, the court need not consider whether

8    the harm plaintiffs claim (loss of profits and business) is in fact "irreparable."  Moreover, the

9    evidence presented by defendant-intervenor Asian Pacific American Ocean Harmony

10   Alliance shows that not all Chinese-Americans believe that a ban on buying and selling

11   shark fins violates the Chinese cultural tradition, as many adhere to a cultural belief that

12   preservation of the environment is of primary importance.

13          Similarly, with regard to public interest, while it is generally in the public interest to

14   prevent the violation of a party's constitutional rights, Sammartano v. First Judicial District

15   Court, 303 F.3d 959, 974 (9th Cir. 2002), this factor need not be addressed in the absence

16   of a showing of likelihood of success on the merits of the constitutional claims.  Plaintiffs

17   have not shown that the future inability to obtain shark fins by the relatively small

18   percentage of the population that actually wants to do so, or the loss of profits by a small

19   group of merchants, importers, or restauranteurs, outweighs the interests of the Legislature

20   in protecting the marine ecosystem by eliminating a product that drives the pernicious

21   practice of finning.

22          Finally, it is clear from the papers filed in opposition to plaintiffs' motion that there is

23   support for the Shark Fin Law within the Chinese community.  In addition, the evidence

24   shows strong public interest bases for the Law, including conservation (protection of

25   declining shark populations, including populations of shark species vulnerable to shark

26   finning), animal welfare (reducing the economic motivation for shark finning, which leaves

27   sharks unable to swim and causes death by starvation), and public health (bioaccumulation

28   of contaminants such as methylmercury in shark fins) interests.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

In accordance with the foregoing, plaintiffs' motion for a preliminary injunction is DENIED.[1]

**IT IS SO ORDERED.**

Dated: January 2, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[1] Defendants also argue in their opposition that Governor Brown and Attorney General Harris are immune from suit under the Eleventh Amendment. Defendants acknowledge that there is an exception under Ex parte Young, 209 U.S. 123 (1908), which allows for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law, but note that for an Ex parte Young exception to apply, the state officer must have a direct connection with the enforcement of the allegedly unconstitutional statute, and that there must be an actual "threat of enforcement." See Long v. Van Kamp, 961 F.2d 151, 152 (1992). Defendants contend that because the Legislature did not give the Governor or the Attorney General any special role in administering or enforcing the Shark Fin Law, the claims are barred by the Eleventh Amendment. Because plaintiffs have not established a likelihood of success on their claims, the court finds it unnecessary to address the Eleventh Amendment issue, which in any event would be more appropriately raised in a motion to dismiss.

15