1  KAMALA D. HARRIS
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  ALEXANDRA ROBERT GORDON
   Deputy Attorney General
4  State Bar No. 207650
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA 94102-7004
    Telephone: (415) 703-5509
6   Fax: (415) 703-5480
    E-mail: Alexandra.RobertGordon@doj.ca.gov
7  *Attorneys for Defendants Governor Brown, Attorney*
   *General Harris and Director Bonham*
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13
   **CHINATOWN NEIGHBORHOOD**          CV 12 3759 WHO
14 **ASSOCIATION, a nonprofit corporation,**
   **and ASIAN AMERICANS FOR**
15 **POLITICAL ADVANCEMENT, a political**
   **action committee,**
16                                      **NOTICE OF MOTION AND MOTION**
                                        **TO DISMISS PLAINTIFFS' FIRST**
                               Plaintiffs, **AMENDED COMPLAINT PURSUANT**
17                                      **TO FEDERAL RULE OF CIVIL**
              v.                        **PROCEDURE 12(b)(6); MEMORANDUM**
18                                      **OF POINTS AND AUTHORITIES**

19 **EDMUND G. BROWN JR., Governor of the**   Date:       March 19, 2013
   **State of California, KAMALA HARRIS,**     Time:       2:00 p.m.
20 **Attorney General of the State of California,** Courtroom: 2, 17th Floor
   **and CHARLTON H. BONHAM, Director,**     Judge:      The Honorable William H.
21 **California Department of Fish and Game,**            Orrick, Jr.
                                            Action Filed: July 18, 2012
22                             Defendants,

23 **THE HUMANE SOCIETY OF THE**
   **UNITED STATES; ASIAN PACIFIC**
24 **AMERICAN OCEAN HARMONY**
   **ALLIANCE; and MONTEREY BAY**
25 **AQUARIUM FOUNDATION,**

26              Intervenors-Defendants.

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

    I.     Relevant law and procedural history.......................................................... 2

           A.    The statutes..................................................................................... 2

           B.    Procedural history .......................................................................... 3

    II.    The allegations of the First Amended Complaint ...................................... 4

ARGUMENT ........................................................................................................................ 6

    I.     Legal standard ........................................................................................... 6

    II.    The claims against the Governor must be dismissed as he is immune from suit pursuant to the Eleventh Amendment ................................................. 7

    III.   Plaintiffs have failed to state a claim as a matter of law ........................... 9

           A.    Plaintiffs claim under the Equal Protection Clause fails.......................... 9

                 1.    Plaintiffs have not alleged sufficient facts to establish discriminatory purpose. ........................................... 10

                 2. The Shark Fin Prohibition is rationally related to a legitimate governmental purpose. ....................................... 12

           B.    Plaintiffs' commerce clause claim fails. .................................... 14

                 1.    Plaintiffs have not alleged discrimination against interstate commerce. ........................................................ 15

                 2.    Plaintiffs have failed to allege that the Shark Fin Prohibition regulates extraterritorially. ................................. 16

                 3.    Pike balancing is not required, but even if it were, the Shark Fin Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce. ............... 17

           C.    Plaintiffs' Supremacy Clause claim fails. ................................. 20

                   1.    Plaintiffs cannot establish field preemption. ................................. 21

                 2.    Plaintiffs cannot demonstrate conflict preemption. ..................... 21

                        a.    There is no conflict between the Shark Fin Prohibition and the Magnusson-Stevens Act. .................. 22

                        b.    There is no conflict between the Shark Fin Prohibition and federal shark fin law. ............................... 23

                        c.    The First Amended Complaint contains no facts tending to show any conflict between federal law and the Shark Fin Prohibition. .......................... 25

           D.    Plaintiffs' 42 U.S.C. section 1983 claim fails.......................................... 25

           E.    There is no basis for injunctive relief........................................ 25

i

# TABLE OF CONTENTS
(continued)

Page

CONCLUSION ................................................................................................................ 26

ii

# TABLE OF AUTHORITIES

**Page**

CASES

*Agua Caliente Band of Cahuilla Indians v. Hardin*
   223 F.3d 1041 (9th Cir. 2000)............................................................................. 7

*Arizona v. United States*
   132 S. Ct. 2492 (2012) ..................................................................................... 24

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................. passim

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013)................................................... 8, 16, 17, 18

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................. passim

*Blue Water Fisherman's Assoc. v. Mineta*
   122 F. Supp. 2d 150 (D.D.C. 2000) ................................................................. 23

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
   476 U.S. 573 (1986)........................................................................................ 15

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
   511 U.S. 383 (1994)........................................................................................ 15

*Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*
   958 F.2d 941 (9th Cir. 1992)............................................................................ 9

*City of Cleburne v. Cleburne Living Center*
   473 U.S. 432 (1985)................................................................................... 9, 13

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*
   527 U.S. 666 (1999)........................................................................................ 7

*CTS Corp. v. Dynamics Corp. of America*
   481 U.S. 69 (1987)........................................................................................ 19

*Dairy v. Bonham*
   No. C-13-1518 EMC, 2013 WL 3829268 (N.D. Cal. July 23, 2013) ..................... 13

*Daniels-Hall v. National Educ. Ass'n*
   629 F.3d 992 (9th Cir. 2010)..................................................................... 6, 11

*Doe v. Lawrence Livermore Nat'l Lab.*
   131 F.3d 836 (9th Cir. 1997)........................................................................... 7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Ex parte Young*
209 U.S. 123 (1908) ............................................................................................ 7, 8

*FCC v. Beach Communications, Inc.*
508 U.S. 307 (1993) ............................................................................................. 13

*Fields v. Legacy Health Sys.*
413 F.3d 943 (9th Cir. 2005) ......................................................................... 10, 13

*Fla. Lime & Avocado Growers, Inc. v. Paul*
373 U.S. 132 (1963) ............................................................................................. 20

*Freedom Holdings Inc. v. Spitzer*
357 F.3d 205 (2d Cir. 2004) ............................................................................... 17

*General Motors Corp. v. Tracy*
519 U.S. 278 (1997) ............................................................................................. 18

*Gerling Global Reinsurance Corp. of Am. v. Low*
240 F.3d 739 (9th Cir. 2001) .............................................................................. 17

*Giannini v. Real*
911 F.2d 354 (9th Cir. 1990) .............................................................................. 12

*Grutter v. Bollinger*
539 U.S. 306 (2003) ............................................................................................. 10

*Healy v. Beer Inst.*
491 U.S. 324 (1989) ............................................................................ 14, 16, 17

*Heller v. Doe*
509 U.S. 312 (1993) ..................................................................................... 12, 13

*Illinois Rest. Ass'n v. City of Chicago*
492 F. Supp. 2d 891 (N.D. Ill. 2007) .................................................................. 17

*International Paper Co. v. Ouellette*
479 U.S. 481 (1987) ............................................................................................. 25

*Jones v. Rath Packing Co.*
430 U.S. 519 (1977) ............................................................................................. 20

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) ......................................................................... 11, 12

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
    416 F.3d 940 (9th Cir. 2005) .................................................................................. 6

*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir. 1992) ............................................................................... 7, 8

*Los Angeles Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ............................................................................... 7, 8

*Maine v. Taylor*
    477 U.S. 131 (1986) ............................................................................................. 15

*Mehta v. Wells Fargo Bank, N.A.*
    737 F. Supp. 2d 1185 (S.D. Cal. 2010) .............................................................. 25

*Merrifield v. Lockyer*
    547 F.3d 978 (9th Cir. 2008) ......................................................................... 14, 19

*Monteiro v. Tempe Union High Sch. Dist.*
    158 F.3d 1022 (9th Cir. 1998) ............................................................................. 10

*Mourning v. Family Publ'n Serv., Inc.*
    411 U.S. 356 (1973) ............................................................................................. 13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012), *cert. denied*, 81 U.S.L.W. 3452 (U.S. Feb. 19, 2013) .... passim

*Nat'l Audubon Soc'y, Inc. v. Davis*
    307 F.3d 835, *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) ................. 8

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
    272 F.3d 104 (2d Cir. 2001) ................................................................................ 18

*Nat'l Paint Coatings Ass'n v. City of Chicago*
    45 F.3d 1124 (7th Cir. 1995) ............................................................................... 19

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001) ................................................................................. 6

*NRDC v. Daley*
    209 F.3d 747 (D.C. Cir. 2000) ............................................................................ 22

*O'Melveny & Myers v. FDIC*
    512 U.S. 79 (1994) ............................................................................................... 24

