JOSEPH M. BREALL (SBN 124329)
JILL L. DIAMOND (SBN 259824)
BREALL & BREALL, LLP
1550 Bryant Street, Suite 575
San Francisco, CA 94103
Telephone: (415) 345-0545
Facsimile: (415) 345-0538
jmbreall@breallaw.com

Attorneys for Plaintiffs
CHINATOWN NEIGHBORHOOD ASSOCIATION
and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHINATOWN NEIGHBORHOOD ASSOCIATION, a nonprofit corporation, and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT, a political action committee,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>KAMALA HARRIS, Attorney General of the State of California and CHARLTON H. BONHAM, Director, California Department of Fish and Wildlife,<br><br>                    Defendants,<br><br>THE HUMANE SOCIETY OF THE UNITED STATES, ASIAN PACIFIC AMERCIAN OCEAN HARMONY ALLIANCE, and MONTEREY BAY AQUARIUM FOUNDATION,<br><br>                    Intervenors-Defendants. | CASE NO: CV 12-03759 WHO<br><br>**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**<br><br>Date:         March 19, 2014<br>Time:         2:00 p.m.<br>Courtroom:  2, 17th Floor<br>Judge:        Hon. William H. Orrick |

**TABLE OF CONTENTS**

I.     INTRODUCTION......................................................................................................1

II.    FIRST AMENDED COMPLAINT AND PROCEDURAL HISTORY ........................2

III.   THE LEGAL STANDARD .......................................................................................3

IV.   ARGUMENT ............................................................................................................4

    a.   The Law of the Case Doctrine is Not Applicable to Plaintiffs' Claims ............4

    b.   Plaintiffs State a Claim in the FAC Under the Equal Protection Clause upon Which Relief May Be Granted ....................................................................................................5

    c.   Plaintiffs State a Claim in the FAC Under the Commerce Clause upon Which Relief May Be Granted.................................................................................................10

    d.   Plaintiffs State a Claim in the FAC Under the Supremacy Clause upon Which Relief May Be Granted.................................................................................................13

    e.   Plaintiffs State a Claim in the FAC Under 42 U.S.C. Section 1983 upon Which Relief May Be Granted.................................................................................................20

V.    CONCLUSION ......................................................................................................21

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

**TABLE OF AUTHORITIES**

**I. CASES**

*Ashbaucher v. City of Arcata*, Case No. 08-2840, 2010 U.S. Dist. LEXIS 12667 (N.D. Cal. Aug. 19, 2010) ...................................................................................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Batson v. Ky.*, 476 U.S. 79 (1986) ................................................................................................ 6

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986)...................... 11

*Cal. Parents for the Equalization of Educ. Materials v. Noonan*, 600 F. Supp 2d 1088 (C.D. Cal. 2009) .................................................................................................................................... 7, 8

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)................................. 6, 7, 9

*Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749 (N.D. Cal. 1989)....................................... 12

*City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155 (4th Cir. 2002) .................. 13, 15, 16

*Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388 (1987) ...................................................................... 18

*Cooley v. Bd. of Wardens*, 12 How. 299 (1852) .......................................................................... 10

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ............................................... 13, 16

*Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2012) ..................................... 5

*Daily Herald Co. v. Munro*, 838 F.2d 380 (1988) ....................................................................... 20

*Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511 (9th Cir. 2011) ........................................ 7

*Dragovich v. U.S. Dep't of the Treasury*, 848 F. Supp. 2d 1091 (N.D. Cal. 2012)....................... 8

*El-Hakem v. BJY, Inc.*, 415 F.3d 1068 (9th Cir. 2005) ................................................................ 6

*Ex Parte Virginia*, 100 U.S. 339 (1880) ..................................................................................... 20

*Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963).......................................... 16

*Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219 (2003) .......................................... 10

*Healy v. Beer Inst.*, 491 U.S. 324 (1989)..................................................................................... 10

*Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707 (1985)....................... 15, 16

*Hines v. Davidowitz*, 312 U.S. 52 (1941) .................................................................................... 13

*Hunter v. Regents of the Univ. of Cal.*, 190 F.3d 1061 (9th Cir. 1999)....................................... 8

*Hunter v. Underwood*, 471 U.S. 222 (1985) ........................................................................... 7

*In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................. 4

*Kassel v. Consol. Freightways Corp.*, 450 U.S. 662 (1981) .................................................. 12

*Kleppe v. N.M.*, 426 U.S. 529 (1976) ................................................................................... 12

*Kyriacou v. Peralta Cmty. College Dist.*, Case No. 08-4630, 2009 U.S. Dist. LEXIS 32464 (N.D. Cal.

    Mar. 31, 2009) ................................................................................................................ 10

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ...................................................... 4

*Lawrence County v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256 (1985) ................................. 18

*Lewis v. City of Berkeley*, Case No. 08-5089, 2009 U.S. Dist. LEXIS 271 (N.D. Cal. Jan. 6, 2009) .... 8

*Loving v. Va.*, 388 U.S. 1 (U.S. 1967) .................................................................................... 5

*Md. v. La.*, 451 U.S. 725 (1981) ..................................................................................... 13, 19

*Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ................................................... 12

*Mitchum v. Foster*, 407 U.S. 225 (1972) ............................................................................. 20

*N. Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84 (1963) ............................. 19

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ............................................ 3, 8

*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010) ......................................... 8

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) .......................................................... 8

*Pharm. Research and Mfrs. Of America v. Walsh*, 538 U.S. 644 (2003) ............................. 19

*Pike v. Bruce Church*, 397 U.S. 137 (1970) ................................................................... 11, 12

*Rabang v. INS*, 35 F.3d 1449 (9th Cir. 1994) ........................................................................ 4

*Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978) ............................................................ 15

*Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429 (1978) ............................................... 10

*Rogers v. Lodge*, 458 U.S. 613 (1982) ................................................................................. 7

*S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128 (9th Cir. 2003) .................................. 5

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................................................... 3

*Sierra Club v. Morton*, 348 F. Supp. 219 (N.D. Cal. 1972) ................................................... 4

*Silkwood v. Kerr-Mcgee Corp.*, 464 U.S. 238 (1984) ......................................................... 16

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) .............................. 3, 19

*Southeastern Fisheries Ass'n v. Mosbacher*, 773 F. Supp. 435 (D.D.C. 1991)............................ 15, 17

*Southeastern Fisheries Ass'n v. Chiles*, 979 F.2d 1504 (11th Cir. 1992) ...................................... 14, 15

*Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750 (9th Cir. 1982)........................................ 5

*Teixeira v. County of Alameda*, Case No. 12-03288, 2013 U.S. Dist. LEXIS 128435 (N.D. Cal. Sept. 9, 2013) .............................................................................................................................................. 4, 5

*U.S. v. Locke*, 529 U.S. 89 (2000)..................................................................................................... 19

*Usher v. L.A.*, 828 F.2d 556 (9th Cir. 1987) ...................................................................................... 3