# TABLE OF AUTHORITIES
### (continued)

Page

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*
    511 U.S. 93 (1994) .................................................................................................. 15

*Pac. Gas & Electric Co. v. State Energy Res. Cons. & Dev. Comm.*
    461 U.S. 190 (1983) ................................................................................................ 20

*Pacific Legal Foundation v. State Energy Resources Conservation & Development Comm.*
    659 F.2d 903 (9th Cir. 1981) .................................................................................. 25

*Pacific Nw. Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994) ............................................................ 14, 16, 18, 19

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) .................................................................................................. 7

*Personnel Adm. of Mass. v. Feeney*
    442 U.S. 256 (1979) ................................................................................................ 12

*Pharm. Research and Mfrs. of America v. Walsh*
    538 U.S. 644 (2003) ................................................................................................ 21

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) .................................................................................... 17, 18, 19

*Retail Clerks Int'l Ass'n v. Schermerhorn*
    375 U.S. 96 (1963) .................................................................................................. 20

*Reynolds v. Buchholzer*
    87 F.3d 827 (6th Cir. 1996) .................................................................................... 16

*Rice v. Santa Fe Elevator Corp.*
    331 U.S. 218 (1947) .......................................................................................... 20, 21

*Robertson v. Dean Witter Reynolds, Inc.*
    749 F.2d 530 (9th Cir. 1984) .................................................................................. 6

*Romer v. Evans*
    517 U.S. 620 (1996) ............................................................................................ 9, 10

*Serrano v. Francis*
    345 F.3d 1071 (9th Cir. 2003) ................................................................................ 10

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998) .................................................................................. 8

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*
537 U.S. 51 (2002) ............................................................................................. 24

*Tart v. Commonwealth of Massachusetts*
949 F.2d 490 (1st Cir. 1991) ............................................................................. 23

*Teixeira v. Cty. of Alameda*
No. 12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ........... 13, 14

*Ting v. AT&T*
319 F.3d 1126 (9th Cir. 2003) ........................................................................... 21

*UFO Chuting of Hawaii, Inc. v. Smith*
508 F.3d 1189 (9th Cir. 2007) ........................................................................... 19

*United States v. Approximately 64,695 Pounds of Shark Fins*
520 F.3d 976 (9th Cir. 2008) ............................................................................. 23

*United States v. Carolene Products Co.*
304 U.S. 144 (1938) ........................................................................................... 12

*United States v. Salerno*
481 U.S. 739 (1987) ............................................................................................. 9

*Van Buskirk v. Cable News Network, Inc.*
284 F.3d 977 (9th Cir. 2002) ............................................................................... 6

*Village of Arlington Heights v. Met. Housing Dev. Corp.*
429 U.S. 252 (1977) ...................................................................................... 11, 12

*Viva! Intern. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*
41 Cal. 4th 929 (Cal. 2007) ............................................................................... 23

*Washington State Grange v. Washington State Republican Party*
552 U.S. 442 (2008) ............................................................................................. 9

*Weinstein v. Edgar*
826 F. Supp. 1165 (N.D. Ill. 1993) ...................................................................... 8

*Wyeth v. Levine*
555 U.S. 555 (2009) ........................................................................................... 24

*Zucco Partners, LLC v. Digimarc Corp.*
552 F.3d 981 (9th Cir. 2009) ............................................................................... 6

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

2011 California Stat., Chapter 524
    § 1 ........................................................................................... 2, 3, 12, 13

California Fish and Game Code
    § 1002 .................................................................................................... 3
    § 2021 ............................................................................................ passim
    § 2021.5 ......................................................................................... passim
    § 7704 .................................................................................................... 5

Shark Conservation Act of 2010 ................................................................. passim

Shark Finning Prohibition Act of 2000 ...................................................... passim

United States Code, Title 16
    § 1801 .................................................................................................. 22
    §§ 1801-1882 ....................................................................................... 18
    §§ 1801-1884 ......................................................................... 5, 20, 21
    § 1802 .................................................................................................. 23
    § 1811 .................................................................................................. 23
    § 1853 .................................................................................................. 23
    § 1856 .................................................................................................. 23

United States Code, Title 42
    § 1983 ............................................................................................ passim

**CONSTITUTIONAL PROVISIONS**

California Constitution, Article V
    § 1 .......................................................................................................... 8
    § 13 ........................................................................................................ 8

United States Constitution
    Article I, Section 8, Clause 3 ........................................................... passim
    Article VI, Clause 2 ......................................................................... passim
    Eleventh Amendment ................................................................ 1, 2, 7, 8
    Fourteenth Amendment ..................................................................... passim

**COURT RULES**

Federal Rule of Civil Procedure
    rule 12 ............................................................................................ 1, 2, 6, 11

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

U.S.C.C.A.N. 593 (1976).................................................................................. 22

H.R. Rep. No. 104-171 (1995)........................................................................... 22

H.R. Rep. No. 94-445 (1976)............................................................................. 22

S. Rep. No. 104-276 (1996) ............................................................................... 22

S. Rep. No. 109-229 (2006) ............................................................................... 22

1

## NOTICE OF MOTION

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3          PLEASE TAKE NOTICE THAT on March 19, 2014, at 2 p.m., or as soon thereafter as

4  the matter may be heard before the Honorable William H. Orrick, Jr. in Courtroom 2 of the

5  United States District Court for the Northern District of California, located at 450 Golden Gate

6  Avenue, San Francisco, California 94102, Defendants Governor Edmund G. Brown Jr., Attorney

7  General Kamala D. Harris, and California Department of Fish & Wildlife (formerly Fish and

8  Game) Director Charlton H. Bonham will move this Court to dismiss Plaintiffs' First Amended

9  Complaint for Declaratory and Injunctive Relief ("FAC") pursuant to Federal Rule of Civil

10  Procedure 12(b)(6).  This motion to dismiss is made on the following grounds (Civil L.R. 7-

11  4(a)(3)): (1) the FAC fails to state a claim upon which relief may be granted against Governor

12  Brown in that the claims against him are barred by the Eleventh Amendment; (2) the FAC fails to

13  satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) and

14  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and (3) the FAC fails to state a claim upon

15  which relief can be granted under the Equal Protection, Commerce, and Supremacy Clauses

16  and/or 42 U.S.C. section 1983, and there is no basis for injunctive relief.

17          This motion is based on this Notice, the Memorandum of Points and Authorities, the

18  concurrently filed Request for Judicial Notice, the papers and pleadings on file in this action, this

19  Court's January 2, 2013 Order Denying Preliminary Injunction, the August 27, 2013

20  Memorandum Disposition of the Ninth Circuit, and upon such matters as may be presented to the

21  Court at the time of the hearing.

22          ## MEMORANDUM OF POINTS AND AUTHORITIES

23          ### INTRODUCTION

24          California Fish and Game Code sections 2021 and 2021.5 (the "Shark Fin Prohibition")

25  outlaw the possession, sale, and trade of shark fins in California.  By virtually eliminating the

26  California market for shark fin, the Legislature intended to promote shark conservation, the health

27  of the marine ecosystem, and the public health and safety.  The Shark Fin Prohibition is based on

28  evidence and legislative findings that the demand for shark fin causes the finning and death of

1

tens of millions of sharks every year, and that the resultant decline of shark populations has devastating ecological consequences.  It is also based on evidence and legislative findings that shark fin contains high levels of mercury and is therefore unsafe to eat.

In an action against Governor Edmund G. Brown Jr., Attorney General Kamala D. Harris, and Director Charlton H. Bonham, plaintiffs allege that the Shark Fin Prohibition facially violates the Equal Protection, Commerce, and Supremacy Clauses of the U.S. Constitution.  As a threshold matter, all of plaintiffs' claims against Governor Brown must be dismissed, as he is immune from suit under the 11th Amendment.  Furthermore, the First Amended Complaint should be dismissed in its entirety because, even after amendment, plaintiffs do not allege sufficient facts in support of their constitutional claims.  Rather, the First Amended Complaint is comprised of little more than boilerplate legal conclusions that fail to satisfy the pleading burden under Federal Rule of Civil Procedure 12(b).  Moreover, and of greater significance, the Shark Fin Prohibition does not implicate the Equal Protection, Commerce, or Supremacy Clauses, let alone violate them.  As this Court already has held, the law is facially neutral, does not discriminate on the basis of any protected classification, or against interstate commerce, does not regulate extraterritorially, does not conflict with federal law, and is rationally related to a legitimate governmental interest in protecting the public health and safety and the environment.  Because plaintiffs cannot demonstrate that the Shark Fin Prohibition is unconstitutional, they cannot state a claim upon which relief can be granted.  Accordingly, defendants respectfully request that this Court dismiss the First Amended Complaint with prejudice.