*Valladolid v. Nat'l City*, 976 F.2d 1293 (9th Cir. 1992)..................................................................... 7

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977 (9th Cir. 2002) ........................................... 4

*Vietnamese Fishermen Ass'n v. Cal. Dep't. of Fish & Game*, 816 F. Supp. 1468 (N.D. Cal. 1993)

.................................................................................................................................................. 14, 17

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ..................................... 6

*Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575 (9th Cir. 1996)........................................ 3

*Washington v. Davis*, 426 U.S. 229, 241-42 (1976) .......................................................................... 6

*Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919 (9th Cir. 2011)................. 11

## II. STATUTES

16 U.S.C. §§ 1801-1884 ................................................................................................................ 13

16 U.S.C. § 1801(a)(3)................................................................................................................... 17

16 U.S.C. § 1802(4) ...................................................................................................................... 16

16 U.S.C. § 1811(a). ..................................................................................................................... 14

16 U.S.C. § 1851(a)(1).............................................................................................................. 16, 17

16 U.S.C. § 1853(a) ....................................................................................................................... 17

16 U.S.C. § 1854(e) ....................................................................................................................... 17

16 U.S.C. § 1857(1)(P). .................................................................................................................. 17

42 U.S.C § 1983............................................................................................................................ 2, 20

Cal. Fish & Game Code § 2021 ..............................................................................................passim

Cal. Fish & Game Code § 2021(b). ................................................................................................ 10

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

Cal. Fish & Game Code § 2021.5 ............................................................................passim

Cal. Fish & Game Code § 7704(c) .................................................................................15

Magnuson Stevens Act ..............................................................................................passim

**III. RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3, 7

**IV. REGULATIONS**

50 C.F.R. § 600.1200-1204 (2002) .............................................................................. 13

50 C.F.R. § 600.1201(c) ............................................................................................... 18

50 C.F.R. § 600.310(e)(3)(iii)(A) ................................................................................ 16

**V. CONSTITUTIONAL PROVISIONS**

Article I, Section 8, Clause 3 of the United States Constitution .........................passim

Article VI, Clause 2 of the United States Constitution .......................................passim

Eleventh Amendment to the United States Constitution ......................................... 3

Fourteenth Amendment to the United States Constitution .................................passim

**VI. OTHER AUTHORITIES**

NMFS, Notice of Proposed Rulemaking: Implementation of the Shark Conservation Act of 2010, 78
    Fed. Reg. 25,685 .......................................................................... 11, 17, 18

NMFS, Notice of Proposed Rulemaking: Implementation of the Shark Conservation Act of 2010;
    Extension of Comment Period, 78 Fed. Reg. 40,687 (July 8, 2013) ................................ 19

Cal. A.B. 376, 2011 Leg. (Ca. 2011) ............................................................................ 1

Cal. A.B. 853, 2011 Leg. (Ca. 2011) ............................................................................ 1

NOAA Fisheries, A Closer Look at Shark Conservation,
    http://www.nmfs.noaa.gov/stories/2012/08/08_13_12new_shark_week_splash_page.html (last
    accessed January 14, 2013); .................................................................................. 17

# I.    INTRODUCTION

The State of California's ban on the possession, sale, offer for sale, trade, or distribution of shark fins, *see* Cal. Fish & Game Code §§ 2021 and 2021.5 (collectively, "Shark Fin Law" or "Law"[1]), is a grossly overbroad and unconstitutional restriction.  In their First Amended Complaint ("FAC"), Plaintiffs Chinatown Neighborhood Association and Asian Americans for Political Advancement (collectively, "Plaintiffs") have stated claims upon which relief may be granted that the Shark Fin Law violates their constitutional and statutory rights.

The Shark Fin Law discriminates against Plaintiffs' members, Chinese Californians, by targeting and suppressing the cultural and ceremonial tradition of shark fin soup, an ancient custom dating back to 1400 A.D. that is uniquely Chinese.  The Shark fin Law is replete with contradictions and not narrowly tailored to further its purported goals.  It criminalizes the general trade and possession of fins from lawfully fished sharks without criminalizing the trade or possession of the remainder of the exact same shark.  The Law makes no allowances for shark fins obtained through sustainable and humane fishing practices.  The Shark Fin Law purports to protect the public from exposure to mercury, but does not place restrictions on the consumption of other apex predators with high concentrations of the same toxin, or on the consumption of the remainder of the exact same shark.  From the statements of the Shark Fin Law's sponsors and supporters, is clear that proponents of the Law were attempting to end a minority cultural practice they considered distasteful and irrelevant and, instead of drafting and promoting rational policy, they attacked the cultural traditions of Chinese Californians.

The Shark Fin Law is also an unconstitutional restriction on interstate and foreign commerce.  It was specifically enacted to improperly reach beyond state borders to regulate fishing practices and fishing commerce, and the practical effect of the Law is, in fact, to regulate extraterritorially.  Moreover, the Shark Fin Law's furtherance of any putative local benefits is outweighed by the Law's undue burden on interstate and foreign commerce.  Because the Shark Fin Law both unconstitutionally

---

[1] Also refers to Cal. A.B. 376, 2011 Leg. (Ca. 2011) and Cal. A.B. 853, 2011 Leg. (Ca. 2011), the California State Assembly Bills through which the Shark Fin Law was enacted.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

restricts interstate commerce and unconstitutionally discriminates against Plaintiffs' members based on national origin, it also impermissibly deprives Plaintiffs' members of their statutory rights, privileges, and immunities.

Finally, the Shark Fin Law infringes on the exclusive jurisdiction of the federal government to regulate fisheries in federal waters and, as such, is preempted by federal laws, regulations, and plans. The underlying purpose of federal fisheries laws, regulations and plans is to promote commercial fishing to achieve optimum yield, while addressing concerns about overfishing and sustainability.  As a blanket ban, the Shark Fin Law significantly interferes with commercial fishing because a fisher's possession and sale of a shark fin, while permitted under federal law, is prohibited under California law. This creates an impermissible conflict with the federal government's management of shark fisheries to protect fishing and ensure optimum yield under sound conservation and management principles.

Construing the allegations in the FAC in the light most favorable to Plaintiffs, Plaintiffs have clearly and adequately pled their constitutional and statutory challenges to the Shark Fin Law.  The FAC states claims upon which relief may be granted for violations of the Equal Protection Clause, the Commerce Clause, the Supremacy Clause and 42 U.S.C. § 1943.