## BACKGROUND

### I.    RELEVANT LAW AND PROCEDURAL HISTORY

#### A.  The Statutes

The California Legislature has determined that the practice of shark finning causes tens of millions of sharks to die each year.  2011 Cal. Stat., ch. 524 (AB 376), § 1(d).  After being finned, sharks starve to death, are slowly eaten by other fish, or drown.  *Id.*  Sharks occupy the top of the marine food chain, and their decline severely affects the balance of species in the marine ecosystem and marine biodiversity.  *Id.* § 1(c).  Studies by federal and international agencies

2

1    indicate a decline in shark populations worldwide. *Id.* § 1(e). The Legislature found that

2    California is a market for shark fin and "this demand helps drive the practice of finning. The

3    market also drives shark declines." *Id.* § 1(f). Thus, by "impacting the demand for shark fins,

4    California can help ensure that sharks do not become extinct as a result of shark finning." *Id.*

5    The Legislature also found that shark fin often contains high amounts of mercury, which has been

6    proven dangerous to people's health. *Id*. § 1(g).

7         In order to address these problems and promote the conservation of sharks and protect the

8    public health by, inter alia, eliminating the California market for fins, California enacted Fish and

9    Game Code sections 2021 and 2021.5. California Fish and Game Code section 2021 makes it

10   "unlawful for any person to possess, sell, offer for trade, trade, or distribute a shark fin." Cal.

11   Fish & Game Code § 2021(b). Section 2021 enumerates three exceptions to this prohibition: (1)

12   any person who holds a license or permit pursuant to Fish and Game Code section 1002 for

13   scientific or educational purposes may possess a shark fin or fins consistent with that license or

14   permit; (2) any person who holds a license or permit issued by the department to take or land

15   sharks for recreational or commercial purposes may possess a shark fin or fins consistent with

16   that license or permit; and (3) before January 1, 2013, any restaurant may possess, sell, offer for

17   sale, trade, or distribute a shark fin possessed by that restaurant, as of January 1, 2012, that is

18   prepared for consumption. *Id.* § 2021(c)-(e). Section 2021.5 includes additional exemptions, and

19   delayed the implementation of a portion of the Shark Fin Prohibition until July 2013. The Shark

20   Fin Prohibition was signed into law on October 7, 2011, and became effective on January 1,

21   2012.

22              **B. Procedural History**

23        On July 18, 2012, plaintiffs filed a Complaint seeking declaratory and injunctive relief,

24   followed by a motion for a preliminary injunction on August 9, 2012. By order dated January 2,

25   2013, this Court denied plaintiffs' preliminary injunction motion. In so doing, this Court ruled

26   that plaintiffs had not met their burden to show either a likelihood of success on the merits or

27   "serious questions" on their Equal Protection, Commerce, and Supremacy Clause claims, and did

28   not establish that they were likely to suffer irreparable harm in the absence of preliminary relief,

3

1  that the balance of equities tipped in their favor, or that an injunction was in the public interest.

2  *See* Order Denying Motion for Preliminary Injunction ("Order") 6-13, attached as Exhibit A to

3  the accompanying Defendants' Request for Judicial Notice in Support of Motion to Dismiss

4  ("Defendants' RJN"). Plaintiffs appealed and on August 27, 2013, the Ninth Circuit Court of

5  Appeals affirmed this court's order denying the preliminary injunction. The Ninth Circuit held

6  that this court had not abused its discretion in determining that plaintiffs failed to establish a

7  likelihood of success or a serious question on their constitutional claims and failed to prove a

8  likelihood of irreparable harm. *See* Ninth Circuit August 27, 2013 Memorandum Decision at 2-4,

9  attached as Exhibit B to the accompanying Defendants' RJN.

10       Following the issuance of the mandate on October 22, 2013, defendants moved to dismiss

11  plaintiffs' Complaint. Dkt No. 47. On December 9, 2013, plaintiffs filed their First Amended

12  Complaint ("FAC").

13  **II.**     **THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

14       Plaintiffs California Neighborhood Association and Asian Americans for Political

15  Advancement, a nonprofit corporation/voluntary association and a political action committee

16  respectively, are comprised of members who are "Chinese Californians who, prior to the

17  implementation of the Shark Fin Law, engaged in cultural and ceremonial traditions involving the

18  use of shark fins and who possessed, sold, offered for sale, traded or distributed shark fins in

19  California that moved through the channels of interstate and foreign commerce." FAC ¶¶ 6-7.

20  Plaintiffs allege that shark fins are used within the Chinese-American community to make the

21  "traditional" and "ceremonial" "cultural delicacy" of shark fin soup. *Id.* ¶ 9. They allege that

22  shark fin soup is traditionally served at Chinese festivals and that "[c]onsumption of shark fin

23  soup is a distinctly Chinese cultural and ceremonial tradition" and that "the market for shark fins

24  to make the traditional and ceremonial soup is the only significant end market for shark fins in

25  California." *Id.* ¶¶ 11-12. Plaintiffs allege that the "effect of the Shark Fin Law is to prevent

26  Chinese Californians from engaging in ceremonial and cultural traditions that they have practiced

27  for centuries," *id.* ¶ 31, and that "lawmakers and proponents of the Shark Fin Law have clearly

28

and repeatedly articulated that the intent of the Law was to target the Chinese market for shark fins and to end the Chinese tradition of consuming shark fins," *id.* ¶ 30.

Plaintiffs allege that prior to the enactment of the Shark Fin Prohibition, "shark fins that were possessed, sold, offered for sale, traded and distributed in and from California were taken from sharks legally caught by fishers both within California and in the waters of other states and jurisdictions, including federal waters." *Id.* ¶ 13.  They claim that shark fins also moved through the State of California from other extraterritorial destinations.  *Id.*  Plaintiffs allege that the Shark Fin Prohibition is "a blanket prohibition on commercial shark fin transactions and out-of-state and foreign entities" and that the law "prevents shark fins from moving through California in the stream of commerce." *Id.* ¶ 32.

Plaintiffs claim that under federal law, the Magnuson-Stevens Act, 16 U.S.C. §§ 1801-1884, as amended by the Shark Finning Prohibition Act of 2000 and the Shark Conservation Act of 2010, it is unlawful to engage in shark finning, to have custody, control, or possession of a detached fin at sea, to transfer a detached fin to another vessel at sea, or to land shark fins without a corresponding carcass.  *Id.* ¶ 23 (quoting 16 U.S.C. § 1857(1)(P)).  They further allege that prior to the passage of the Shark Fin Prohibition, that California Fish and Game Code section 7704(c) "already banned the practice of shark finning."  *Id.* ¶ 19.  Plaintiffs allege that although lawmakers and proponents of the Shark Fin Prohibition claimed that it would address the practice of finning, "[i]n making these claims lawmakers and proponents ignored the fact that shark finning was already illegal under existing federal and California laws and that United States fishers do not engage in the practice of shark finning."  *Id.* ¶ 19.  Similarly, they allege that although lawmakers and proponents of the Shark Fin Prohibition claimed that the law would "address concerns and the sustainability of shark populations," "sustainable fishing is already practiced in the United States and the National Oceanic and Atmospheric Administration ("NOAA") Fisheries Service 'successfully manages shark populations to maintain productive and sustainable fisheries.'"  *Id.* ¶ 27.

Plaintiffs allege that the Shark Fin Prohibition violates the Equal Protection, Commerce, and Supremacy Clauses and 42 U.S.C. section 1983.  *Id.* ¶¶ 39-65.  They state that absent a

1  declaration that the Shark Fin Prohibition is unconstitutional and an injunction, their members

2  will suffer "great and irreparable injury," such as "suppression of important cultural and

3  ceremonial traditions, loss of opportunity, disruption of business, lost profits, diminution in value

4  and incurrence of criminal fines and penalties." *Id.* ¶ 67.