## II.     FIRST AMENDED COMPLAINT AND PROCEDURAL HISTORY

In the FAC, Plaintiffs challenge the Shark Fin Law on the basis that the Law denies Plaintiffs' members the equal protection of the law under the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause").  The Shark Fin Law also constitutes an unlawful interference with the power of the United States Congress to regulate interstate and foreign commerce under Article I, Section 8, Clause 3 of the United States Constitution ("Commerce Clause").  The Shark Fin Law is preempted by federal laws, regulations, and plans including, but not limited to, the Magnuson Stevens Act ("MSA"), federal implementing regulations, and federal Fisheries Management Plans ("FMPs"), and the Shark Fin Law violates Article VI, Clause 2 of the United States Constitution ("Supremacy Clause").  The Shark Fin Law also violates 42 U.S.C § 1983 because it deprives Plaintiffs' members of rights, privileges and immunities under the United States Constitution.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

Plaintiffs filed their initial Complaint on July 18, 2012 and their Motion for Preliminary Injunction on August 9, 2012.  On January 2, 2013, the Honorable Phyllis J. Hamilton, United States District Judge issued her Order Denying Motion for Preliminary Injunction and on August 27, 2013, the Ninth Circuit Court of Appeals issued its decision affirming the denial.  Plaintiffs filed their First Amended Complaint on December 9, 2013 against Defendants Kamala Harris, Attorney General of the State of California and Charlton M. Bonham, Director, California Department of Fish and Wildlife ("Government Defendants")[2] and Intervenors-Defendants The Humane Society of the United States, Asian Pacific American Ocean Harmony Alliance and Monterey Bay Aquarium Foundation ("Intervenors-Defendants" and collectively with Government Defendants, "Defendants").  Government Defendants filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Gov. MTD") on January 6, 2014 and Intervenors-Defendants filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Int. MTD") on the same date.[3]

### III.    THE LEGAL STANDARD

When deciding a motion to dismiss, a court must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party."  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012); *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996) ("[i]n general, a complaint is construed favorably to the pleader" (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))).  Moreover, a court must "draw all reasonable inferences in favor of the nonmoving party."  *Usher v. L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).

---

[2] In Plaintiffs' initial Complaint filed on July 18, 2012, Plaintiffs named Edmund Brown, Governor of the State of California, as a defendant.  Governor Brown is not named as a party to the FAC.  As such, Plaintiffs decline to respond to Government Defendants' unnecessary and moot argument in their motion to dismiss that Governor Brown is immune from suit under the Eleventh Amendment to the United States Constitution.

[3] As the arguments in the Int. MTD and Gov. MTD are largely substantively identical, Plaintiffs file this single opposition to both motions to dismiss.

- 3 -

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A complaint meets this standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Because Rule 12(b)(6) focuses on the 'sufficiency' of a claim - and not the claim's substantive merits - 'a court may [typically] look only at the face of the complaint to decide a motion to dismiss.'" *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1047 (N.D. Cal. 2009) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir. 1994).

## IV.    ARGUMENT

### a.    The Law of the Case Doctrine is Not Applicable to Plaintiffs' Claims

The law of the case doctrine does not apply to dismiss the claims in the FAC despite Intervenors-Defendants' outrageous assertion to the contrary. Intervenors-Defendants improperly seek to employ to law of the case doctrine and apply the ruling on Plaintiffs' Motion for Preliminary Injunction to preclude Plaintiffs from proceeding with their claims in this case. "It is, however, a well-established general rule that the decision of a trial court or an appellate court, granting or denying a preliminary injunction, does not so establish the 'law of the case' as to estop either the parties or the court from proceeding with the case on its merits." *Sierra Club v. Morton*, 348 F. Supp. 219, 220 (N.D. Cal. 1972) (law of the case doctrine not applicable to dismiss claims raised in motion for preliminary injunction).

In making their meritless "law of the case" argument, Intervenors-Defendants rely on a recent decision by this Court issued in *Teixeira v. County of Alameda*, Case No. 12-03288, 2013 U.S. Dist. LEXIS 128435 (N.D. Cal. Sept. 9, 2013), while ignoring the glaring differences between *Teixeira* and the instant case. In *Teixeira*, this Court exercised its discretion pursuant to the law of the case doctrine in deciding a motion to dismiss in accordance with a prior ruling *also on a motion to dismiss*, not on a

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

motion for preliminary injunction.  *See id.* at *15.  Yet Intervenors-Defendants would have this Court

erroneously rely on *Teixeira* and apply the law of the case doctrine based on the prior preliminary

injunction ruling, which would be entirely contrary to well-settled precedent.  As articulated by the

Ninth Circuit:

> Decisions on preliminary injunctions require the district court to assess the
> plaintiff's likelihood of success on the merits, not whether the plaintiff has
> actually succeeded on the merits.  Additionally, decisions on preliminary
> injunctions are just that--preliminary--and must often be made hastily and
> on less than a full record… Thus, even though the facial challenge
> presented to the district court here involved primarily issues of law, we see
> no reason why the court should have deviated from the general rule that
> *decisions on preliminary injunctions "are not binding at trial on the
> merits," and do not constitute the law of the case.*

*S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2003) (emphasis added); *see also*

*Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2012) (rulings on "'preliminary

injunctions may provide little guidance as to the appropriate disposition on the merits'" (quoting *Sports

Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750 (9th Cir. 1982))).  Intervenors-Defendants' "law of

the case" argument is thus wholly unsupportable and is not a valid basis for their motion to dismiss the

claims in the FAC.

**b.  Plaintiffs State a Claim in the FAC Under the Equal Protection Clause upon
Which Relief May Be Granted**

In the FAC, Plaintiffs have pled facts sufficient to state a claim under the Equal Protection

Clause and Defendants' challenges to this claim must necessarily fail.  Plaintiffs' members, as

Californians of Chinese national origin, are a protected class for the purposes of an Equal Protection

analysis.  Statutes that discriminate based on national origin or race are subject to a strict scrutiny

analysis dictating that the challenged discrimination "must be necessary to the accomplishment of some

permissible state objective."  *Loving v. Va.*, 388 U.S. 1, 11 (U.S. 1967).

Shark fin soup is a cultural tradition unique to the Chinese and Chinese shark fin soup is the

only significant end market for shark fins in California.  Therefore, the Shark Fin Law is, in practical

effect, a direct restriction on a distinctly Chinese cultural practice and the Law is discriminatory on the

basis of national origin.  Ancestry or ethnic characteristics, for purposes of a discrimination analysis, are

much broader than physical traits and include integral concepts such as language and names. *El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005). Key cultural practices, such as the ancient ceremonial tradition of shark fin soup, are also such concepts. Shark fin soup is integral to the culture of many Chinese Californians and directly tied to Chinese national origin. Therefore, although the language of the Shark Fin Law does not explicitly refer to restrictions on Chinese cultural practices, banning shark fins in California is, in actuality, a discriminatory ban on Chinese tradition. *See Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (use of non-specific words such as "sacrifice" and "ritual" did not obscure purpose of ordinance to target Santeria religion). Plaintiffs allege sufficient facts supporting this discrimination claim in the FAC, *see e.g.* ¶¶ 9-12, 31, 39-46, and adequately plead their facial challenge to the Shark Fin Law under the Equal Protection Clause.