5  **ARGUMENT**

6  **I.   LEGAL STANDARD**

7         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

8  failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule

9  12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

10  2001).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts

11  alleged to support a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

12  530, 534 (9th Cir. 1984).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough

13  facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 570 (2007); that is, the plaintiff must allege facts that consist of "more than a sheer

15  possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

16  plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements

17  of a cause of action will not do," *Twombly*, 550 U.S. at 555; instead, the plaintiff must allege facts

18  sufficient to "raise a right to relief above the speculative level," *id.*

19         In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact

20  are true and must draw all reasonable inferences in his or her favor.  *See Daniels-Hall v. National*

21  *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "the tenet that a court must accept as

22  true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

23  556 U.S. at 678.   While the court generally looks only to the face of the complaint and its

24  exhibits, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the court

25  may also consider documents that are proper subjects of judicial notice, *Zucco Partners, LLC v.*

26  *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  A court need not permit an attempt to amend

27  if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v.*

28  *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

6

1

**II.   THE CLAIMS AGAINST THE GOVERNOR MUST BE DISMISSED AS HE IS IMMUNE FROM SUIT PURSUANT TO THE ELEVENTH AMENDMENT**

2

3      All of Plaintiffs' claims against the Governor fail, as he is immune from suit.  Plaintiffs

4  allege that their case arises under the Constitution of the United States and 42 U.S.C. section 1983.

5  FAC ¶ 1.  "Claims under § 1983 are limited by the scope of the Eleventh Amendment."  *Doe v.*

6  *Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  The Eleventh Amendment

7  bars suits against a state for all types of legal or equitable relief in the absence of consent by the

8  state or abrogation of that immunity by Congress.  *Coll. Sav. Bank v. Florida Prepaid*

9  *Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Pennhurst State Sch. & Hosp. v.*

10  *Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).  The Eleventh Amendment [also] bars a

11  suit against state officials when 'the state is the real, substantial party in interest.'"  *Pennhurst*

12  *State Sch. & Hosp.*, 465 U.S. at 101 (citation omitted).  The "'general rule is that relief sought

13  nominally against an officer is in fact against the sovereign if the decree would operate against

14  the latter.'"  *Id*. (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)).  "And, as when the State

15  itself is named as the defendant, a suit against state officials that is in fact a suit against a State is

16  barred regardless of whether it seeks damages or injunctive relief."  *Id*. at 101-02.

17      The Supreme Court recognized a limited exception to Eleventh Amendment immunity in

18  *Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* exception allows "suits for

19  prospective declaratory and injunctive relief against state officers, sued in their official capacities,

20  to enjoin an alleged ongoing violation of federal law."  *Agua Caliente Band of Cahuilla Indians v.*

21  *Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).  For the *Ex parte Young* exception to apply,

22  however, the state officer must have a connection with the enforcement of the allegedly

23  unconstitutional statute.  *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992).  "This

24  connection must be fairly direct; a generalized duty to enforce state law or general supervisory

25  power over the persons responsible for enforcing the challenged provision will not subject an

26  official to suit."  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing

27  *Long*, 961 F.2d at 152; *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d

28

7

1    946, 953 (9th Cir. 1983)).  Further, "there must be a threat of enforcement."  *Long*, 961 F.2d at

2    152.

3         Plaintiffs allege only that the Governor, along with the Attorney General and Director

4    Bonham, is "responsible for enforcement of the California Fish and Game Code and ha[s]

5    authority to enforce the California Fish and Game Code."  FAC ¶ 8.  However, this unsupported

6    legal conclusion is insufficient to establish a specific and direct connection between the Governor

7    and the enforcement of the Shark Fin Prohibition.  *See Iqbal*, 556 U.S. at 679; *Eu*, 979 F.2d at 704.

8    Moreover, the Legislature did not in fact give the Governor any special role in administering or

9    enforcing the Shark Fin Prohibition and he does not have "direct authority or principal

10   responsibility" for enforcing either the Fish and Game Code generally or the Shark Fin

11   Prohibition in particular.  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847, *opinion*

12   *amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

13        To the extent that the Governor is named as a defendant based upon his general supervisory

14   powers or duties to enforce state law, *see* Cal. Const., art. V, §§ 1, 13, this does not establish a

15   sufficient connection with enforcement to satisfy *Ex Parte Young*.  *See Ass'n des Eleveurs de*

16   *Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (holding that Governor

17   "is entitled to Eleventh Amendment immunity because his only connection to [statute] is his

18   general duty to enforce California law."); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d at 847;

19   *see also Weinstein v. Edgar*, 826 F. Supp. 1165, 1167 (N.D. Ill. 1993) (stating that if Governor's

20   general obligation to faithfully execute the laws was a sufficient connection to the enforcement of

21   challenged statute, "then the constitutionality of every statute enacted by the Illinois legislature

22   necessarily could be challenged by merely naming the Governor as a party defendant").

23   Accordingly, because there is neither the requisite connection between the Governor and the

24   enforcement of the Shark Fin Prohibition nor a "real likelihood" that he will "employ his

25   supervisory powers against plaintiffs' interests," Plaintiffs' claims against the Governor are

26   barred by the Eleventh Amendment.  *Long*, 961 F.2d at 152; *see also Snoeck v. Brussa*, 153 F.3d

27   984, 987 (9th Cir. 1998).

28

8

**III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AS A MATTER OF LAW**

Plaintiffs bring a facial challenge to the Shark Fin Prohibition on the grounds that it violates the Equal Protection, Commerce, and Supremacy Clauses of the United States Constitution as well as 42 U.S.C. section 1983.  In order to succeed on a facial challenge, Plaintiffs "must establish that no set of circumstances exists under which the [regulation or statute] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992).  To support a finding of facial unconstitutionality, voiding a statute or regulation as a whole, Plaintiffs cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute.  Rather, they must show that the statute is unconstitutional in *all* of its applications.  *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).  Where, as here, a statute has a "plainly legitimate sweep," a facial challenge must fail.  *Id.* at 449 (citation and internal quotations omitted).  Plaintiffs have not met the "heavy burden" to show that the Shark Fin Prohibition facially violates the Equal Protection Clause, the Commerce Clause, or the Supremacy Clause.  *Salerno*, 481 U.S at 745.  Indeed, plaintiffs have failed to allege sufficient facts to state a cause of action under these clauses, let alone facts demonstrating a total and fatal conflict with their prohibitions.  *See id.*

### A.   Plaintiffs Claim Under the Equal Protection Clause Fails.

Plaintiffs' First Claim for Relief alleges that the Shark Fin Prohibition facially discriminates on the basis of national origin in violation of the Equal Protection Clause.  FAC ¶¶ 39-46.  The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Legislative provisions that arbitrarily or irrationally create discrete classes cannot withstand constitutional scrutiny under the Equal Protection Clause.  *Romer v. Evans*, 517 U.S. 620, 623 (1996).  However, courts must balance this principle with the "practical necessity that most legislation classifies for one purpose or another, with resulting

9

disadvantage to various groups or persons." *Id.* at 631 (citations omitted).  In an attempt to

reconcile the promise of equal protection with the reality of lawmaking, courts apply the most

searching constitutional scrutiny to those laws that burden a fundamental right or target a suspect

class, such as those based on race, national origin, or religion.  *Id.*  With respect to protected

classifications, the government is required to demonstrate that the classification is narrowly

tailored to further compelling government interests.  *See Grutter v. Bollinger*, 539 U.S. 306, 326

(2003).  Laws that do not burden a protected class or infringe on a constitutionally protected

fundamental right are subject to rational basis review.  *Romer*, 517 U.S. at 631.  Under the

deferential rational basis test, statutes are generally "presumed valid" and upheld if the

classification drawn by the statute is rationally related to a legitimate state interest.  *Fields v.*

*Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005).  Such statutes must be "wholly irrational"

to violate the Equal Protection Clause.  *Id.*

### 1. Plaintiffs have not alleged sufficient facts to establish discriminatory purpose.

Although plaintiffs assert that strict scrutiny applies to their equal protection claim, *see*

FAC ¶ 40, because the Shark Fin Prohibition is facially neutral,[1] plaintiffs must plead sufficient

facts to show that the statutes were enacted not "for a neutral, investigative reason but for the

purpose of discriminating on account of race, religion, or national origin," *Iqbal*, 556 U.S. at 676-

77; *see also Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Monteiro v. Tempe Union*

*High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).  Plaintiffs have not met this burden.  Indeed,

the First Amended Complaint alleges that (1) the "effect of the Shark Fin Law is to prevent

Chinese Californians from engaging in ceremonial and cultural traditions that they have practiced

for centuries," FAC ¶ 31; (2) that "lawmakers and proponents of the Shark Fin Law have clearly

and repeatedly articulated that the intent of the Law was to target the Chinese market for shark

fins and to end the Chinese tradition of consuming shark fins," *id.* ¶ 30; (3) the Shark Fin

---

[1] Plaintiffs do not dispute that the Shark Fin Prohibition is facially neutral:  the statute
uniformly prohibits all persons from possessing, selling, or trading shark fins in California.  *See*
Cal. Fish & Game Code § 2021.