Furthermore, even if a law appears to be neutrally written, it is still subject to strict legal scrutiny in an Equal Protection challenge if the law is shown to have an invidious discriminatory purpose. *Washington v. Davis*, 426 U.S. 229, 241-42 (1976); *c.f. Batson v. Ky.,* 476 U.S. 79, 94 (1986) (prima facie case of purposeful discrimination demonstrated when "the totality of the relevant facts gives rise to an inference of discriminatory purpose"). The disparate impact of a statute on a protected class is a key factor in the discriminatory purpose analysis. *Davis*, 426 U.S. at 241-42. Because shark fins are used exclusively by individuals of Chinese descent for traditional and ceremonial purposes, the Shark Fin Law has a disparate impact on the Chinese Californian community. In fact, the impact of the Shark Fin Law extends even beyond "disparate" because the Law has a singular noncommercial effect on Chinese Californians. The disparate impact of the Shark Fin Law on Plaintiffs' members and other Chinese Californians is sufficiently pled in the FAC, *see e.g.* ¶¶ 12, 41, and does not appear to be challenged by Defendants. Standing alone, the overwhelming effect of the Shark Fin Law on Chinese Californians constitutes evidence of discriminatory purpose. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266 (1977); *see also Lukumi,* 508 U.S. at 535 ("[A]part from the text, the effect of law in its real operation is strong evidence of its object.").

Although, discriminatory effect "may for all practical purposes demonstrate unconstitutionality," in addition to conducting a disparate impact analysis, courts also analyze whether facially neutral laws have an underlying discriminatory intent. *Davis*, 426 U.S. at 242. Discriminatory

- 6 -

intent need not be proved by direct evidence.  *Valladolid v. Nat'l City*, 976 F.2d 1293, 1298 (9th Cir. 1992) (quoting *Rogers v. Lodge*, 458 U.S. 613, 618 (1982)); *see also Lukumi*, 508 U.S. at 534 (legislative intent established by both direct and circumstantial evidence); *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522-23 (9th Cir. 2011) (even without direct evidence, plaintiff can show discriminatory intent by disparate impact, historical background, procedural irregularities or legislative history including lawmakers' contemporaneous statements).  In this case, Plaintiffs have pled sufficient facts to maintain their Equal Protection Claim showing that discriminatory intent underlies the Shark Fin Law.  As detailed in the FAC, ¶ 30, multiple statements from the legislative sponsors and proponents of the Shark Fin Law support the conclusion that the Shark Fin Law was targeted at suppressing a Chinese cultural practice.  When viewed in the light most favorable to Plaintiffs, such statements constitute evidence of discriminatory intent for purposes of an Equal Protection analysis on a motion to dismiss.  *See Lukumi,* 508 U.S. at 540 ("Relevant evidence [of discriminatory intent] includes…the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."); *Cal. Parents for the Equalization of Educ. Materials v. Noonan*, 600 F. Supp 2d 1088, 1113 (C.D. Cal. 2009) (statements made evidencing hostility to Hindu groups during textbook adoption process sufficient to raise triable issue of fact as to defendants' discriminatory intent); *Ashbaucher v. City of Arcata*, Case No. 08-2840, 2010 U.S. Dist. LEXIS 12667, *46 (N.D. Cal. Aug. 19, 2010) (allegations regarding city council's motives sufficient to show discriminatory intent).

Defendants argue that, because permissible purposes may underlie the Shark Fin Law, there must be no improper discriminatory intent and the Shark Fin Law necessarily survives an Equal Protection challenge.  However, this is contrary to established authority.  Even accepting that legitimate purposes also motivated the passage of the Shark Fin Law, the existence of a concurrent discriminatory purpose is sufficient to render the Law unconstitutional.  *Hunter v. Underwood*, 471 U.S. 222, 232 (1985); *see also Lukumi*, 508 U.S. at 535 (ordinance that implicated multiple legitimate concerns nonetheless unconstitutional).  Moreover, although Plaintiffs have pled discriminatory intent with specificity, pleading intent generally is all that is required for an Equal Protection to survive a Fed. R.

- 7 -

Civ. P. 12(b)(6) motion.  *Lewis v. City of Berkeley*, Case No. 08-5089, 2009 U.S. Dist. LEXIS 271, *23 (N.D. Cal. Jan. 6, 2009). ("While, ultimately, Plaintiffs will be required to produce evidence of discriminatory intent or motive in order to prevail on their Equal Protection Claim, it is sufficient at the pleading stage to aver intent generally.").  Even assuming *arguendo* that Defendants correctly argue that statements made by Shark Fin Law sponsors and supporters are insufficient to support an ultimate victory on Plaintiffs' Equal Protection claim, "that argument goes to the weight of the evidence which is ultimately an issue for the trier of fact to consider."  *Cal Parents*, 600 F. Supp. 2d at 1113 ; *see also OSU Student Alliance*, 699 F.3d at 1078 ("[W]here the claim is plausible — meaning something more than 'a sheer possibility,' but less than a probability — the plaintiff's failure to prove the case on the pleadings does not warrant dismissal.").

Clearly the allegations of the FAC, when viewed in the light most favorable to Plaintiffs, are sufficient to state a claim that the Shark Fin Law discriminates against Plaintiffs' members, a protected class.  As such, the application of strict scrutiny is warranted and the Shark Fin Law is "presumptively invalid and can be upheld only upon an extraordinary justification."  *See Dragovich v. U.S. Dep't of the Treasury*, 848 F. Supp. 2d 1091, 1098 (N.D. Cal. 2012) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)).  Strict scrutiny places the burden on the state to produce evidence that the law is narrowly tailored to a compelling government interest.  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 995 (N.D. Cal. 2010); *see also Hunter v. Regents of the Univ. of Cal.*, 190 F.3d 1061, 1063 (9th Cir. 1999).  Under this stringent legal standard, the Shark Fin Law cannot pass constitutional muster.

The pleadings in the FAC adequately support Plaintiffs' contention that the Shark Fin Law is not narrowly tailored to further a compelling government interest.  While the Shark Fin Law purports to address alleged concerns about shark population sustainability and humane treatment, the Law is grossly overbroad because it "does not distinguish between shark fins from sustainably, humanely and legally fished sharks and shark fins from other sources."  FAC ¶ 43.  In the FAC, Plaintiffs allege numerous facts showing that a blanket ban like the Shark Fin Law is not justified to further sustainability and humane treatment concerns because 1) according to the National Oceanic and Atmospheric Administration ("NOAA") Fisheries Service, it is a "MYTH" that many shark species are endangered; 2) NOAA, along with and through federal laws, regulations and FMPs, "successfully

- 8 -

1    manages shark populations to maintain productive and sustainable fisheries;" and 3) State, federal and

2    international laws exist to outlaw the practice of shark finning.  *See* FAC ¶¶ 23-24, 26-27.