1   Prohibition "has a disparate impact on Plaintiffs' members because it bears almost exclusively on

2   people of Chinese national origin by suppressing the practice of Chinese ceremonial and cultural

3   traditions," *id.* ¶ 41; and (4) the "intent to discriminate against people of Chinese national origin

4   via the Shark Fin [Prohibition] is evident from the pattern of discrimination which is the

5   inevitable effect of the legislation, as well as from the historical, social and legislative

6   background of the Shark Fin [Prohibition]," *id.* ¶ 42.

7   　　　Such bare conclusory allegations "do not suffice" to state an equal protection claim based

8   on discriminatory intent. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the

9   framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A

10  complaint does not "suffice if it tenders 'naked assertion[s]' devoid of any 'further factual

11  enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, to survive a motion to

12  dismiss under Rule 12(b)(6), plaintiffs are required to allege "enough facts to state a claim to

13  relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not

14  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

15  has acted unlawfully." *Iqbal*, 556 U.S. at 678.

16  　　　Plaintiffs have not met this standard.[2]  In support of their allegation of discriminatory

17  animus, plaintiffs offer only two out-of-context statements by Assemblyman Paul Fong and Peter

18  Knights, the Executive Director of WildAid, FAC ¶ 30, neither of which suggest even the "sheer

19  possibility" or allow for any "reasonable inference" of invidious intent. *See Iqbal*, 556 U.S. at

20  678; *Daniels-Hall*, 629 F.3d at 998. Even read in the light most favorable to plaintiffs,

21  Assemblyman Fong's statement, which includes a comparison to the practice of foot binding, and

22

23  　　　[2] At most, plaintiffs allege that the Shark Fin Prohibition has a discriminatory impact on
    people of Chinese national origin. *See, e.g.*, FAC ¶ 31. However, even accepting this as true,
24  their claim still fails as a matter of law. A statute is "not unconstitutional solely because it results
    in a racially disparate impact." *Village of Arlington Heights v. Met. Housing Dev. Corp.*, 429
25  U.S. 252, 264-65 (1977) (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Without
    showing something more, specifically, that the law was enacted with a discriminatory purpose or
26  applied in a discriminatory manner, plaintiffs cannot state a claim for a violation of the Equal
    Protection Clause. *Id.* at 265. The "mere fact" that a facially neutral statute has "a foreseeably
27  disproportionate impact on an identifiable group does not mean that [it] violate[s] the Equal
    Protection Clause." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

28

Mr. Knights' statement that it is easier to regulate commerce occurring in Chinatown than activities taking place in the middle of the ocean do not indicate a desire to harm Chinese Californians on the basis of national origin.  *See Personnel Adm. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citations omitted) ("For purposes of equal protection analysis, 'discriminatory purpose' implies more than intent as volition or intent as awareness of consequences; it implies that the decision maker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."); *Village of Arlington Heights*, 429 U.S. at 267-68 (setting forth permissible evidence of discriminatory intent, such as a law's historical background or irregularities in its passage); *see also Iqbal*, 556 U.S. at 681-82 (citations omitted).  Moreover, plaintiffs cannot meet this standard as there is no evidence that the Shark Fin Prohibition was enacted for any other reason than the Legislature's stated purposes of stopping the pernicious practice of finning and thereby protecting the ocean and the public health and safety.  *See* Order at 10-11; 2011 Cal. Stat., ch. 524 (AB 376), § 1.

### 2.  The Shark Fin Prohibition is rationally related to a legitimate governmental purpose.

Because it is facially neutral and plaintiffs have failed to allege discriminatory intent, the Shark Fin Prohibition is subject only to rational basis review.[3]  *See Lee*, 250 F.3d at 686-87 (9th Cir. 2001).  Challenged legislation survives rational basis review as long as, in enacting legislation, the legislature is acting in pursuit of a permissible government interest that bears a rational relationship to the means chosen to achieve that interest.  *Heller v. Doe*, 509 U.S. 312, 319 (1993).  Under rational basis review, when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938).  "[T]he burden is on the one

---

[3] To be clear, given that the State has compelling interests in protecting the environment and the public health and safety and that the Shark Fin Prohibition is narrowly drawn to serve those interests, it could pass any level of scrutiny.  However, because no suspect class or fundamental right is implicated by the Shark Fin Prohibition, only rational basis review applies. *See Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990).

12

1   attacking the legislative arrangement to negative every conceivable basis which might support it .

2   . . .” *Heller*, 509 U.S. at 319 (internal quotation marks omitted).

3       Here, plaintiffs “have not alleged facts sufficient to overcome the presumption of

4   rationality” that applies to duly-enacted legislation. *Teixeira v. Cty. of Alameda*, No. 12-cv-

5   03288-WHO, 2013 WL 4804756, *10 (N.D. Cal. Sept. 9, 2013) (quoting *Wroblewski v. City of*

6   *Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)); *see also City of Cleburne*, 473 U.S. at 440; *Fields*,

7   413 F.3d at 955.  Plaintiffs allege only that the Shark Fin Prohibition is duplicative of existing

8   law, FAC ¶¶ 19, 23-24; that it fails to exempt shark fins from sustainably and legally fished

9   sharks, *id.* ¶ 43; that is allows for consumption of all other parts of the shark besides the fin, *id.* ¶

10  28, and that it is unnecessary in that U.S. fishers do not engage in finning, NOAA “successfully

11  manages shark populations” and sharks are not really endangered.  *Id.* ¶¶ 25-27.  Even assuming

12  that all of these allegations are true, and they are not, this is inadequate.  Plaintiffs have not

13  alleged facts that , if true, “negative every conceivable basis which might support” the Shark Fin

14  Prohibition, *Heller*, 509 U.S. at 319, nor facts demonstrating that the law is wholly irrational.  *See*

15  *Fields*, 413 F.3d at 955; *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 WL 3829268, *7 (N.D.

16  Cal. July 23, 2013).

17      The Legislature, based on considerable scientific evidence, has determined both that there is

18  a dangerous decline in the shark population due to finning, and that a prohibition on the

19  possession, trade, sale, and distribution of shark fins is an effective way to combat this problem.

20  *See* 2011 Cal. Stat., ch. 524 (AB 376).  To the extent that the First Amended Complaint suggests

21  that the Shark Fin Prohibition is not the optimal way to achieve the State’s interest in promoting

22  shark conservation and protecting the public health and safety, *see, e.g.*, FAC ¶¶ 28-29, 43, this is

23  irrelevant.  “[E]qual protection analysis is not a license for courts to judge the wisdom, fairness,

24  or logic of legislative choices.” *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).

25  Further, rational basis review does not give courts the option to speculate as to whether some

26  other scheme could have better regulated the evils in question.  *Mourning v. Family Publ’n Serv.,*

27  *Inc.*, 411 U.S. 356, 378, (1973).

28

Given that the Shark Fin Prohibition is rationally related to the State's important interests in the protection of public health, wildlife, and the ecosystem, plaintiffs cannot state an equal protection claim as a matter of law. *See Merrifield v. Lockyer*, 547 F.3d 978, 986 (9th Cir. 2008) ("[T]he first aspect of the rational basis test is easily satisfied by the government's interests in public health and safety and consumer protection."); *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir. 1994); *cf. Teixeira*, 2013 WL 4804756, at *10. As this Court held, "[t]he stated conservation and public health purposes are legitimate state interests, and prohibiting the possession, sale, and trade of shark fins is rationally related to that purpose." Order at 10-11. Accordingly, "any facial challenge [under the Equal Protection Clause] fails." *Id.* at 11; *see also id.* ("because the Shark Fin Law neither discriminates on the basis of race, nor is based on a discriminatory purpose, and because it is rationally related to a legitimate government purpose, plaintiffs cannot meet their burden of showing a likelihood of success on the merits of the equal protection claim."). The Court should thus dismiss plaintiffs' Equal Protection claim.

## B.  Plaintiffs' Commerce Clause Claim Fails.

Claim Two of the First Amended Complaint alleges that the Shark Fin Prohibition facially violates the Commerce Clause because it: (1) imposes a complete and absolute prohibition on the possession, sale, offer for sale, trade and distribution of legally obtained fins and thus entirely eliminates "trade in, with, and through California, FAC ¶ 50; (2) "improperly regulates commerce extraterritorially," *id.* ¶ 51; and (3) is a "duplicative, overbroad and excessively burdensome means of achieving" the benefits of global shark conservation and public health, *id* .¶ 52. These allegations are insufficient to state a cause of action for violation of the Commerce Clause, facial or otherwise. *See Twombly*, 550 U.S. at 557, 570; *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147-57 (9th Cir. 2012), *cert. denied*, 81 U.S.L.W. 3452 (U.S. Feb. 19, 2013) (No. 12-461).