3           Although the purported goals of the Shark Fin Law are laudable in theory, the facts showing that

4    most shark species are not endangered and that shark finning is illegal both domestically and under the

5    laws of many foreign jurisdictions raise the question of whether the Law actually furthers "compelling"

6    government interests.  Furthermore, as alleged in the FAC, ¶ 28, public health concerns regarding

7    consumption of mercury are also highly suspect as a "compelling" government interest because the

8    Shark Fin Law does not criminalize consumption of other parts of the shark, nor of other apex

9    predators, such as tuna and swordfish, that are known to have high mercury content.  Even assuming

10   that the purported interests underlying the Shark Fin Law are compelling, they could have been

11   furthered by a much more narrowly tailored ban.  *See Lukumi*, 508 U.S. at 538-39 (1993) (concern

12   about cruelty of method of slaughter of animals should result in ban on method itself, not on religious

13   practices said to bear some relation).  For example, concerns about fins imported from countries that do

14   not prohibit live shark finning could be easily and properly addressed by a ban on imports from such

15   countries. Sustainability concerns could have been addressed by banning fishing, possession and trade

16   of threatened shark species.  Moreover, to truly further the purported legitimate interests asserted by

17   proponents of the Shark Fin Law, the Law should have criminalized possession of all shark parts in

18   California, banned shark fishing entirely, and criminalized consumption of other parts of the shark, as

19   well as of other apex predators.

20          California lawmakers could have, and should have, passed a constitutional narrowly tailored law

21   to address the environmental and health concerns asserted by the Shark Fin Law's supporters, while still

22   allowing Chinese Californians to continue their cultural practices with shark fins obtained from a

23   humane and sustainable fishing source.  Instead they passed the Shark Fin Law, an overbroad and

24   discriminatory ban that cannot survive strict scrutiny.  Aside from one footnoted reference in the Gov.

25   MTD claiming that the Shark Fin Law would survive any level of scrutiny, Defendants do not argue

26   that the Shark Fin Law is constitutional under strict scrutiny.  This lack of meaningful argument

27

28

warrants denial of Defendants' motions to dismiss. [4]  *See Kyriacou v. Peralta Cmty. College Dist.,* Case No. 08-4630, 2009 U.S. Dist. LEXIS 32464, *15 (N.D. Cal. Mar. 31, 2009) ("Defendants do not contend that their policies would, as a matter of law, survive strict scrutiny. Thus, the Court cannot grant defendants' motion to dismiss on these grounds.").  For the foregoing reasons, the Court should deny Defendants' motions to dismiss Plaintiffs' Equal Protection claim.

### c.  Plaintiffs State a Claim in the FAC Under the Commerce Clause upon Which Relief May Be Granted

Plaintiffs' Commerce Clause claim is sufficiently pled and should not be dismissed at the whim of Defendants.  As written, the Shark Fin Law self-proclaims its restrictions on commerce by making it unlawful for anyone to "possess, sell, offer for sale, trade, or distribute a shark fin" in California.  *See* Cal. Fish & Game Code § 2021(b).  By prohibiting all interstate and foreign trade of shark fins involving the state of California, the Shark Fin Law directly regulates interstate and foreign commerce.  Furthermore, by banning sales of shark fins to, from and through California, the Shark Fin Law improperly restricts commerce by removing California from the national and global marketplace.  *See Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 440 (1978) ("[T]he Commerce Clause prevents the States from erecting barriers to the free flow of interstate commerce.") (citing *Cooley v. Bd. of Wardens*, 12 How. 299 (1852)).

The Shark Fin Law not only directly regulates California commerce; it also affects extraterritorial commerce involving shark fins.  In a Commerce Clause analysis, "[t]he critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State."  *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989); *see also Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219, 1224 (2003). The "practical effect" of the Shark Fin Law is to regulate out-of-state conduct involving commercial shark fisheries and the trade of shark products.  As stated in the FAC, ¶¶

---

[4] Given that Plaintiffs have adequately pled that the Shark Fin Law discriminates against Chinese Californians, rational basis scrutiny does not apply as Defendants contend.  Nonetheless, even under a rational basis analysis, Plaintiffs have stated an Equal Protection claim because, as is clear from the NOAA statements on shark population health, anti-finning regulations, and the fact that sustainable shark fishing is practiced widely, there is no rational basis for such an overbroad statute banning shark fins.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

32, 50, shark fins cannot even pass *through* California in the stream of commerce to be sold in other states or countries, essentially regulating commerce that only incidentally involves California.  In fact, according to Defendants, the Shark Fin Law was specifically enacted as a means by which to regulate fishing practices and the shark fin trade beyond California's borders; the concern that outside jurisdictions are not subject to existing state and/or federal laws is an asserted justification for the Law. *See e.g. Int. MTD* at 3:15-18 ("[B]ecause federal fisheries law does not, and cannot, prohibit…finning outside of federal waters, the Shark Fin Law fills a void in regulating activities relating to detached shark fins and fin products that remains unaddressed by federal law.").  As Plaintiffs have adequately pled in the FAC, this type of extraterritorial regulatory reach effectuated by the Shark Fin Law is impermissible under the Commerce Clause.[5]  *See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 582 (1986) (liquor law that effectively regulated out of state transactions violated the Commerce Clause).

The Shark Fin Law also violates the Commerce Clause because it fails the test articulated in *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970), of "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."  *See also Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 933 (9th Cir. 2011) ("Although the dormant Commerce Clause primarily targets discrimination against out-of-state economic activity, under *Pike* it prohibits all unjustifiable burdens on interstate commerce.").  The pleadings in the FAC adequately allege that the Shark Fin Law unduly burdens interstate commerce in violation of the first part of the *Pike* test.  *See e.g.* FAC ¶¶ 13, 32-33, 47-54.  On its face, the Shark Fin Law is an explicit restriction of commerce and, as previously stated, the Shark Fin Law was expressly enacted for the purpose of restricting interstate and foreign commerce both in and through California.

---

[5] Even the National Marine Fisheries Service ("NMFS") has expressed concern about the "negative economic effects" of the Shark Fin Law on West Coast and Western Pacific entities and other fisheries. Plaintiffs' Request for Judicial Notice in Support of Opposition to Motions to Dismiss ("Plaintiffs' RJN"), Exhibit A, NMFS, Notice of Proposed Rulemaking: Implementation of the Shark Conservation Act of 2010, 78 Fed. Reg. 25,685, 25,689 (May 2, 2013) (to be codified at 50 C.F.R. pt. 600).

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

When a statute unduly burdens interstate commerce, the *Pike* test necessarily mandates consideration of the putative local benefits of the statute. *Pike,* 397 U.S. at 142. Moreover, while it is true that laws pertaining to local[6] environmental resources may serve a legitimate purpose, such statutes are not valid as a matter of law. *See Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981); *Minn. v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471 (1981) ("When legislating in areas of legitimate local concern, such as environmental protection and resource conservation, States are nonetheless limited by the Commerce Clause."). There clearly exists a triable issue as to whether the burdens of the Shark Fin Law outweigh the Law's putative local benefits. When viewed in the light most favorable to Plaintiffs, the pleadings evidence a dispute over the necessity of the Shark Fin Law to promote the putative goals of protecting shark populations and curbing the practice of shark finning, particularly in the face of preexisting anti-finning laws and NOAA statements regarding the non-endangered status of sharks and sustainable shark fishing practices in the United States.