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const., art. I, § 8, cl. 3. The Commerce Clause includes an implied limitation on the states' authority to adopt legislation that affects commerce. This implied limitation is often referred to as the negative or dormant Commerce Clause. *Healy v.*

14

1   *Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to

2   "prohibit state or municipal laws whose object is local economic protectionism, laws that would

3   excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A*

4   *Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  However, its restrictions

5   are "by no means absolute" and "[s]tates retain authority under their general police powers to

6   regulate matters of legitimate local concern, even though interstate commerce may be affected."

7   *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotations omitted).  "As long as a State

8   does not needlessly obstruct interstate trade or attempt to place itself in a position of economic

9   isolation, it retains broad regulatory authority to protect the health and safety of its citizens and

10  the integrity of its natural resources." *Id*. at 151 (citations and quotations omitted).

11      Whether state legislation violates the dormant Commerce Clause is generally analyzed

12  under a two-tiered approach.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476

13  U.S. 573, 578-79 (1986).  A statute is essentially per se invalid if it directly regulates or

14  discriminates against interstate commerce or if its effect is to favor in-state economic interests

15  over out-of-state interests.  *Id*. at 579.  On the other hand, when a statute is nondiscriminatory and

16  "has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has]

17  examined whether the State's interest is legitimate and whether the burden on interstate

18  commerce clearly exceeds the local benefits." *Id*. (citing *Pike v. Bruce Church, Inc.*, 397 U.S.

19  137, 142 (1970)).

20          **1.  Plaintiffs have not alleged discrimination against interstate**
                **commerce.**

21

22      Plaintiffs do not, and cannot, allege that the Shark Fin Prohibition discriminates in favor of

23  in-state interests.  *See* Order at 12 ("plaintiffs have not shown (and cannot show) that the Shark

24  Fin Law either regulates extraterritorially, or discriminates in favor of in-state interests.").  For

25  purposes of the dormant Commerce Clause, discrimination "simply means differential treatment

26  of in-state and out-of-state economic interests that benefits the former and burdens the latter."

27  *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99 (1994).

28  The Shark Fin Prohibition bans, subject to limited exceptions, the possession, sale, trade, and

15

distribution of shark fins in California. *See generally*, Fish & Game Code §§ 2021 & 2021.5. As this Court noted, the Shark Fin Prohibition regulates even-handedly and treats all shark fins, regardless of their point of origin, exactly the same. *See* Order at 12. While plaintiffs allege baldly that the Shark Fin Prohibition "entirely eliminates this interstate and foreign trade in, with, and through California," FAC ¶ 50, even taken as true, this does not establish discrimination and/or a viable Commerce Clause claim. A "blanket prohibition," FAC ¶ 32, or "import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items." *Pacific Nw. Venison Producers*, 20 F.3d at 1012; *see also Ass'n des Eleveurs de Canards*, 729 F.3d at 948; *Reynolds v. Buchholzer*, 87 F.3d 827, 831 (6th Cir. 1996). Further, a statute is not "invalid merely because it affects in some way the flow of commerce between the States." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (citation omitted). Accordingly, the Shark Fin Prohibition does not discriminate within the meaning of the dormant Commerce Clause. *See Pacific Nw. Venison Producers*, 20 F.3d at 1012.

### 2. Plaintiffs have failed to allege that the Shark Fin Prohibition regulates extraterritorially.

By its terms, the Shark Fin Prohibition only regulates conduct -- specifically, the possession, sale, distribution, and trade of shark fins -- within California. *See* Cal. Fish & Game Code § 2021(b). Despite the fact that the Shark Fin Prohibition regulates the intrastate market for shark fin, plaintiffs allege, without any factual support, that it improperly imposes "California's regulatory scheme on the fishing and fishing products industries outside of California's borders." FAC ¶ 51. A statute impermissibly regulates extraterritorial conduct in violation of the Commerce Clause where it "has the undeniable effect of controlling commercial activity occurring *wholly* outside the boundary of the State." *Healy v. Beer Inst.*, 491 U.S. at 336 (invalidating a statute under the Commerce Clause because it had the practical effect of controlling prices in other states) (emphasis added). Plaintiffs make no allegation, and could not in good faith do so, that the Shark Fin Prohibition either directly, or indirectly, controls commerce occurring wholly outside of California.

16

1  Even assuming that the statute may have an effect on industries outside of California, "[t]he

2 mere fact that state action may have repercussions beyond state lines is of no judicial significance

3 so long as the action is not within that domain which the Constitution forbids." *Freedom*

4 *Holdings Inc. v. Spitzer*, 357 F.3d 205, 220-21 (2d Cir. 2004).  California has not "projected its

5 regulatory regime" into other states, and other states are free to take any action they deem

6 appropriate with respect to the possession, sale, and trade of shark fins within their boundaries.

7 *Healy*, 491 U.S. at 336-37.  The Shark Fin Prohibition thus does not offend the dormant

8 Commerce Clause.  *See Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 746 (9th

9 Cir. 2001) (holding state law did not violate Commerce Clause where statute, "on its face, does

10 not regulate foreign insurance policies, or control the substantive conduct of a foreign insurer, or

11 otherwise affect 'the business of insurance' in any other country"); *Illinois Rest. Ass'n v. City of*

12 *Chicago*, 492 F. Supp. 2d 891, 899 (N.D. Ill. 2007) ("The court finds that the fact that the

13 Ordinance has an economic effect on out-of-state foie gras production does not mean that it

14 regulates or discriminates against interstate commerce.").

15
16
**3. *Pike* balancing is not required, but even if it were, the Shark Fin Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce.**

17  Plaintiffs allege that the burden created by the Shark Fin Prohibition is "excessive in

18 relation to its putative benefits."  FAC ¶ 52.  This unsupported conclusion is insufficient to state a

19 cause of action.  *See Iqbal*, 556 U.S. at 680-81.  Moreover, to the extent that plaintiffs suggest

20 that the Shark Fin Prohibition should be evaluated under the balancing test articulated by the

21 Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, this is incorrect.  Application of

22 the *Pike* test requires that a plaintiff first establish a substantial burden on interstate commerce.

23 *See, e.g.*, *Ass'n des Eleveurs de Canards*, 729 F.3d at 952.  As the Ninth Circuit has held, a "state

24 regulation does not become vulnerable to invalidation under the dormant Commerce Clause

25 merely because it affects interstate commerce."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148.

26 Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that

27 there must be a *substantial burden* on *interstate commerce*."  *Id.* (emphasis in original).  Such

28 "significant burden[s]" generally involve "inconsistent regulation of activities that are inherently

17

national or require a uniform system of regulation." *Id.*  Burdens on commerce that result from regulations pursuant to the State's police power to protect the public health and safety are generally not regarded as significant even if they involve some loss of trade.  *See id.* (citing *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)).  Indeed, the Supreme Court "generally has supported the rights of states to 'impose even burdensome regulations in the interest of local health and safety.'"  *Id.* (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).[4]

Here, plaintiffs have not alleged any facts to show that the Shark Fin Prohibition places a burden on commerce, let alone one that is substantial.  The First Amended Complaint contains no allegations that the regulation of shark fins is "inherently national" or that the shark fin trade requires a "uniform system of regulation."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148.  Beyond merely stating that the Shark Fin Prohibition places an excessive burden on interstate commerce in relation to its purported benefits, FAC ¶ 52, plaintiffs neither identify the nature of the "burden" here, nor suggest how it outweighs the putative benefits of the Shark Fin Prohibition.[5]  Instead, plaintiffs assert that the Shark Fin Prohibition is "overbroad" and "duplicative."  *Id.*  In fact, the Shark Fin Prohibition fills a gap left by existing legislation and is neither duplicative nor overbroad.  *Compare* Fish & Game Code §§ 2021 *and* 2021.5, *with* 16

_____

[4] The Supreme Court has noted that many cases that have "purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations."  *General Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997).  "Because the purpose of the Commerce Clause is to protect the nation against economic Balkanization, legitimate regulations that have none of these effects [of discriminating against or regulating interstate commerce] arguably are not subject to invalidation under the Commerce Clause."  *Pac. Nw. Venison Producers*, 20 F.3d at 1015 (internal citations omitted); *see also Ass'n des Eleveurs de Canards*, 729 F.3d at 952.