Furthermore, "the incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack." *Kassel*, 450 U.S. at 670. A law purporting to protect the public health may be invalid if it interferes with commerce substantially and only marginally furthers the asserted purpose. *Id*. Plaintiffs contend that the Shark Fin Law is such a statute - it supposedly protects the public from mercury consumption but does not restrict consumption of other parts of the shark, nor of other apex predators also high in mercury. *See* FAC ¶ 28. As such, the alleged public health goals are so marginally furthered as to be illusory while the impact on commerce is great, and the Shark Fin Law cannot pass *Pike* test muster. *See Citicorp Servs., Inc. v. Gillespie,* 712 F. Supp. 749, 754 (N.D. Cal. 1989) (statute regulating disbursement of checks in escrow accounts that did not regulate ninety-five percent of checks in escrow did not further purported interest of eliminating risk and was invalid under *Pike* test).

---

[6] It is significant that the Shark Fin Law was allegedly enacted to protect sharks in foreign jurisdictions that do not have anti-finning laws and sustainable fishing regulations. This purported protection of resources outside of California's borders is not a valid *local* benefit as contemplated by the *Pike* test. *See Kleppe v. N.M.,* 426 U.S. 529, 545-46 (1976) (no state power over wildlife outside state's jurisdiction).

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

Drawing all inferences in favor of Plaintiffs, the Court should conclude that Plaintiffs have sufficiently pled a Commerce Clause claim on which relief may be granted.[7]  Defendants' motions to dismiss Plaintiffs' Commerce Clause claim should be denied.

### d.  Plaintiffs State a Claim in the FAC Under the Supremacy Clause upon Which Relief May Be Granted

Under the Supremacy Clause, a state statute is preempted by federal law if the statute legislates in an area in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."  *Md. v. La.*, 451 U.S. 725, 746 (1981); *see also City of Charleston v. A Fisherman's Best, Inc*., 310 F.3d 155, 169 (4th Cir. 2002) ("Implied preemption occurs where Congress, through the structure or objectives of federal law, has impliedly precluded state regulation in the area.").  A state policy is similarly void when it "produce[s] a result inconsistent with the objective of the federal statute…to the extent it conflicts with a federal statute…or where the law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Md.*, 451 U.S. at 747 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372-73 (2000).

In the FAC, Plaintiffs clearly plead a claim under the Supremacy Clause upon which relief may be granted.  As detailed in the FAC, shark fishing in the United States is highly regulated by federal statutes, regulations and plans, including but not limited to, the MSA, 16 U.S.C. §§ 1801-1884; 50 C.F.R. § 600.1200-1204 (2002) and FMPs.  *See* FAC ¶¶ 20-24.  Moreover, the federal government retains "sovereign rights and exclusive fishery management authority over all fish, and all Continental

---

[7] Filing as amici curiae in support of Plaintiffs' appeal to the Ninth Circuit of the denial of Plaintiffs' Motion for Preliminary Injunction, four United States East Coast fisheries associations presented extensive facts and argument in support of Plaintiffs' Commerce Clause claim.  The Ninth Circuit declined to consider these arguments on appeal, stating that "Chinatown's amici offered broader arguments on how the Shark Fin Law burdens interstate commerce for the first time on appeal…The district court can consider the broader dormant Commerce Clause arguments when deciding whether to issue a permanent injunction."  [Government] Defendants' Request for Judicial Notice in Support of Motion to Dismiss ("Gov. RJN"), Exhibit B at ¶ 4.

Shelf fishery resources, within the exclusive economic zone [("EEZ")]."  16 U.S.C. § 1811(a); *see also* FAC ¶ 22.

The Shark Fin Law violates the Supremacy Clause and is preempted by federal law because it interferes with the federal government's exclusive authority over fishing in the EEZ and stands as an obstacle to the accomplishment of federal fisheries objectives.  While a fisher may land a shark caught in the EEZ in compliance with California law, the fisher is not permitted to possess, sell, or trade a part of the shark that has economic value.  In essence, the Shark Fin Law attempts to regulate the shark fishing industry in federal waters by prohibiting fishermen from trading and selling their full federally legal catch in California.  By imposing these restrictions, the Shark Fin Law infringes upon and undercuts federal regulatory authority in the EEZ that is intended to be exclusive.  *See Southeastern Fisheries Ass'n v. Chiles*, 979 F.2d 1504, 1509 (11th Cir. 1992) ("We think Congress outlined a fairly complete and pervasive federal scheme in the Magnuson Act, and believe Congress must have intended to occupy the field of fishery management within the EEZ."); *Vietnamese Fishermen Ass'n v. Cal. Dep't. of Fish & Game*, 816 F. Supp. 1468, 1475 (N.D. Cal. 1993) (California statute prohibiting the use of gill and trammel nets to take rockfish was preempted in the EEZ by the MSA/an FMP which permitted the use of gill nets by its silence on such a ban).

In their motion to dismiss, Intervenors-Defendants attempt to avoid the field preemption issue, as it relates to exclusive federal fishery management authority, by offering the unsupported conclusion that "the cooperative nature of federal and state fisheries management makes abundantly clear that Congress did not intend to occupy the entire field of fisheries management as a whole."  *See* Int. MTD at 19:12-18.  To a certain extent this is true – states do retain significant authority over management of fisheries in *state* waters.  However, there is no support for an assertion that the federal government's intent was to share control over EEZ fisheries management with the states; in fact, this is contrary to the plain language grant of exclusive authority in the MSA.  *See* 16 U.S.C. § 1811(a).  Thus, to the extent that the Shark Fin Law infringes upon the federal government's authority in the field of fisheries

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

management in the EEZ, the Shark Fin Law is preempted by federal law.[8]  Plaintiffs adequately plead as such in the FAC, *see* ¶¶ 34, 56, and the Court should not dismiss Plaintiffs' preemption claim.