[5] At most, plaintiffs state that the Shark Fin Prohibition prevents shark fins "from moving through California in the stream of commerce."  FAC ¶ 32.  However, as discussed above, the complete restriction of trade is entirely permissible under the Commerce Clause.  *Pacific Nw. Venison Producers*, 20 F.3d at 1012.  The exclusion of California from the shark fin trade does not amount to a substantial or significant burden on interstate commerce.  *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148-49; *Pac. Nw. Venison Producers*, 20 F.3d at 1015 ("Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet [plaintiffs'] burden."); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001).

18

1   U.S.C. §§ 1801-1882.[6]  However, even if it the Shark Fin Prohibition were duplicative or

2   overbroad, this would be irrelevant to the dormant Commerce Clause analysis.  *See CTS Corp. v.*

3   *Dynamics Corp. of America* (1987) 481 U.S. 69, 92 (in context of dormant Commerce Clause

4   analysis, courts should not "second guess the empirical judgments of lawmakers concerning the

5   utility of legislation").

6        Given that plaintiffs have not alleged any facts to establish a cognizable burden on

7   interstate commerce, *Pike* balancing is not required and plaintiffs' Commerce Clause claim fails.

8   *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *see also Nat'l Paint Coatings Ass'n v. City*

9   *of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but

10   it does not discriminate against interstate commerce in either terms or effect.  No disparate

11   treatment, no disparate impact, no problem under the dormant commerce clause.").  However,

12   and perhaps of greater significance, even if *Pike* balancing were applied, plaintiffs cannot

13   demonstrate that whatever incidental burdens the Shark Fin Prohibition might cause would

14   outweigh its profound benefits.  "A facially neutral statute may violate the Commerce Clause if

15   'the burdens of the statute . . . so outweigh the putative benefits as to make the statute

16   unreasonable or irrational.'"  *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196 (9th

17   Cir. 2007) (citation omitted).  A statute is unreasonable or irrational when "the asserted benefits

18   of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-

19   state industry over out-of-state industry."  *Id.*  That is not the case here.  As discussed above, the

20   protection of public health, wildlife, and of the ecosystem, are legitimate state interests.

21   *Merrifield v. Lockyer*, 547 F.3d at 986; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.  The

22   Shark Fin Prohibition thus carries "a strong presumption" of constitutional validity that the

23   allegations in the Complaint have failed to rebut.  *Pacific Nw. Venison Producers,* 20 F.3d at

24   1014; *see also Nat'l Ass'n of Optometrists*, 682 F. 3d at 1156 (where no constitutionally

25   significant burden on interstate commerce has been shown, courts give even greater deference to

26

27        [6] Specifically, federal laws regarding shark finning do not address the issue of the shark
28   fin trade.

1   the asserted benefits of a state law or regulation).  Because plaintiffs have not stated, and cannot

2   state, a claim under the Commerce Clause, this Court should dismiss Claim Two of the First

3   Amended Complaint.

4                    **C.  Plaintiffs' Supremacy Clause Claim Fails.**

5        Plaintiffs' Third Claim for Relief alleges that the Shark Fin Prohibition is preempted by the

6   Magnuson-Stevens Act, 16 U.S.C. §§ 1801-1884 ("MSA"), both generally and as amended by the

7   Shark Finning Prohibition Act of 2000, Pub. L. No. 106-557, 114 Stat. 2772 (2000), and the

8   Shark Conservation Act of 2010, Pub. L. No. 111-348, 124 Stat. 3668 (2010), as well as the

9   implementing regulations and plans, such as Fishery Management Plans ("FMP").  FAC ¶¶ 55-60.

10  Plaintiffs' Supremacy Clause claim, like their other claims, is based largely on legal conclusions

11  and does not satisfy their pleading burden.  *See Iqbal*, 556 U.S. at 680-81 (citation omitted).

12  Moreover, as this Court has determined, because Congress did not intend to preempt state laws of

13  or relating to shark finning and the Shark Fin Prohibition is entirely consistent with federal law,

14  any claim under the Supremacy Clause must fail.  *See* Order at 12-13.

15       Federal law may preempt state law in one of three ways, none of which applies in this case.

16  First, Congress may expressly state its intent to preempt state law in the direct language of a

17  statute.  *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).  Second, Congressional intent to

18  preempt state law can be inferred when Congress "occupies the field" by passing a

19  comprehensive legislative scheme that leaves "no room" for supplemental regulation.  *Rice v.*

20  *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Third, federal law may preempt state law to

21  the extent that state law directly conflicts with federal law.  *See Fla. Lime & Avocado Growers,*

22  *Inc. v. Paul*, 373 U.S. 132, 141-43 (1963).  Conflict preemption requires that "compliance with

23  both federal and state regulations is a physical impossibility," *id.* at 142-43, or that state law

24  "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

25  Congress." *Pac. Gas & Electric Co. v. State Energy Res. Cons. & Dev. Comm.*, 461 U.S. 190,

26  204 (1983).  Congressional intent is the "ultimate touchstone" in every preemption case.  *Retail*

27  *Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).  Preemption analysis "starts with

28  the assumption that the historic police powers of the States [are] not to be superseded by [a]

                                             20

1    Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe*

2    *Elevator Corp.*, 331 U.S. 218, 230 (1947).  A court must presume that a state statute is not

3    preempted, and the moving party has the burden of overcoming that presumption.  *Pharm.*

4    *Research and Mfrs. of America v. Walsh*, 538 U.S. 644, 661-62 (2003).

5         Plaintiffs allege, without meaningful elaboration, that both field and conflict preemption

6    apply here.  However, these claims are without factual and legal support, and thus fail.

7              **1. Plaintiffs cannot establish field preemption.**

8         With respect to field preemption, plaintiffs allege that the Shark Fin Prohibition "is

9    preempted by federal laws, regulations and plans because it infringes on the federal government's

10   authority to regulate and manage federal waters and commercial and recreational fishing and

11   fisheries, which are fields that the federal government intends to occupy."  FAC ¶ 56.  This is

12   simply wrong as a matter of law.  As this Court noted, there is no evidence that Congress

13   intended to preempt state regulation of or relating to shark finning.  *See* Order at 13; *see also*

14   Letter from Senator John D. Rockefeller IV, Chairman, Senate Committee on Commerce, Science,

15   and Transportation, to Kathryn D. Sullivan, Acting Administrator, National Oceanic and

16   Atmospheric Administration (Nov. 5, 2013), attached as Exhibit C to the accompanying

17   Defendants' RJN ("[N]othing in [the MSA, the Shark Finning Prohibition Act of 2000, and the

18   Shark Conservation Act of 2010] or their legislative histories evinces any intent by Congress to

19   prevent the States from enacting laws dealing with shark finning in their respective

20   jurisdictions….").  Neither the MSA nor the Shark Finning Prohibition Act of 2000 and the Shark

21   Conservation Act of 2010 are "so pervasive as to make reasonable the inference that Congress left

22   no room for the States to supplement [them]."  *Rice*, 331 U.S. at 230.  Accordingly, and because

23   state law unquestionably can and does play a role in the regulation of sale and trade of fish and

24   fish products, "field preemption is not an issue."  *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir.

25   2003).

26              **2. Plaintiffs cannot demonstrate conflict preemption.**

27        Plaintiffs claim that the Shark Fin Prohibition conflicts with the MSA both generally and as

28   amended and "presents an obstacle to the accomplishment of federal objectives including, but not

21

limited to, the objectives of promoting commercial fisheries, minimizing economic impacts on

fishing communities, considering efficiency and utilization of fisheries resources and promoting

optimum yield." FAC ¶ 35. However, plaintiffs have not established a legitimate federal purpose,

objective, or method that the Shark Fin Prohibition could theoretically obstruct, and they have

failed to allege facts to show that the Shark Fin Prohibition actually does so. This failure is not

surprising given that the Shark Fin Prohibition and the MSA and federal shark fin law are entirely

consistent in purpose and regulate fundamentally different activities.

> a.       There is no conflict between the Shark Fin Prohibition and the
>          Magnusson-Stevens Act.