It does not defeat Plaintiffs' valid Supremacy Clause challenge that the Shark Fin Law does not apply to the actual act of fishing in the EEZ, but instead to the possession, sale and trade of a fishing product.  It is well-settled that, where federal law permits obtainment of a fish in the EEZ, state law may not interfere with a fisher's ability to dock or possess the fish or to place that fish into the stream of commerce.  *See e.g. Charleston*, 310 F.3d at 177 (states forbidden from preventing docking of fish lawfully caught in federal waters); *Chiles*, 979 F.2d at 1510 (state law imposing daily landing limit on mackerel preempted because federal FMP had only annual quota); *Southeastern Fisheries Ass'n v. Mosbacher*, 773 F. Supp. 435, 440 (D.D.C. 1991).  In fact, the effect of California's restriction is similar to that in *Mosbacher*, 773 F. Supp. at 440, a case in which federal regulation permitted the harvest of redfish, but state law prohibited the landing, possession, or sale of redfish.  The state law was preempted because "in effect, [the challenged regulations] told commercial fishermen that they may catch the fish, but that they may not land them. This makes no sense, and creates a conflict that is impermissible under the [MSA]."  *Id.*

In a Supremacy Clause analysis, "[a] state law is invalid to the extent that it "actually conflicts with a . . . federal statute."  *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978).  Such conflict will be found when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713 (1985).  Because it attempts to directly regulate a fisher's ability to place fish caught in the EEZ into the stream of commerce, the Shark Fin Law "stands as an obstacle," *Crosby*, 530 U.S. at

---

[8] Government Defendants weakly argue against Plaintiffs' field preemption claim by asserting that "there is no evidence that Congress intended to preempt state regulation of or relating to shark finning." *See* Gov. MTD at 21:12-13.  As applied to direct bans on shark finning in state waters this may be the case – indeed, California has a shark fin ban in place that pre-existed the Shark Fin Law and is supplemental to the federal ban on shark finning.  *See* Cal. Fish & Game Code 7704(c); FAC ¶ 19.  Plaintiffs do not challenge the legitimacy or constitutionality of this anti-finning statute.  However, the Shark Fin Law is a blanket restriction that bans the possession and trade of an otherwise legal fisheries product, not a ban on the practice of shark finning.  To characterize the Shark Fin Law as a finning ban is disingenuous and does not support Government Defendants' argument that field preemption should not apply in this case.

372, to the MSA's purpose of achieving optimum yield from federal fisheries and "maintaining an economically viable fishery together with its attendant contributions to the national, regional, and local economies." *See* 50 C.F.R. § 600.310(e)(3)(iii)(A); 16 U.S.C. § 1851(a)(1); FAC ¶ 35, 58. The Shark Fin Law is in "actual conflict with precise and sufficiently narrow objectives that underlie the federal enactments" – the MSA's mandate to manage federal fisheries to ensure sustainable, optimum yields for commercial fishing. *Charleston*, 310 F.3d at 169; *see also Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); FAC ¶ 35-36, 57.  In short, California's law impermissibly directly affects a central component of commercial fishing - the ability to possess and place into commerce fish caught in federal waters.  *See* 16 U.S.C. § 1802(4) (defining commercial fishing as "fishing in which the fish harvested, either in whole or in part, are intended to enter commerce or enter commerce through sale, barter or trade").[9]  This creates an impermissible conflict with NMFS management of federal shark fisheries to ensure optimum yield under sound conservation and management principles.

Intervenors-Defendants' argument that it is "absurd" for Plaintiffs to base their preemption claim on the inconsistency between the Shark Fin Law and federal laws, regulations and plans (which lack similar restrictions on fins from lawfully fished sharks) should not be accepted by the Court.  *See* Int. MTD 22:8-23:4.  As detailed above, when state law acts as an obstacle to federal objectives, federal law need not explicitly legalize an activity that state law makes illegal for preemption to apply. *Hillsborough County*, 471 U.S. at 713; *see also Silkwood v. Kerr-Mcgee Corp.*, 464 U.S. 238, 248 (1984) (state law preempted "where the state law stands as an obstacle to the accomplishment of the full purpose and objectives of Congress.").  This principle is particularly well-settled when it comes to state restrictions on EEZ fisheries whether the restrictions are direct or indirect – in fact, federal law's silence

---

[9] Defendants' argument that the Shark Fin Law is consistent with federal law and objectives because the Law permits the landing and transport of sharks with fins attached and also permits detached fin possession for a fisher's personal use cannot save the Shark Fin Law from preemption.  As a practical matter, storing a whole shark and transporting it to a state in which the fin may be detached is extremely difficult, expensive and a departure from the normal commercial practice.  As such, the actual effect of the Shark Fin Law is to prevent a fisher from possessing, selling and trading a highly commercially viable part of the shark, conflicting with the federal objective of promoting optimum yield from sustainable fisheries.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

on the activity prohibited by state law is enough to create a conflict.  *See Vietnamese Fishermen,* 816 F. Supp. at 1475 (state law banning activity on which federal law is silent can create conflict); *Mosbacher,* 773 F. Supp. at 440, FN11 (federal General Counsel's interpretation of MSA stated "a properly promulgated regulation will supersede conflicting state regulation – direct or indirect – of [EEZ] fishing").

Similarly unavailing are Defendants' arguments that the MSA prioritizes conservation over the promotion of fisheries, saving the Shark Fin Law from preemption because it is a conservation-related statute.  The MSA's underlying purpose is to balance sustainability concerns with the interests of commercial fisheries, not to choose one over the other.  *See* 16 U.S.C. § 1801(a)(3); *id.* § 1851(a)(1), (4), (5) (National Standards); *id.* § 1853(a) (Plan Required Provisions); *id.* § 1854(e) (Rebuilding Overfished Fisheries); FAC ¶ 20-21. This is presumably why NOAA works to "successfully [manage] shark populations to maintain productive and sustainable fisheries."  NOAA Fisheries, A Closer Look at Shark Conservation, http://www.nmfs.noaa.gov/stories/2012/08/08_13_12new_shark_week_splash_page.html (last accessed January 14, 2013); *see also* FAC ¶ 26.  Such balancing goals are also presumably the reason that federal law outlawing the practice of shark finning does not ban commercial transactions or possession of lawfully obtained shark fins.  *See* 16 U.S.C. § 1857(1)(P); (Statement of Rep. George Miller) ("The Shark Finning Prohibition Act will not prevent United States fishermen from harvesting sharks, bringing them to shore, and then using the fins or any other part of the shark..."); FAC ¶ 24.  Given the balancing of sustainability concerns with fisheries promotion that federal laws, regulations and plans attempt to effectuate, it is certainly not for Defendants, nor for the State of California, to determine that the conservation objective of the MSA should be elevated while fisheries' interests are completely suppressed.

It is significant that Plaintiffs' preemption position is not just their own, but has also been asserted by the federal government.  On May 2, 2013, NMFS issued a notice of proposed rulemaking to implement the Shark Conservation Act of 2010 and clarify the relationship between federal and state shark finning laws.  *See* Plaintiffs' RJN, Exhibit A, 78 Fed. Reg. 25,685.  NMFS explicitly stated that federal shark finning acts were not intended to prohibit the possession or sale of shark fins.  Instead,

- 17 -

federal law "reflects a balance between addressing the wasteful practice of shark finning and preserving opportunities to land and sell sharks harvested consistent with the Magnuson-Stevens Act." *Id*. at 25,686.  NMFS also clearly and repeatedly articulated that state shark fin laws that interfere with accomplishing the purposes and objectives of the Magnuson-Stevens Act, federal regulations or federal fishery management plans are preempted. *Id.* at 25,687, 25,689.  According to NMFS:

> [P]romoting commercial fishing under sound conservation and management principles is a key purpose of the [Magnuson-Stevens] Act. If sharks are lawfully caught in federal waters, state laws that … prohibit the sale, transfer or possession of fins from those sharks unduly interfere with achievement of the Magnuson-Stevens Act purposes and objectives.