As an initial matter, plaintiffs mischaracterize the purpose of the MSA and overstate the

scope of federal authority pursuant to it. The main objectives of the MSA are to preserve the

nation's fishery resources and protect valuable species from overfishing by extending the

exclusive fisheries zone of the United States from 12 to 200 miles and to provide for management

of fishing within the 200-mile zone, known as the Exclusive Economic Zone ("EEZ"). *See*

*generally*, H.R. Rep. No. 94-445, 94th Cong., 2nd Sess. 1976, 1976 U.S.C.C.A.N. 593, 614 -16;

16 U.S.C. § 1801(a), (b). The MSA has been amended several times, and each round of

amendments has emphasized and strengthened its goal of conservation and sustainability. *See,*

*e.g.*, S. Rep. No. 104-276 (1996); H.R. Rep. No. 104-171 (1995); S. Rep. No. 109-229 (2006);

*NRDC v. Daley*, 209 F.3d 747, 753 (D.C. Cir. 2000) (noting that conservation purpose of the

MSA takes priority over the Act's other purposes). While plaintiffs state that a directive of the

MSA is to promote and minimize negative economic effects on commercial fishing, *see* FAC ¶

20, they ignore the fact that the goal of managing the impact on commercial fishing is secondary

to and confined by the MSA's central purpose of promoting conservation. *See Daley*, 209 F.3d at

753; 16 U.S.C. § 1801(b); 1851(a)(8) (goal of minimizing adverse impact on fishing communities

need only be achieved "to the extent practicable").

Similarly, although plaintiffs claim that the Shark Fin Prohibition interferes with the

achievement of "optimum yield," *see* FAC ¶ 35, "optimum yield" is actually a one-way

adjustment down from the maximum amount of stock that can be taken without risking depletion

1  of a species.  *See* 16 U.S.C. § 1802(33)  The mandate to achieve "optimum yield" does not

2  indicate Congressional intent to maximize commercial fishing nor does it require a state to

3  provide a market for fish products, particularly those prohibited pursuant to the State's power to

4  protect its natural resources and the public health and safety.  *Cf. Tart v. Commonwealth of*

5  *Massachusetts*, 949 F.2d 490, 500-01 (1st Cir. 1991); *Blue Water Fisherman's Assoc. v. Mineta*,

6  122 F. Supp. 2d 150, 161-63 (D.D.C. 2000).

7      Plaintiffs' uncorroborated allegation that the Shark Fin Prohibition presents an obstacle to

8  the exclusive authority of the federal government to manage federal fisheries is also unavailing.

9  *See* FAC ¶¶ 34, 58.  Although plaintiffs correctly note that the federal government has "sovereign

10  rights and exclusive fishery management authority over all fish" and fishery resources located

11  within the EEZ, *see* FAC ¶ 22 &16 U.S.C. § 1811(a), the Shark Fin Prohibition, as this Court

12  recognized, does not regulate any activity, such as the taking and landing of sharks, that occurs

13  within the EEZ.  Order at 13.  While the Shark Fin Prohibition does impact the ability to sell and

14  trade shark fin within California, this is not a matter of federal concern and does not run afoul of

15  the MSA.[7]  To the contrary, the regulation of sale and trade of products within state borders

16  (including animal parts and products) is a long-standing area of state authority.  *See, e.g., Tart*,

17  949 F.2d at 501; *Viva! Intern. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*,

18  41 Cal. 4th 929, 952 (Cal. 2007).

19      **b.      There is no conflict between the Shark Fin Prohibition and**
              **federal shark fin law.**

20

21      The purpose of the Shark Finning Prohibition Act of 2000 and the Shark Conservation Act

22  of 2010 is "eliminat[ing] shark finning."  *United States v. Approximately 64,695 Pounds of Shark*

23

24      [7] Plaintiffs' contention that the MSA provides the federal government authority to regulate
    the sale of fish catch, *see* FAC ¶ 22, is baseless.  Plaintiffs identify the source of this purported

25  federal authority as 16 U.S.C. section 1856(b)(3), which allows, but does not require, Fishery
    Management Councils to limit the sale of fish though an FMP.  The limited discretion provided

26  by section 1853(b)(3) is not a free-standing grant to regulate any and all commerce relating to fish
    and fish parts originating in the EEZ.  Indeed, the ability to limit the sale of fish is explicitly

27  circumscribed by the requirement to be consistent with State safety and quality laws, such as the
    Shark Fin Prohibition.  *See* 16 U.S.C. § 1853(b)(3)(B).

28

23

1    *Fins*, 520 F.3d 976, 982 (9th Cir. 2008) (citing Pub. L. 106-557, 114 Stat. 2772 (2000)); *see also*

2    FAC ¶ 24.  While the Shark Fin Prohibition is wholly consistent with this purpose, plaintiffs

3    claim that federal laws and regulations allow fishers to possess and sell shark fin (obtained in

4    compliance with federal law), but the Shark Fin Prohibition "prevents these same fishers from

5    placing the same shark fin into the stream of commerce in California, creating an impermissible

6    conflict."  FAC ¶ 36.  However, in general, the "decision not to adopt a regulation" simply means

7    there is no federal regulation; it is not treated as "the functional equivalent of a regulation

8    prohibiting all States and their political subdivisions from adopting such a regulation."  *Sprietsma*

9    *v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 65 (2002); *see also O'Melveny &*

10   *Myers v. FDIC*, 512 U.S. 79, 85 (1994) ("matters left unaddressed in [a federal] scheme are

11   presumably left subject to the disposition provided by state law").  In order to establish a conflict

12   meriting preemption, plaintiffs must allege facts to demonstrate that the choice to prohibit the

13   possession, sale, and trade of shark fins is one that Congress specifically rejected or would not

14   have sanctioned.  *See, e.g., Arizona v. United States*, 132 S. Ct. 2492, 2504 (2012).

15          Plaintiffs have not made and cannot make this showing.  The text and the legislative history

16   of federal shark fin law contain no support for the notion that Congress specifically considered

17   and/or rejected a prohibition on possession and trade in shark fin.  To the contrary, Congress

18   apparently viewed the Shark Finning Prohibition Act of 2000 and the Shark Conservation Act of

19   2010 as an initial effort to address the problem of shark population decline.  Similarly, plaintiffs

20   do not allege, nor could they, that Congress intended federal shark fin law to be comprehensive

21   and/or to provide both a "floor" and a "ceiling" for regulation of finning.  *See Wyeth v. Levine*,

22   555 U.S. 555, 575 (2009).  Accordingly, there is no conflict between the Shark Fin Prohibition,

23   which provides additional measures to stop the pernicious practice of finning, and federal law.

24   *See, e.g., id.* at 575-76.

25

26

27

28

1

### c.      The First Amended Complaint contains no facts tending to show any conflict between federal law and the Shark Fin Prohibition.

2

3        Even if plaintiffs could establish a legitimate federal purpose, objective, or method that the

4   Shark Fin Prohibition could theoretically obstruct, they have failed to allege that the Shark Fin

5   Prohibition actually does so.  Not only have plaintiffs failed to meet their pleading burden, *see*

6   *Twombly*, 550 U.S. at 557, but the complete failure to allege facts regarding how the Shark Fin

7   Prohibition conflicts with federal law is fatal to their preemption claim.  A state law is preempted

8   to the extent it actually interferes with the "methods by which the federal statute was designed to

9   reach [its] goal." *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).  In the absence

10  of facts and thus any meaningful analysis about the interrelationship of federal and state law, a

11  determination regarding preemption is both premature and unwarranted.  *See Pacific Legal*

12  *Foundation v. State Energy Resources Conservation & Development Comm.*, 659 F.2d 903, 925

13  n.35 (9th Cir. 1981).  This Court should thus dismiss Claim Three of the First Amended

14  Complaint.

15               **D.  Plaintiffs' 42 U.S.C. Section 1983 Claim Fails.**

16       Court Four alleges that "[e]nforcement of the Shark Fin Ban violates 42 U.S.C. § 1983

17  because it deprives Plaintiffs' members of their rights, privileges and immunities secured by the

18  United States Constitution under the Equal Protection Clause, the Commerce Clause and the

19  Supremacy Clause." FAC ¶ 63.  However, because plaintiffs have failed to adequately allege

20  violations of any of these clauses for the reasons set forth above, plaintiffs' Fourth Claim

21  necessarily fails to state a claim and should be dismissed.

22               **E.  There Is No Basis for Injunctive Relief.**

23       Plaintiffs' Fifth Claim for Relief must be dismissed because there is no basis for injunctive

24  relief where each of the Plaintiffs' other claims have failed.  *See Mehta v. Wells Fargo Bank,*

25  *N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) ("Injunctive relief, like damages, is a remedy

26  requested by the parties, not a separate cause of action.").

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety without leave to amend.

Dated:  January 6, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants Governor Brown,*
*Attorney General Harris and Director*
*Bonham*

26