*Id.* at 25,687.  Furthermore, NMFS indicated that the "savings clause", codified in 50 C.F.R 600.1201(c), allowing more restrictive state laws governing shark finning in state waters "was not intended to imply that states may interfere with or impede accomplishment of fishery management objectives for federally-managed commercial and recreational fisheries."[10]  *Id.*

"The interpretation of an agency charged with the administration of a statute is entitled to substantial deference … if it is a sensible reading of the statutory language… and if it is not inconsistent with the legislative history." *Lawrence County v. Lead-Deadwood Sch. Dist*., 469 U.S. 256, 262 (1985) (evaluating U.S. Department of the Interior's interpretation of a federal statute as it pertained to a preemption claim); *see also Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 403 (1987) ("It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute.").  NMFS's perspective on the preemptive effect of federal law on the Shark Fin Law detailed in the Federal Register is entitled to significant deference,

---

[10] The United States appeared as amicus curiae in support of Plaintiffs' Ninth Circuit appeal of the denial of Plaintiffs' Motion for Preliminary Injunction on the Supremacy Clause claim.  *See* Plaintiffs' RJN, Exhibit B, Brief of the United States as Amicus Curiae in Support of Plaintiffs-Appellants and Reversal on the Supremacy Clause Claim.  The Ninth Circuit stated, "[a]lthough the federal government raised preemption concerns on the eve of oral argument before this court as a late-filing amicus, because these arguments were never before the district court, the district court did not abuse its discretion in failing to anticipate them. The government is, of course, not foreclosed from raising these arguments in the permanent injunction proceedings." Gov. RJN, Exhibit B at ¶5.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

particularly at the preliminary stage of determining whether Plaintiffs have stated a claim that the Shark Fin Law violates the Supremacy Clause.[11]

The argument made by Defendants – that this Court must presume that the Shark Fin Law is not preempted and it is Plaintiffs' burden to show otherwise – does not strike a fatal blow to Plaintiffs' Supremacy Clause claim. First, the presumption against preemption does not apply in areas in which there is a "history of significant federal presence." *U.S. v. Locke*, 529 U.S. 89 (2000) (no presumption against preemption in area of maritime commerce). Because the Shark Fin Law attempts to regulate in an area in which the federal government has a history of significant presence, fishing commerce in the EEZ, there is no presumption against preemption.

Government Defendants cite *Pharm. Research and Mfrs. Of America v. Walsh*, 538 U.S. 644, 661-62 (2003), in support of their argument that the "moving party has the burden" of overcoming a presumption against preemption. Significantly, *Pharm Research* was an appeal of a denial of a preliminary injunction, whereas this case requires the application of a motion to dismiss standard construing all facts in the light most favorable to Plaintiffs. *See Skilstaf*, 669 F.3d at 1014. Furthermore, Government Defendants' claim that the FAC contains no allegations that the Shark Fin Law obstructs a federal purpose is contrary to the express language of the pleadings in the FAC. *See* FAC ¶ 35 ("The Shark Fin Law…presents an obstacle to the accomplishment of federal objectives including, but not limited to, the objectives of promoting commercial fisheries, minimizing economic impacts on fishing communities, considering efficiency and utilization of resources and promoting optimum yield); FAC ¶¶ 20-22; 24; 36, 55-60. Since the FAC contains facts and allegations sufficient

---

[11] The proposed rule closed for public comment on July 31, 2013. *See* NMFS, Notice of Proposed Rulemaking: Implementation of the Shark Conservation Act of 2010; Extension of Comment Period, 78 Fed. Reg. 40,687 (July 8, 2013). No further action has been taken to-date. Even assuming that NMFS was to ultimately do an about face, reject the proposed rule and adopt regulations consistent with the Shark Fin Law, this decision is within NMFS's jurisdiction and, as it stands now, the Shark Fin Law is preempted by federal law for the reasons detailed above. *See Md.*, 451 U.S. at 751 (regarding natural gas tax, even if the Federal Energy Regulatory Commission were to make decision consistent with Louisiana statute, "this kind of decisionmaking is within the jurisdiction of the FERC; and the Louisiana statute…is inconsistent with the federal scheme and must give way. At the very least, there is an 'imminent possibility of collision.'" (quoting *N. Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84, 92 (1963))).

to state a claim under the Supremacy Clause, Defendants' challenge to Plaintiffs' preemption claim must fail.

### e. **Plaintiffs State a Claim in the FAC Under 42 U.S.C. Section 1983 upon Which Relief May Be Granted**

42 U.S.C. § 1983 provides that:

> [e]very person who under color of any statute … of any State … subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…

According to the Supreme Court, the intent of enacting 42 U.S.C. § 1983 was to "interpose the federal courts between the States and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster*, 407 U.S. 225, 240 (1972) (quoting *Ex Parte Virginia*, 100 U.S. 339, 346 (1880)).

Drawing all inferences in favor of Plaintiffs, Plaintiffs have clearly stated a claim that the Shark Fin Law is unconstitutional under the Equal Protection Clause and the Commerce Clause.  By enforcing this unconstitutional statute under color of state law, Government Defendants have violated and continue to violate Plaintiffs' members' rights under 42 U.S.C. § 1983.  *See Daily Herald Co. v. Munro*, 838 F.2d 380 (1988) (government officials' enforcement of unconstitutional statute was violation of 42 U.S.C. § 1983).  Defendants' cursory arguments for dismissal of Plaintiffs' claim under 42 U.S.C. § 1983 are entirely founded on the assertion that Plaintiffs' Equal Protection and Commerce Clause claims fail as a matter of law.  However, since these claims should survive a motion to dismiss, so should Plaintiffs' claim under 42 U.S.C. § 1983.  Defendants do not argue to the contrary.

\\
\\
\\
\\
\\

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
(CV 12-03759 WHO)**

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motions to dismiss be DENIED.


Dated:  January 27, 2014                    BREALL & BREALL, LLP

                                            */s/ Joseph M. Breall*
                                            Joseph M. Breall
                                            Attorneys for Plaintiffs
                                            CHINATOWN NEIGHBORHOOD ASSOCIATION
                                            and ASIAN AMERICANS FOR POLITICAL
                                            ADVANCEMENT

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**
**(CV 12-03759 WHO)**

## CERTIFICATE OF SERVICE

Case Name: **Chinatown Neighborhood Association, et al. v. Harris, et al.**

No. **CV 12 3759 WHO**

I hereby certify that on January 27, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS

### PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTIONS TO DISMISS

### PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE

### [PROPOSED] ORDER

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 27, 2014, at San Francisco, California.


**Jill L. Diamond**
_____
**Declarant**

**/s/ Jill L. Diamond**
_____
**Signature**